# EXHIBIT P

FILED

DEC 0 6 2001

CLERK, U.S. DISTRICT COURT
WESTERN DISTRICT OF TEXAS
BY _____ SH
                    DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

MICHELLE VIERA, *et al.*          §
                                  §
vs.                               §          NO.  A 01-CA-033 SS
                                  §
FIRST UNION CORPORATION, *et al.* §

## O R D E R

BE IT REMEMBERED on the 6th day of December 2001, the Court reviewed the file in

the above-styled cause, specifically Plaintiffs' Motion to Allow Nationwide Notification [#23],

Plaintiffs' Motion to Toll the Statute of Limitations [#24], the numerous responses and replies to

these motions, up to and including plaintiffs' Notice of Supplemental Authority [#71].  After

considering the arguments of the parties, the applicable case law, and the file as a whole, the Court

enters the following order and opinion.

**I. Background**

Plaintiffs Michelle Viera, Chris Bartley, and Bryan Le Page bring this lawsuit on behalf of

current and former employees of The Money Store to recover alleged unpaid overtime compensation,

under the Fair Labor Standards Act of 1938 ("FLSA"), 29 U.S.C. § 201, *et seq.*.  The named

defendants are First Union Corporation, First Union Home Equity Corporation, First Union

Mortgage Corporation, First Union National Bancorp, Inc., First Union National Bank of Delaware,

and The Money Store (collectively, "the defendants").  In their complaint, plaintiffs claim defendant

The Money Store had a policy of "intentionally misclassifying" its positions of Loans Officer and

"other Loans Sales Positions" as being exempt from the overtime compensation requirements of 29

-1-

**Exhibit 6**

U.S.C. § 216(b).  Plaintiffs contend they worked in these positions and on several occasions worked over forty hours per week, but were never paid overtime.  As a result of the defendants' alleged policy and failure to pay overtime compensation, plaintiffs seek time-and-a-half compensation for all overtime hours they worked, and seek similar damages on behalf of all "similarly situated current and former employees" of The Money Store.  The plaintiffs also seek costs and attorneys fees on the ground that the defendants' alleged conduct was wilful and knowing.

Plaintiffs currently have two motions pending before the Court.  The first is a motion for tolling of the statute of limitations as of November 27, 2000, which plaintiffs argue is compelled by defendants' conduct under either the doctrine of equitable tolling or equitable estoppel.  The second motion is a motion for nationwide notification pursuant to 29 U.S.C. § 216(b), requesting the Court to order nationwide notification for all individuals similarly situated to plaintiffs who wish to opt-in to this litigation.  Defendants vigorously oppose both motions, and have filed responses to each.  The Court examines the merits of each motion in its discussion below.

## II. Discussion

### A. Motion to Toll Statute of Limitations

In this motion, plaintiffs request the Court toll the running of statute of limitations as of November 27, 2000 and thus allow claims accruing from November 27, 1997 forward.  All of the opt-in plaintiffs are current and former employees of defendants, and have (or had) job duties relating to the sale of defendants' financial products over the telephone, internet, and in person.  In June 1998, First Union acquired The Money Store; in March 1999, a class action suit was brought against The Money Store in California State Court to recover unpaid overtime on behalf of all loan officers employed by The Money Store in California.  This suit did not allege any claims under the

federal Fair Labor Standards Act, and was limited in scope to Loan Officers in California. In June 2000, the California lawsuit was settled, and defendant First Union was dismissed without prejudice prior to the settlement agreement. In September 2000, the California court gave preliminary approval to the settlement, and required all objections to be filed by November 7, 2000. On November 27, 2000, First Union – which closed The Money Store branches and discharged several loan officers in the meantime – notified certain sales personnel that as of December 3, 2000, First Union would reclassify their positions from "salaried" to "salaried with overtime."

