# EXHIBIT S

## AMERICAN ARBITRATION ASSOCIATION
### Class Action Arbitration Tribunal

In the Matter of the Arbitration between

Re: 11 160 02726 04
    Stacey Smith, individually, and on behalf     (Claimants)
    of a class of others similarly situated
and
TeleTech Holdings, Inc. and TeleTech Customer     (Respondents)
Care Management (Colorado), Inc.

### PARTIAL FINAL CLASS CERTIFICATION AWARD OF ARBITRATOR

I, THE UNDERSIGNED ARBITRATOR, having been designated in accordance with the arbitration agreement entered into between the above-named parties and dated November 10, 2004, and having been duly sworn, and having duly heard the proofs and allegations of the Parties, do hereby issue this PARTIAL FINAL CLASS CERTIFICATION AWARD, as follows:

    Hearings were held on May 2, 2006 (in-person) and December 12, 2006 (telephonic) to consider Claimants' Motion for Class Certification in accordance with the procedures set forth in the Supplementary Rules for Class Arbitration of the American Arbitration Association (the "AAA Rules"). Claimants were represented by Stueve Siegel Hanson Woody LLP and The Blankenship Law Firm, PS. Respondents TeleTech Holdings, Inc. and TeleTech Customer Care Management (Colorado), Inc. (collectively "TeleTech") were represented by Morgan, Lewis & Bockius. Having considered the Claimants' Motion, Teletech's Response, Claimants' Reply, and further supplemental briefing, as well as the record in this matter, and giving consideration to the argument of counsel presented at the hearings on May 2, 2006 and December 12, 2006,[1] I conclude as follows.

    Claimants ask that this arbitration be certified as a "collective" arbitration with respect to their claims under the Fair Labor Standards Act (the "FLSA") and a class arbitration with respect to their claims under the State of Washington Minimum Wage Act. Claimant Stacey Smith purports to represent a class of Customer Service Representatives (CSR's) who worked at the Bremerton facility of TeleTech, in the State of Washington, from June 17, 2001 to date. This facility is operated by TeleTech to provide telephone support to customers of Nextel which contracts with TeleTech to operate this call center. In a prior ruling I determined that the arbitration agreements signed by Ms. Smith and members of the putative class permitted consideration of a class (and collective) arbitration.

### Preliminary Issues

    The parties have raised several preliminary issues which must be addressed before turning to the merits of the motion before me.

---

[1] Subsequent to the May hearing the undersigned was notified by the AAA that the parties wished to suspend the arbitration while they made efforts at settlement. When those efforts were unsuccessful this process began again.

1

"Work" Under The FLSA. TeleTech contends, citing to the Portal to Portal Act, regulations adopted by the Department of Labor, and the decision of the United States Supreme Court in *IBP, Inc. v. Alvarez*, 546 U.S. 21 (2005), that the activities of the CSR's which form the basis of their overtime claims are not "work" within the meaning of the FLSA. Claimants contend that at this juncture in the case it is premature to consider that argument, particularly as no motion for summary judgment on this issue has been presented. Although there is recent authority to the contrary, at least in the Ninth Circuit, in inquiry into the merits of a claim brought as a class action is not appropriate at this stage of the litigation. *Blackie v. Barrack*, 525 F.2d 891, 901 (9th Cir. 1975), *cert. denied*, 429 U.S. 816 (1976) (determination of suitability of a case for certification as a class action "does not permit or require a preliminary inquiry into the merits").

Opt-In Or Opt-Out Collective Arbitration. Claimants contend that both putative classes may be certified as opt-out classes citing to an arbitration award in *Cole v. Long John Silver's Restaurants, Inc.*, No. 11 160 00194 04 (Am. Arb. Ass'n Sept. 19, 2005). Claimants contend that the AAA Rules permit their FLSA claims to be managed through an opt-out process. Under the FLSA, unlike class actions, potential class members must opt-in, rather than opt-out as in Rule 23 class actions. In the arbitration agreements at issue in this case, the parties agreed that the arbitrator has authority to grant any relief "as may be authorized by law." Although one might debate whether the issue of opt-in or opt-in class arbitrations is one of "relief," it appears the intent of the parties was for the arbitrator to follow the law. Because the parties intended that the arbitrator follow the "law," I decline Claimants' invitation to treat the FLSA claims as an opt-out class when the FLSA collective action procedures are to the contrary. *Rodriguez v. The Texan, Inc.*, 2001 WL 1829490 (N.D. Ill. 2001)(FLSA collective claims do not permit conventional Rule 23 class action opt-out notice).