The memo written by First Union ("the reclassification memo") was directed to those employees with the job classification of Financial Specialist, Ready Talent Associate, Consumer Lending Specialist, FS Rover, FS/CRM Rover, Specialty Banker, and BBC Transactional Relationship Sales Manager. *Plaintiffs' Motion to Toll, Exhibit B.* The memo was accompanied by a check which purported to represent "full payment for any and all overtime hours you may have worked during the period from June 1, 1998 through December 3, 2000" and "as part of this change in classification, and in recognition of your past service," though it conceded the calculations for back pay were merely projections and not actual. *Id.*

The statute of limitations in an FLSA action to recover back wages is two years, with an exception – three years – for cases involving a willful violation of FLSA. 29 U.S.C. § 256; Portal to Portal Act of 1947, § 6(a). At the same time, federal courts have the power to toll a limitations period for cases brought under FLSA and the Age Discrimination in Employment Act (ADEA). *See, e.g., Redman v. U.S. West Bus. Resources, Inc.*, 153 F.3d 691 (8th Cir. 1998). Plaintiffs seek tolling under either the theory of equitable tolling or equitable estoppel. When considering equitable tolling, a court should consider following factors: (1) plaintiffs' lack of actual knowledge; (2) plaintiffs' lack

-3-

of constructive knowledge; (3) the diligence with which plaintiffs pursued their rights; (4) absence

of prejudice to defendants; and (5) plaintiffs' reasonableness in remaining ignorant of the notice

requirement. *EEOC v. Kentucky State Police Dept.*, 80 F.3d 1086, 1094 (6th Cir.), *cert. denied*, 519

U.S. 963 (1996).  Conversely, equitable estoppel doctrine focuses on the conduct of the defendant.

Plaintiffs must show defendants engaged in affirmative conduct designed to mislead "or was

unmistakably likely to mislead" a potential plaintiff. *Redman*, 153 F.3d at 695, *citing Bell v. Fowler*,

99 F.3d 262, 268-69 (8th Cir. 1996).

Plaintiffs note the reclassification memo did not mention that reclassified personnel may have

been improperly classified as "salaried" under FLSA, nor did First Union attempt to notify or

compensate discharged The Money Store employees or other former sales personnel who were

employed in reclassified sales positions.  Plaintiffs argue the reclassification memo and

accompanying check were "intended to, and did, further conceal the fact and extent of Defendants'

wrongful conduct and was a willful attempt to avoid paying" sales personnel in reclassified positions

the full amount of overtime to which they were entitled.  Also, plaintiffs assert defendants' decision

to reclassify selected sales positions to "salaried with overtime" improperly conveyed to remaining

sales personnel that defendants had evaluated all relevant positions and confirmed the non-

reclassified positions were properly classified as "salaried." *See Plaintiffs' Motion to Toll*, at 5.

Defendants contend plaintiffs have failed to show any misrepresentations made by defendants

that would reasonably cause any delay to plaintiffs wishing to file suit.  Also, defendants argue

equitable tolling does not apply to this case because plaintiffs had sufficient information to evaluate

claims, and the reclassification memo and accompanying check were not misleading; in fact, it

placed plaintiffs on notice if they wanted to explore a possible claim.  Indeed, defendants claim the

"FLSA requires employees, each time they get a paycheck, to determine whether it is correct. If it is not, the time to file a claim begins to run." *Defendants' Response*, at 6. Finally, defendants argue plaintiffs have failed to provide any probative evidence supporting plaintiffs' assertion that potential plaintiffs were misled by defendants' actions or were harmed in any way. The Court agrees with defendants in that equitable tolling theory is not appropriate in this case. Under prevailing Fifth Circuit law, equitable tolling focuses on a plaintiff's excusable ignorance of facts underlying the lawsuit. *McAllister v. FDIC*, 87 F.3d 762 (5th Cir. 1996) (distinguishing equitable tolling from equitable estoppel, which focuses on a defendant's misrepresentation of facts rather than plaintiff's ignorance). There is simply nothing in the record to suggest plaintiffs were ignorant of facts that would justify their delay in filing suit. Accordingly, the Court will not toll the statute of limitations based on equitable tolling theory.