Incompatibility Of FLSA Collective Arbitration And Rule 23 Class Arbitration. TeleTech argues that this arbitration proceeding may not include a FLSA collective arbitration and a Rule 23-type class arbitration. There is a conflict among the cases as to the compatibility of a FLSA collective action and a Rule 23 class action. Courts in the Ninth Circuit (which I find to be the most persuasive as this dispute arises in that circuit) have consistently held, however, that Rule 23 class actions and FLSA collective actions may be joined in the same proceeding. *E.g., Kirkpatrick v. Ironwood Communications, Inc.*, 2006 WL 2381797 (W.D. Wash. 2006); *Bahramipour v. Citigroup Global Mkts., Inc.*, 11 Wage & Hour Cas.2d (BNA) 498 (N.D. Cal. 2006); *see also Lindsay v. Government Employees Ins. Co.*, 448 F.3d 416 (D.C. Cir. 2006).

**Collective Arbitration under the FLSA**

An initial question to be decided regarding the collective arbitration aspect of this case is whether the two-step approach to certification is appropriate, or whether, based on the quantum of discovery done, only the second step of the certification process must be considered. Under the two-step approach for certifying collective actions under the FLSA, a court, or arbitral panel, examines the pleadings and affidavits to determine whether the proposed class members are similarly situated in their pursuit of a violation of law common to all members of the class. At the first stage, substantial allegations, supported with some evidence, are sufficient to justify conditional certification. *Thiessen v. General Elec. Cap. Corp.*, 267 F.3d 1095 (10th Cir. 2001). In the second phase, after discovery is largely complete, a factual finding is made regarding whether the class members are indeed similarly situated, and other issues may be considered such

as defenses that may be applicable and whether the claims are too individualistic to warrant collective treatment. *See, e.g., Lusardi v. Xerox Corp.*, 118 F.R.D. 351 (D.N.J. 1987).

In certain cases, courts have proceeded directly to the second stage to determine whether the potential members of the collective action were, indeed, similarly situated. *Pfohl v. Farmers Ins. Group*, 2004 WL 554834 (C.D. Cal. Mar. 1, 2004). These cases involve circumstances where discovery on class certification is largely complete. *Id.* at 3 ("[T]he parties do not dispute that discovery has been undertaken relating to the issues of certification of this action as a collective action.")

Although significant discovery has been conducted, I believe the two-step process is most appropriate and I am persuaded by the logic of the court in *Gerlach v. Wells Fargo & Co.*, 2006 WL 824652 (N.D. Cal. Mar. 28, 2006) ("[D]istrict courts in this circuit have used the *ad hoc* two-tiered approach.") In that FLSA case, the defendants argued, as does TeleTech here, that significant discovery had been done, and that individual circumstances would predominate over issues common to the class. But in this case, as in *Gerlach*, discovery on class certification is not entirely complete. Moreover, TeleTech has raised serious questions as to whether certain activities of the CSR's are even covered by the FLSA. Such a defense is commonly addressed at the second stage of the class certification process.

The most hotly debated issue between the parties, however, concerns whether Claimants have demonstrated the existence of a uniform illegal policy affecting potential class members. Claimants contend that they have sufficiently alleged such a policy, namely that CSR's must be prepared to start taking calls at the beginning of their scheduled work shift, and that in order to do so, they must do certain things such as picking up a head set at a locker, going to their seat, turning on their computer, loading up certain software programs and reviewing updates and daily communications. Claimants contend that these activities constitute work for which they should be paid, and that certain of these activities also occur during lunch breaks and after a CSR's shift ends. Claimants have produced statistical evidence for over 100 CSR's which they believe demonstrates that class members have undertaken these activities and have not been compensated for them.