The next question is whether the theory of equitable estoppel should apply in this case. As mentioned above, equitable estoppel requires a showing that defendants engaged in affirmative conduct designed to mislead "or was unmistakably likely to mislead" plaintiffs. *See Redman*, 153 F.3d at 695. In this Circuit, a district court should not depart from the statute of limitations on equitable estoppel grounds unless plaintiff's failure to timely file a lawsuit is a consequence of either a deliberate act of the employer or acts the "employer should *unmistakably* have understood would cause the employee to delay filing" a claim. *See Clark v. Resistoflex Co.*, 854 F.2d 762 (5th Cir. 1988) (emphasis added). After reviewing the record evidence in this case, the Court finds equitable estoppel is not appropriate. It is clear the reclassification memo made no reference to a statutory period for filing suit, nor did it offer a settlement in exchange for a waiver or release – two acts commonly cited to establish estoppel. *See Keefe v. Bahama Cruise Line, Inc.*, 867 F.2d 1318 (11th

-5-

Cir. 1989).  Plaintiffs charge the reclassification memo and "full payment" of past overtime compensation served to lull potential plaintiffs into inaction, and that defendants knew – but deliberately withheld – information that they arguably had violated FLSA with regard to classification of its sales personnel.  The Court disagrees.

First, the Court notes the payment amount was not non-negotiable, as compensated employees could contact supervisors, an employee hotline, or even the Department of Labor for further assistance.  Also, the Court finds defendants' silence on a potential FLSA violation in the reclassification memo was neither misleading nor relevant to plaintiff's timely filing of this lawsuit.[1] *See Cada v. Baxter Healthcare Corp.*, 920 F.2d 446 (7th Cir. 1990), *cert. denied*, 501 U.S. 1261 (1991) (holding employers are not obligated to disclose the motive behind an adverse employment action as applying equitable estoppel would effectively abrogate the statute of limitations).  As defendants assert, the reclassified employees notified by the reclassification memo were put on notice as of November 27, 2000 that they may have been incorrectly classified in the past.  Based on the record evidence, the Court finds that equitable estoppel is not appropriate in this case, and thus plaintiffs' motion to toll the statute of limitations must be denied.

**B.  Motion for Nationwide Notice**

Plaintiffs request the Court to allow notification of this lawsuit to all First Union employees who were similarly situated to plaintiffs Viera, Bartley, and Le Page as sales personnel classified as exempt from the overtime provisions of FLSA during the relevant time period.  In particular, plaintiffs seek notification of employees with the position titles including all levels of: Account

---

[1] Indeed, there is no evidence two of the named plaintiffs even received the reclassification memo.

Executive, Consulting Lending Specialist, Customer Relations Manager, Financial Consultant, Financial Specialist, Financial Specialist Associate, Lending Approval Specialist, Loan Counselor, Loan Representative, Sales Associate, Servicing Specialist, and Loan Officer – all of which plaintiffs refer to collectively as "sales positions." Defendants, as expected, contend the vast array of job positions plaintiffs seek to notify are *not* similarly situated to the current opt-in plaintiffs based on job responsibilities, supervisory capacity, geographic location, or even corporate entity with which they were employed.   Furthermore, defendants argue plaintiffs seek notification to engage in improper solicitation of additional opt-in plaintiffs "under the guise of court-authorized notice." *See Defendants' Response*, at 2.

In support of their motion for nationwide notification, plaintiffs offer unauthenticated e-mails from July 2001 concerning a "corporate wide call night" that mentions a "region wide task" for, at most, six job classifications. *See Plaintiffs' Reply[2], Exhibit A.*  From the pleadings, it is impossible for the Court to determine what bearing, if any, the e-mails have to nationwide notification, as there is no evidence of what individuals received these e-mails, whether they were sent by authorized representatives of defendants, or even the time period for which e-mails about a one-time event in July 2001 would be relevant.  Also, plaintiffs include pleadings from the class action lawsuit in California state court against The Money Store as "proof" the requested nationwide notice is proper even under FED. R. CIV. P. Rule 23.  The Court gives these exhibits the scant weight they deserve, given the requested notice, theories of recovery, applicable law, and facts of the case are quite different between the California lawsuit and the present case.