TeleTech, on the other hand, contends that its evidence adduced thus far shows that a significant number of CSR's are not engaged in any off-the-clock work, and as to many others, the amount of possible off-the-clock work is *de minimis*. TeleTech contends there is not substantial evidence of a uniform unlawful policy and in any event, the ultimate inquiry regarding potential off-the-clock work is highly individualized, not making this case suitable for a collective arbitration. But allegations identical to those made by the Claimants in this case have been found sufficient by other courts to warrant conditional certification under the FLSA.

For example, only several months ago, in *Hens v. Clientlogic Operating Corp.*, 2006 WL 2795620 (W.D.N.Y. 2006), a call center case, the court granted the plaintiffs' motion for conditional class certification. In that case, the plaintiffs claimed, like the Claimants here, that their employer required that they perform essential tasks before and after their scheduled shifts, and during lunch. The defendant argued, as does TeleTech here, that it had a policy of paying all overtime, and that "isolated deviation" from that policy could not constitute an unlawful policy or plan. The court found that the resolution of that disagreement was more appropriate at a later stage in the litigation.

3

Another case identical to this one is *Clarke v. Convergys Cust. Management Group, Inc.*, 370 F. Supp. 2d 601 (S.D. Tex. 2005). That is also a call center case and the allegations of alleged off the clock work are identical to the allegations in this case: searching for available work stations, reading daily e-mails from management, booting up computers, logging into several computer programs, and other preparing to take calls. In that case, the defendant argued that the overtime claims were "inherently individualized" rendering them "unfit for collective treatment." Once again the district court in that case said that such issues were to be taken up at a later time.

Therefore, following the two-step process commonly used in the Ninth Circuit, I conclude that Claimants have sufficiently alleged that the proposed class members are similarly situated in their claim of a violation of law common to all members of the class. Claimants contend, and have produced declarations and deposition testimony in support of their contention, sufficient to establish for the purpose of conditional certification, that in order for CSR's who are engaged in calls with Nextel customers to be ready to take a call when their shift starts,[2] those CSR's must perform certain job-related functions for which they are not paid.[3] Based on the record before me, I conclude that the evidence adduced thus far is sufficient to meet the modest threshold approved in the Ninth Circuit for the first stage conditional certification. *E.g., Thiebes v. Wal-Mart Stores, Inc.*, 1999 WL 1081357 (D. Or. Dec. 1, 1999). Accordingly, I will conditionally certify a class of all CSR's engaged in calls with Nextel[4] customers employed by TeleTech at the Bremerton facility from June 17, 2001 to date.[5]

### Washington State Law Claims

This proceeding also has been initiated by the Claimants as a class arbitration seeking relief under the Washington Minimum Wage Act. The requirements governing class certification are set forth in the AAA Rules. These rules are modeled on class certification procedures adopted under Rule 23, Federal Rules of Civil Procedure, and many state class action rules that are similar. Thus, it is appropriate to look to the law of the Ninth Circuit and the State of Washington for aid in applying the requirements of the AAA Rules.

The burden of proving that a class is appropriate rests with the proponent of the class. *In re Northern Dist. of Cal. Dalcon Shield IUD Prod. Liab. Litig.*, 693 F.2d 847, 854 (9th Cir.1982). The party seeking to maintain the action as a class suit must, therefore, establish a *prima facie* showing of each of the four certification prerequisites and must demonstrate that appropriate grounds for a class action exist. *Blackie v. Barrack*, 524 F.2d 891, 901 (9th Cir.1975), *cert. denied*, 429 U.S. 816 (1976).

Before ordering that arbitration may proceed as a class arbitration, an arbitrator must rigorously analyze whether the class allegations meet the requirements of the AAA Rules. *See General Tel. Co. of Southwest v. Falcon*, 457 U.S. 147, 161 (1982); *Hanon v. Dataproducts Corp.*, 976 F.2d 497, 509 (9th Cir.1992). Because the early resolution of the class certification question requires some degree of speculation, however, all that is required is that the arbitrator

---

[2] Claimants contend that off-the-clock work also occurs during breaks, over lunch and at the end of each shift.
[3] TeleTech disputes whether such functions—picking up headsets, finding a seat, turning on computers and loading software— are compensable under the FLSA. Of course, no determination on these issues is being made at this time.
[4] TeleTech has contended that some CSR's are involved in tasks other than taking calls from Nextel customers. Because Claimants' case only involves those CSR's involved in taking calls from Nextel customers, I have limited the class to those employees only.