---

[2]The Court wonders how plaintiffs can file a "Reply" to their own motion for nationwide notice, particularly since defendants had not filed a response at that time.

The record indicates the current opt-in plaintiffs are situated as follows:

| Plaintiff | Employer | Job Title | Location |
|---|---|---|---|
| Michelle Viera | The Money Store | Loan Officer | Austin, TX |
| Chris Bartley | The Money Store | Loan Officer | Dallas, TX |
| Bryan LePage | First Union Nat'l Bank | Financial Specialist II | Matthews, NC |
| Scott Jenkins | First Union Nat'l Bank | Financial Specialist II | Matthews, NC |
| Richard Counts | First Union Nat'l Bank | Financial Specialist II | Bellear, FL |
| Linda Sutton | First Union Nat'l Bank | Financial Specialist II | Charlotte, NC |
| Paul Bonk | First Union Nat'l Bank | Financial Specialist II | Matthews, NC |
| Cynthia Nembhard | First Union Nat'l Bank | Financial Specialist II | Cooper City, FL |
| D'Andra Deatherage | First Union Nat'l Bank | Financial Specialist II | NC |
| Thalencia McDowell | First Union Nat'l Bank | Financial Specialist | Charlotte, NC |

*See Defendants' Response*, at 4. Under either the "two-step method" or "spurious" class action approach, the Court must apply the "fairly lenient standard" required for notification at this stage in the litigation. *See Mooney v. Aramco Servs. Co.*, 54 F.3d 1207, 1213-14 & fn.8 (5th Cir. 1995); *Sperling v. Hoffman-La Roche, Inc.*, 118 F.R.D. 392, 407 (D.N.J.1988). The Court notes plaintiffs have not provided any sworn evidence of the job responsibilities of the current plaintiffs, and limited descriptions of the purported "similarly situated" job classifications they wish to notify. At the same time, the pleadings do contain substantial allegations against defendants identifying a specific putative class harmed by a common practice or policy of defendants, i.e., misclassification in violation of FLSA, that rise above the level of "conclusory allegations." *See H & R Block, Ltd. v. Housden*, 186 F.R.D. 399, 400 (E.D.Tex. 1999).

The Court therefore grants plaintiffs' motion to allow nationwide notification with the following limitations in scope: (1) employees with the job classifications of Loan Officer, Financial Specialist, and Financial Specialist II; (2) employees in Florida, North Carolina, and Texas; and (3)

-8-

employees who were (or are) employed by The Money Store or First Union National Bank.[3]  The Court recognizes parties had not reached an agreement on the appropriate mode of notice delivery, as defendants object to the use of office employee bulletin boards, or on the exact wording of the notice to be used, but believes such disputes can be resolved by competent and reasonable counsel without judicial intervention.[4]

IT IS ORDERED that Plaintiffs' Motion to Allow Nationwide Notification [#23] is GRANTED IN PART in accordance with the discussion above, and Plaintiffs' Motion to Toll the Statute of Limitations [#24] is DENIED;

IT IS FURTHER ORDERED that, defendants shall produce, in electronic form, the names and last known addresses of all employees within the limited scope outlined above who were classified as exempt from the FLSA from January 9, 1998 forward, by **December 21, 2001**. Furthermore, plaintiffs shall send, by **January 11, 2002**, the Notice and Consent to all current and former employees consistent with the limitations of this Order.

IT IS FURTHER ORDERED that Defendants' Motion for Oral Argument [#61] is DISMISSED AS MOOT.

SIGNED this the ___6ᵗʰ___ day of December 2001.

_Sam Sparks_
UNITED STATES DISTRICT JUDGE

---

[3]In other words, notice is limited to those individuals who appear to be "similarly situated" to the current opt-in plaintiffs in terms of employer, job classification, and job location.

[4]In the event parties are unable to reach an agreement on these issues consistent with this Order, they are welcome to return to this Court to request relief and learn firsthand the extent to which the Court "enjoys" playing referee in such disputes.