4

forms a "reasonable judgment" on each certification requirement. *See Chavez v. IBP, Inc.*, 8 Wage & Hour Cas.2d (BNA) 398 (E.D. Wash. 2002). Moreover, in determining whether class certification is appropriate with respect to the Claimants' state law claims I am guided by decisions of the State of Washington's appellate courts which appear to give a "liberal interpretation" to the use of the class action mechanism, *e.g., Sitton v. State Farm Mut. Ins. Co.*, 116 Wash. App. 245 (2003); *Smith v. Behr Process Corp.*, 113 Wash. App. 306 (2002), including cases involving the Washington Minimum Wage Act. *Miller v. Farmer Bros. Co.*, 115 Wash. App. 815 (2003).

Numerosity. Certain prerequisites to class certification must be met as provided for in Rule 4(a); if those initial requirements are satisfied, than Rule 4(b) is considered to determine if the class arbitration is "maintainable." The first prerequisite is whether the class is so numerous that joinder of separate arbitrations on behalf of all members is impracticable. Rule 4(a)(1). The record indicates that are potentially over 2000 class members. Thus, the numerosity requirement is met.

Common Questions of Law or Fact. The second prerequisite is whether there are questions of law or fact common to the class. Rule 4(a)(2). Claimants have made sufficient allegations demonstrating the existence of common questions of law and fact that would pertain to the CSR's at TeleTech's Bremerton facility. For example, a common question of fact that would apply to all putative class members is whether TeleTech had a policy requiring CSR's to work off-the-clock. A common legal question applicable to all potential class members is whether the type of activities contended by Claimants to entitle them to additional compensation is indeed "work" under the FLSA. Although TeleTech has contended that such common issues do not predominate in this case, it must be remembered that all questions of fact and law need not be common to satisfy this requirement. "The existence of shared legal issues with divergent factual predicates is sufficient...." *Whiteway v. Fedex Kinko's Office & Print Serv., Inc.*, 11 Wage & Hour Cas. 2d (BNA) 1518, ____ (N.D. Cal. 2006).

Typicality. The third prerequisite is whether the claims or defenses of the representative parties are typical of the claims or defenses of the class. Rule 4(a)(3). The record indicates that the claims of representative Stacey Smith are the same as members of the class.

Protection of the Interests of the Class. The fourth and fifth prerequisites are whether the representative party and her counsel will fairly and adequately protect the interests of the class. Rules 4(a)(4), (5). There is no dispute as to whether Ms. Smith will fairly and adequately protect the interest of the class. The fifth prerequisite is whether counsel selected to represent the class will fairly and adequately protect the interests of the class. The work done by counsel for Ms. Smith thus far demonstrates that counsel is capable of fairly and adequately protecting the interests of the class.

Substantially Similar Arbitration Agreements. The final prerequisite is whether each class member has entered into an agreement containing an arbitration clause which is substantially similar to that signed by the class representative and each of the other class members. Rule 4(a)(6). It is agreed in this case that all the potential class members have signed an identical arbitration agreement.

Assuming the prerequisites to class arbitration set forth in Rule 4(a) are met, a claimant must also meet the requirements of Rule 4(b). Rule 4(b) provides:

5

An arbitration may be maintained as a class if the prerequsites of subdivision (a) are satisfied, and in addition, the arbitrator finds that the questions of law or fact common to members of the class predominate over any questions affecting only individual members, and that a class arbitration is superior to other available methods for the fair and efficient adjudication of the controversy.

Questions of Law and Fact Predominate. The requirement in Rule 4(b) that common questions of law or fact predominate over questions affecting individuals is derived from Rule 23(b)(3). The so-called predominance requirement means that there must at least be a single common issue that is overriding in the litigation. *Sitton v. State Farm Auto Ins. Co.*, 116 Wash. App. 245 (2003). In the Ninth Circuit the predominance "inquiry tests whether the proposed classes are sufficiently cohesive to warrant adjudication by representation." *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1022 (9th Cir. 1998). "Implicit in the satisfaction of the predominance test is the notion that the adjudication of common issues will help achieve judicial economy." *Zinser v. Accufix Research Inst., Inc.*, 253 F.3d 1180, 1189 (9th Cir. 2001). Here a paramount common legal issue affecting all members of the class is whether pre-shift and post-shift time (and the related time occurring during lunch breaks) is "work" within the meaning of the FLSA. There is obviously a significant efficiency in resolving that issue in the context of a class-wide proceeding rather than in the context of adjudicating individual claims.

Superiority Of Class Arbitration. In determining the superiority of a class action to individual litigation, courts consider the interests of the individual members in controlling their own litigation, the desirability of concentrating the litigation in the particular forum, and the manageability of the class action. While TeleTech has raised legitimate concerns regarding the manageability of the class in relation to proof of damages, these concerns are not sufficient to defeat certification. Manageability is not a separate area of inquiry in considering certification under the federal rule analogous to Rule 4(b), but merely a secondary problem to consider. *Gulish v. United States*, 78 F.R.D. 515, 518 (W.D.Pa.1978). The more important considerations remain the predominance of common questions and superiority of the class action. *Id.*

Although I believe that conditional certification of the FLSA claims, and class certification of the state law minimum wage claims are appropriate, I recognize that TeleTech has raised serious issues regarding the potential for extensive individualized consideration of claims, and as well as the threshold issue of whether the activities of the putative class members constitute "work" under the FLSA. I believe that before notice is sent to the class, the parties (and the arbitrator) should be clear on how the further processing of this case will be managed. Thus, I am referring counsel to the recent decision of the United States District Court for the Western District of Washington in *Kirkpatrick v. Ironwood Communications, Inc.*, 2006 WL 2381797 (W.D. Wash. 2006). In that case the court provisionally certified a class action conditioned upon the submission by the plaintiffs of a case management plan addressing such issues as the scope of discovery, a schedule for dispositive motions, a plan for determining damages, and a plan for resolving the case at trial. The court also set a process for consultation between the parties with respect to such plan but ultimately placed the burden on the plaintiffs to submit the plan to the court, along with a proposed form for providing notice to class members. I would like counsel in this case to substantially follow the course of action approved by the court in *Kirkpatrick v. Ironwood Communications, Inc.*

The proceedings shall be stayed for 30 days to permit any party to move a court of competent jurisdiction to confirm or to vacate this award. Once all parties inform the undersigned in writing during the period of the stay that they do not intend to seek judicial review

6

of the award, or once the requisite time period expires without any party having informed the arbitrator that it has done so, this matter shall proceed. If any party informs the arbitrator within the period provided that it has sought judicial review, a further stay of the proceedings will be considered. Accordingly,

IT IS ORDERED conditionally certifying a collective arbitration of all CSR's engaged in calls with Nextel employed by TeleTech at the Bremerton, Washington facility from June 17, 2001 to date with respect to claims under the Fair Labor Standards Act.

IT IS FURTHER ORDERED certifying a class arbitration of all CSR's engaged in calls with Nextel employed by TeleTech at the Bremerton, Washington facility from June 17, 2001 to date with respect to claims under the Washington Minimum Wage Act.

IT IS FURTHER ORDERED identifying Stacey Smith as the representative in this proceeding and identifying as class counsel Stueve Siegel Hanson Woody LLP and The Blankenship Law Firm, PS.

IT IS FURTHER ORDERED that the remaining provisions of AAA Rule 5(b) and Rule 5(c) shall be addressed following approval of the form of notice and case management plan provided for herein.

IT IS FURTHER ORDERED that the certifications provided for herein are conditioned upon submission by Claimants' counsel of a case management plan and proposed notice substantially in conformance with the requirements of *Kirkpatrick v. Ironwood Communications, Inc.*, 2006 WL 2381797 (W.D. Wash. 2006), which shall be submitted within 30 days of the date of this order. That time may be extended if either party moves a court to either confirm or vacate this ward.

IT IS FURTHER ORDERED staying all proceedings for 30 days in accordance with the terms of this Award.

12/26/06
_____
Date

_____
HON. Bruce E. Meyerson

I, HON Bruce E. Meyerson, do hereby affirm upon my oath as Arbitrator that I am the individual described in and who executed this instrument, which is my Award.

12/26/06
_____
Date

_____
HON. Bruce E. Meyerson

7