IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

HITUL GANDHI, individually, and on behalf of §
a class of others similarly situated,          §
                                               §
                Plaintiffs,                     §
                                               §
        v.                                     §        Case No. 1:08-cv-00248
                                               §
DELL INC.,                                     §
and                                            §
DELL MARKETING USA L.P.,                       §
                                               §
                Defendants.                     §

---

**DEFENDANTS' RESPONSE IN OPPOSITION TO PLAINTIFFS' MOTION
AND MEMORANDUM FOR CERTIFICATION UNDER 29 U.S.C. § 216(B) AND
CLASS ACTION CERTIFICATION UNDER FED. R. CIV. P. 23**

---

## TABLE OF CONTENTS

TABLE OF AUTHORITIES ................................................................................ iii

I.  INTRODUCTION ...................................................................................... 1

II.  STATEMENT OF *FACTS*, NOT UNSUPPORTED ALLEGATIONS .................................. 3

    A.    Dell Objects to and Asks the Court to Strike the Declarations Attached to Plaintiffs' Motion Because They Are Contradicted by Plaintiffs' Deposition Testimony and the Documentary Evidence, Conclusory, and Not Based on Personal Knowledge. ..................................................................... 3

        1.    Plaintiffs' Declaration Testimony Regarding Salary Deductions Is False and Belied by Their Own Depositions and by the Documentary Evidence............................................................................. 4

        2.    Plaintiffs' Declaration Testimony Regarding Lunch Deductions Is False and Belied by Their Own Depositions and by the Documentary Evidence............................................................................. 6

    B.    The Purported Class Plaintiffs Seek to Have Certified, i.e., the So-Called "Business Sales Representatives," Cover a Broad Spectrum of Dissimilar Jobs. ............................................................................................. 9

    C.    Plaintiffs Were Individually Responsible for Accurately Reporting Their Time in Kronos, Although Their Timekeeping Habits Were Dissimilar. ........................... 12

    D.    Dell Paid Plaintiffs for All Time Worked.................................................. 13

    E.    Dell Paid Plaintiffs for Instances Where They Worked through Lunch. .................... 14

    F.    Plaintiffs' Allegation That Dell "Improperly Classified" Them Misstates the Issue. ..................................................................................... 15

III.  ARGUMENTS & AUTHORITIES ................................................................. 15

    A.    Plaintiffs' Motion Should Be Denied Because Plaintiffs Are Not Similarly Situated. ................................................................................... 16

        1.    Plaintiffs' Allegations Regarding the Fluctuating Workweek Method of Compensation Do Not Constitute Violations of the FLSA and Are Not Conducive to Collective Action Treatment. .......................................... 20

        2.    Plaintiffs' Off-the-Clock Claims Are Not Appropriate for Collective Action Treatment as a Matter of Law. ....................................................... 25

        3.    Plaintiffs Have Produced No Evidence to Support Their Allegation That "Dell's Incentive Policies Are Unlawful." .............................................. 27

    B.    The Court Should Deny Plaintiffs' Motion to Certify a Rule 23 Class Action under Oklahoma Law........................................................................ 28

        1.    Plaintiffs Cannot Satisfy the Requirements of Rule 23 (a)............................. 29

        2.    Plaintiffs Cannot Satisfy the Requirements of Rule 23 (b)(3). ....................... 34

        3.    Rule 23 Class Actions and § 216(b) Collective Actions are Inherently Incompatible. .......................................................................... 36

C.    Plaintiffs' References to <u>Norman v. Dell Inc. et al.</u> Are Irrelevant. ........................... 37

D.    If the Court Certifies a Collective Action or Class Action, Dell Should Not Be Required to Produce Employee and/or Former Employee Names, Addresses, Telephone Numbers, Social Security Numbers,   and/or Other Personal Information; Notice Should Be Sent by Dell or a Third-Party Administrator............ 38

IV.  CONCLUSION................................................................................................................ 40

**TABLE OF AUTHORITIES**

C<small>ASES</small>

Aguilar v. Complete Landsculpture, Inc., No. 3:04-cv-0776-D, 2004 WL 2293842 (N.D.
    Tex. Oct. 7, 2004) ...................................................................................................... 39

Aguirre v. SBC Comm'ns, Inc., No. 05-3198, 2006 WL 964554 (S.D. Tex. Apr. 11,
    2006) ..................................................................................................................... 9, 17

Aiken v. County of Hampton, 172 F.3d 43, 1998 WL 957458 (4th Cir. 1998) ......................... 21

Allison v. Citgo Petroleum Corp., 151 F.3d 402 (5th Cir. 1998) ................................................. 31

Amchem Prods., Inc. v. Windsor, 521 U.S. 591 (1997) .............................................................. 29

Ayers v. SGS Control Servs., Inc., No. 03 CIV 9077 RMB, 2007 WL 646326 (S.D.N.Y.
    Feb. 27, 2007) ........................................................................................................... 21

Badgett v. Tex. Taco Cabana, L.P., No. 05-3624, 2006 WL 2934265 (S.D. Tex. Oct. 12,
    2006) ............................................................................................................................ 4

Barnwell v. Corrections Corp. of America, No. 08-2151-JWL, 2008 WL 5157476 (D.
    Kan. Dec. 9, 2008) .................................................................................................... 40

Basco v. Wal-Mart Stores, Inc., No. Civ. A. 00-3184, 2004 WL 1497709 (E.D. La. Jul. 2,
    2004) ................................................................................................................... 19, 26

Bell Atlantic Corp. v. Twombly, 127 S.Ct. 1955 (2007)........................................................ 16, 28

Blackmon v. Brookshire Grocery Co., 835 F.2d 1135 (5th Cir. 1988) ....................................... 21

Brooks v. BellSouth Telecommunications, No. 1:07-cv-3054-ODE, Docket Entry No.
    159 (N.D. Ga. Feb. 10, 2009) .................................................................................. 3, 9

Brumbelow v. Quality Mills, Inc., 462 F.2d 1324 (5th Cir. 1972) .............................................. 25

Burkhart-Deal v. Citifinancial, No. 7-1747, 2008 WL 2357735 (W.D. Pa. June 5, 2008) ......... 37

Byes v. Telecheck Recovery Servs., Inc., 173 F.R.D. 421 (E.D. La. 1997)................................. 33

Cash v. Conn Appliances, Inc., 2 F.Supp.2d 884 (E.D. Tex. 1997) ........................................... 21

Condo v. Sysco Corp., 1 F.3d 599 (7th Cir. 1993) ..................................................................... 24

Davis v. Friendly Express, Inc., 2003 WL 21488682 (11th Cir. Feb. 6, 2003).................... 21, 23

Dubin v. Miller, 132 F.R.D. 269 (D. Colo. 1990) ....................................................................... 34

Dudley v. Tex. Waste Systems, Inc., No. SA-05-CA-0078, 2005 WL 1140605 (W.D.
    Tex. May 16, 2005)................................................................................................... 27

Dufrene v. Browning-Ferris, Inc., 994 F. Supp. 748 (E.D. La. 1998) ......................................... 21

E. Tex. Motor Freight System, Inc. v. Rodriguez, 431 U.S. 395 (1977) ...................................... 32

Ellis v. Edward D. Jones & Co., L.P., 527 F. Supp. 2d 439 (W.D. Pa. 2007)............................. 37

England v. New Century Fin. Corp., 370 F. Supp. 2d 504 (M.D. La. 2005)............................... 17

Evans v. IAC/Interactive Corp., 244 F.R.D. 568 (C.D. Cal. 2007) ............................................. 33

Evans v. Lowe's Home Centers, Inc., No. 3:CV-03-0438, 2006 WL 1371073 (M.D. Pa.
    May 18, 2006)........................................................................................................... 24

Forrester v. Roth's I.G.A. Foodliner, Inc., 646 F.2d 413 (9th Cir. 1981) ..................................... 25

Gen. Tel. Co. v. Falcon, 457 U.S. 147 (1982) ............................................................................. 29

Griffin v. Wake County, 142 F.3d 712 (4th Cir. 1998) .................................................... 21, 23, 24

Gulf Oil Co. v. Bernard, 452 U.S. 89 (1981)................................................................................ 29

H&R Block, Ltd. v. Housden, 186 F.R.D. 399  (E.D. Tex. 1999)................................................. 17

Hall v. Burk, No. 3:01-CV-2487, 2002 WL 413901, 2002 U.S. Dist. LEXIS 4163 (N.D.
    Tex. Mar. 11, 2002) ......................................................................................................... 16, 18

Harris v. Fee Transp. Servs., Inc., No. 3:05-cv-0077-P, 2006 WL 1994586 (N.D. Tex.
    May 15, 2006)......................................................................................................................... 19

Harvill v. Westward Commc'ns, L.L.C., 433 F.3d 428 (5th Cir. 2005)........................................ 25

Herring v. Hewitt Assoc., Inc., No. 06-267 (GEB), 2006 WL 2347875 (D.N.J. Aug. 11,
    2006) ....................................................................................................................................... 37

Himmelman v. Continental Cas. Co., 2006 U.S. Dist. LEXIS 56189 (D.N.J. Aug. 11,
    2006) ....................................................................................................................................... 37

Hoffmann-La Roche Inc. v. Sperling, 493 U.S. 165 (1989)................................................... 15, 17

Humphries v. Stream Int'l, Inc., 2004 U.S. Dist. LEXIS 220465 (N. D. Tex. Feb. 13,
    2004) ....................................................................................................................................... 39

In re American Family Mut. Ins. Co. Overtime Pay Litigation, No. 06-cv-17430-WYD-
    CBS, 2009 WL 248677 (D. Colo. Feb. 3, 2009) ................................................................... 39

Jackson v. City of San Antonio, 220 F.R.D. 55 (W.D. Tex. 2003) .............................................. 37

King v. Gulf Oil Co., 581 F.2d 1184 (5th Cir. 1978) ................................................................... 29

Lachapelle v. Owens-Illinois, Inc., 513 F.2d 286 (5th Cir. 1975)............................................... 37

Landavazo v. Toro Co., No. 08-50227, 2008 WL 5111078 (5th Cir. Dec. 5, 2008).................... 28

Leuthold v. Destination America, Inc., 224 F.R.D. 462 (N.D. Cal. 2004) .................................. 36

Liberty Lincoln Mercury v. Ford Mktg., 149 F.R.D. 65 (D.N.J. 1993)........................................ 34

Logan v. Denny's, Inc., 259 F.3d 558 (6th Cir. 2001) ................................................................. 38

Lusardi v. Xerox Corp., 118 F.R.D. 351 (D.N.J. 1987)................................................................. 3

McClain v. Leona's Pizzeria, Inc., 222 F.R.D. 574 (N.D. Ill. 2004) ........................................... 37

McKnight v. Kimberly Clark Corp., 149 F.3d 1125 (10th Cir. 1998)........................................... 25

Mike v. Safeco Ins. Co. of Am., 223 F.R.D. 50 (D. Conn. 2004) ................................................ 31

Mitchell v. Abercrombie & Fitch Co., 428 F.Supp.2d 725 (S.D. Ohio 2006)............................. 24

Moeck v. Gray Supply Corp., No. 03-1950 (WGB), 2006 WL 42368 (D.N.J. Jan. 6,
    2006) ....................................................................................................................................... 37

Monahan v. County of Chesterfield, 95 F.3d 1263 (4th Cir. 1996).............................................. 21

Mooney v. Aramco Servs., 54 F.3d 1207 (5th Cir. 1995) ................................................... 3, 17, 18

Muecke v. A-Reliable Auto Parts and Wreckers, Inc., No. 01 C 2361, 2002 U.S. Dist.

LEXIS 11917 (N.D. Ill. June 21, 2002) ................................................................. 36

Newsom v. NPC Int'l, Inc., No. 03-2068, slip op. (W.D. Tenn. Sept. 29, 2003) ........................ 24

Newton v. City of Henderson, 47 F.3d 746 (5th Cir. 1995) ........................................... 25

Norman v. Dell Inc., No. 07-6028, 2008 WL 2899722 (D. Or. July 10, 2008) ........................... 38

Pappa v. Unum Life Ins. Co. of America, No. 3:07-CV-0708, 2008 WL 2048664 (M.D. Pa. May 12, 2008) ...................................................................................... 38

Prentice v. Fund for Pub. Research, No. C-06-7776-SC, 2007 WL 2729187 (N.D. Cal. Sept. 18, 2007) ...................................................................................... 39

Ramsey v. Ryan Beck & Co., Inc., No. 07-635, 2007 WL 2234567 (E.D. Pa. Aug. 1, 2007) .............................................................................................. 36

Riddle v. Nat'l Security Agency, Inc., No. 05 C 5880, 2007 WL 2746597 (N.D. Ill. Sept. 13, 2007) ........................................................................................ 35, 37

Roy v. County of Lexington, South Carolina, 948 F.Supp. 529 (D.S.C. 1996) ......................... 24

Russell v. Wells Fargo & Co., No. 07-3993 CW, 2008 WL 4104212 (N.D. Cal. Sept. 3, 2008) .............................................................................................. 40

Samson v. Apollo Res., Inc., 242 F.3d 629 (5th Cir. 2001) ........................................... 21

Sandoz v. Cingular Wireless LLC, 533 F.3d 913 (5th Cir. 2008) ....................................... 37

Satterwhite v. City of Greenville, Tex., 578 F.2d 987 (5th Cir. 1978) ................................. 29

Saxton v. Young, 479 F. Supp. 2d 1243 (N.D. Ala. Mar. 14, 2007) ..................................... 23

Schlesinger v. Reservists Comm. to Stop the War, 418 U.S. 208 (1974) ................................ 32

Shook v. Bd. of County Comm'rs of County of El Paso, 543 F.3d 597 (10th Cir. 2008) ............. 38

Shushan v. Univ. of Colo. at Boulder, 132 F.R.D. 263 (D. Colo. 1990) ................................. 3

Simmons v. T-Mobile USA, Inc., No. 06-1820, 2007 WL 210008 (S.D. Tex. Jan. 24, 2007) .......................................................................................... 17, 26

Songer v. Dillon Res., Inc., 569 F. Supp. 2d 703 (N.D. Tex. 2008) ................................ 17, 18

Stirman v. Exxon Corp., 280 F.3d 554 (5th Cir. 2002) .............................................. 29, 32

Teblum v. Eckerd Corp. of Fla., Inc., No. 2:03-CV-495, 2006 WL 288932 (M.D. Fla. Feb. 7, 2006) ...................................................................................... 23

Thiebes v. Wal-Mart Stores, No. 98-802-KI, 1999 WL 1081357 (D. Or. Dec. 1, 1999) . 30, 31, 35

Thiebes v. Wal-Mart Stores, No. 98-802-KI, 2002 WL 479840 (D. Or. Jan. 9, 2002) ................ 30

Thiessen v. Gen. Elec. Capital Corp., 996 F. Supp. 1071 (D. Kan. 1998) .................................. 19

Torres v. CSK Auto, Inc., No. EP-03-CA-113(KC), 2003 WL 24330020 (W.D. Tex. Dec. 17, 2003) ...................................................................................... 39

Treme v. HKA Enters., Inc., No. 07-1134, 2008 WL 941777 (W.D. La. Apr. 7, 2008) .... 4, 17, 18

Unger v. Amedisys Inc., 401 F.3d 316 (5th Cir. 2005) ................................................ 29

Valcho v. Dallas County Hosp. Dist., 574 F. Supp. 2d 618 (N.D. Tex. 2008) ................ 18, 19, 28

<u>Valentino v. Carter-Wallace, Inc.</u>, 97 F.3d 1227 (9th Cir. 1996) .................................. 35

<u>Vuyanich v. Republic Nat. Bank of Dallas</u>, 723 F.2d 1195 (5th Cir. 1984)................................ 32

<u>Wilks v. Pep Boys</u>, No. 3:02-0837, 2006 WL 2792218 (M.D. Tenn. Sept. 26, 2006)................. 26

<u>Williams v. Trendwest Resorts, Inc.</u>  No. 2:05-CV-0605-RCJ-LRL, 2007 WL 2429149
    (D. Nev. Aug. 20, 2007) ............................................................................ 37

<u>Wren v. Rgis Inventory Specialists</u>, C-06-05778 JCS, 2007 WL 4532218 (N.D. Cal. Dec.
    19, 2007) ............................................................................................... 40

<u>Xavier v. Belfor USA Group, Inc.</u>, 06-491, 2008 WL 4862533 (E.D. La. Sept. 23, 2008) ....... 4, 9

<u>Yadav v. Coleman Oldsmobile, Inc.</u>, 538 F.2d 1206 (5th Cir. 1976)........................................... 21

## STATUTES

29 U.S.C. § 216.............................................................................................................. 1, 16

29 U.S.C. § 255 .................................................................................................................... 4

## RULES

FED. R. CIV. P. 23................................................................................................................ 34

## REGULATIONS

29 C.F.R. § 778.114 ....................................................................................................... 15, 20

OKLA. ADMIN. CODE §380:30-1-8 ...................................................................................... 28

IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

| | | |
|---|---|---|
| HITUL GANDHI, individually, and on behalf of<br>a class of others similarly situated, | § § § | |
| Plaintiffs, | § § | |
| v. | § § | Case No. 1:08-cv-00248 |
| DELL INC.,<br>and<br>DELL MARKETING USA L.P., | § § § § § | |
| Defendants. | § | |

**DEFENDANTS' RESPONSE IN OPPOSITION TO PLAINTIFFS' MOTION AND
MEMORANDUM FOR CERTIFICATION UNDER 29 U.S.C. § 216(B) AND CLASS
ACTION CERTIFICATION UNDER FED. R. CIV. P. 23**

Defendants Dell Inc., Dell USA L.P.,[1] and Dell Marketing USA L.P. (erroneously sued

herein as "Dell Marketing L.P.") ("Dell") file this Response in Opposition to Plaintiffs' Motion

and Memorandum for Certification ("Pls.' Mot.").  Pursuant to Local Rule CV-7, Dell is

contemporaneously filing a Factual Appendix specifying relevant facts, including all

declarations, deposition transcripts, and other documents supporting these facts.  For the reasons

shown below, the Court should deny Plaintiffs' Motion.

## I.  INTRODUCTION

Plaintiffs seek certification of a Fair Labor Standards Act ("FLSA") collective action

under 29 U.S.C. § 216 (b) of "business sales representatives who . . . worked at a Dell call center

between April 1, 2005, and the present."  (Pls.' Mot. at 9.)  They also seek certification of a Rule

23 class under Oklahoma law of "[a]ll business sales representatives who worked for Dell at its

call center located in Oklahoma City, Oklahoma between December 14, 2004 and the present."

---

[1] Defendants Dell Inc. and Dell USA L.P. were never the employers of any of the individuals who have filed or
joined these consolidated lawsuits, and they are not proper defendants in this case.  Dell Marketing USA L.P. was
Plaintiffs' employer.  See Answer in Gandhi at 1; Original Answer of Dell USA L.P. and Dell Marketing USA L.P.
in Davis at 1; Original Answer of Dell Inc. in Davis at 1.

(Id. at 17.)  Plaintiffs argue that class certification is appropriate because Dell's "business sales representatives" are all "similarly situated."

Despite months of discovery, Plaintiffs' Motion is unsupported by any evidence other than fourteen patently unreliable cookie-cutter declarations of Plaintiffs themselves.  The factual assertions in the declarations are belied by Plaintiffs' own deposition testimony.  Quite to the contrary of the allegations in the declarations, Plaintiffs' deposition testimony and the documentary evidence establish that Plaintiffs had dissimilar jobs in different business units at Dell.  Indeed, the term "business sales representative" is one coined by Plaintiffs to describe a broad spectrum of different jobs.[2]  The deposition testimony and documentary evidence further establish that Plaintiffs were not subject to a common, unlawful policy or plan.  Plaintiffs have produced no evidence that they are "similarly situated" other than uncorroborated declarations that are patently unreliable and unfit for consideration by the Court.

Plaintiffs' FLSA claims fall into two categories.  First, Plaintiffs claim that Dell improperly applied the fluctuating workweek method of payment.  Second, Plaintiffs claim that they were not paid for all hours worked.

The reality is that all Plaintiffs were properly paid pursuant to the fluctuating workweek method of compensation as described in Department of Labor regulations.  Under the fluctuating workweek method of compensation, employees receive a fixed salary regardless of the number of hours worked each pay period.  When employees work overtime hours (more than 40 hours worked in a workweek), they receive an additional overtime premium.  The fluctuating workweek method of compensation is commonly used in situations where, as here, employees' hours fluctuate from week to week and gives employees a reliable guaranteed base salary and flexibility to work additional hours to maximize sales commissions.

---

[2] Based on their definition of the term "business sales representative," Plaintiffs "estimate that the size of the putative FLSA collective action is approximately 10,000 business sales representatives."  (Pls.' Mot. at 3, n.4.)

The facts also show that Plaintiffs' uncompensated time claim is meritless.  Plaintiffs all kept their own time using a commercially-available software program from a company called Kronos (hereinafter "Kronos") that allowed Plaintiffs to record the exact start and end times of their work.  Using that software, the Plaintiffs reported their actual hours worked and were paid for all reported hours.

## II.  STATEMENT OF *FACTS*, NOT UNSUPPORTED ALLEGATIONS

As discussed in greater detail below, Plaintiffs must make a threshold showing that they are similarly situated to prevail on their Motion.[3]  To that end, Plaintiffs begin their motion with several pages of purported facts, supported only by their declarations.  However, Plaintiffs' deposition testimony <u>directly contradicts</u> their declarations on key points, and this Court should accordingly disregard all declarations filed by Plaintiffs.[4]  In addition, Plaintiffs' pay stubs and time records demonstrate that Plaintiffs' allegations are completely false.  Plaintiffs' assertions of "fact" are not supported by any credible evidence.

**A.    Dell Objects to and Asks the Court to Strike the Declarations Attached to Plaintiffs' Motion Because They Are Contradicted by Plaintiffs' Deposition Testimony and the Documentary Evidence, Conclusory, and Not Based on Personal Knowledge.**

Plaintiffs attached fourteen nearly identical declarations to their Motion.   These declarations make the same substantive assertions, with occasional minor variations in wording.  Of the fourteen Plaintiffs who filed declarations, all Plaintiffs except Jamey Mendenhall have

---

[3] The Fifth Circuit has recognized two methods courts may apply to determine whether they should exercise their discretion to conditionally certify a FLSA class and to facilitate notice to individuals who are potentially similarly situated: the <u>Lusardi</u> two-step approach and the <u>Shushan</u> "spurious class action" approach.  <u>Mooney v. Aramco Servs.</u>, 54 F.3d 1207, 1213-15 (5th Cir. 1995); <u>Shushan v. Univ. of Colo. at Boulder</u>, 132 F.R.D. 263 (D. Colo. 1990); <u>Lusardi v. Xerox Corp.</u>, 118 F.R.D. 351 (D.N.J. 1987).  The Fifth Circuit has specifically refused to sanction or endorse either certification method.  <u>Mooney</u>, 54 F.3d at 1216.  However, both tests require a showing that potential plaintiffs are similarly situated — a showing that Plaintiffs are unable to make.

[4] <u>Brooks v. BellSouth Telecommunications</u>, a recent FLSA case filed by call center employees in the Northern District of Georgia alleging similar claims that were supported by similarly unreliable declarations, is particularly instructive on this point.  No. 1:07-cv-3054-ODE, Docket Entry No. 159, at 2 (N.D. Ga. Feb. 10, 2009).  A copy of the court's order denying the plaintiffs' motion for conditional certification is attached to the Factual Appendix.  <u>See</u> Exhibit U and discussion <u>infra</u> at 8.

been deposed.  Dell objects to all of Plaintiffs' declarations.[5]  The Court should disregard Plaintiffs' declarations because they are, on their face, both conclusory and not based on personal knowledge.  See, e.g., Treme v. HKA Enters., Inc., No. 07-1134, 2008 WL 941777 (W.D. La. Apr. 7, 2008) ("[U]ncorroborated assertions, without more, do not fulfill the plaintiff's burden under Lusardi.").  The Court should also disregard these stock declarations because Plaintiffs' sworn deposition testimony clearly contradicts the assertions in their declarations.  See Xavier v. Belfor USA Group, Inc., 06-491, 2008 WL 4862533, at *4 (E.D. La. Sept. 23, 2008) (granting defendant's Motion to Strike the Affidavits attached to plaintiffs' Motion to Proceed as a Collective Action) ("Affidavits, at a minimum, must be reliable to be considered by the Court. As the affidavits at issue are not reliable, they are not considered.")

   1.   **Plaintiffs' Declaration Testimony Regarding Salary Deductions Is False and Belied by Their Own Depositions and by the Documentary Evidence.**

   In each declaration submitted by Plaintiffs, paragraph 5 states: *"It was my understanding that if I missed work and did not have any paid leave time available, or if I worked fewer than forty (40) hours per week, then Dell would deduct from my purported base salary."*  In each declaration, paragraph 6 states either: *"It was my understanding that I had to work at least forty (40) hours per week to be eligible to receive my purported base salary"* or *"Dell did not explain to me that I would receive my purported base salary no matter how many hours I worked in a week."*  Additionally, nine plaintiffs stated in their declaration that they were *"full-time **hourly***

---

[5] In addition to the fact that Plaintiffs' declarations are unreliable, Dell also objects to the declarations of Plaintiffs Brothers and Mendenhall on the grounds that their claims are barred by the FLSA's statute of limitations.  The FLSA presumes a two-year statute of limitations but provides for a three-year period if the Plaintiff can show that the defendant's violation of the FLSA was "willful." 29 U.S.C. § 255 (a).  As admitted in her declaration and as confirmed by Dell, Plaintiff Brothers's employment with Dell ended on September 7, 2005.  (See Brothers Decl. at ¶ 1.)  Plaintiff Brothers filed her consent to join this lawsuit on September 26, 2008.  As admitted in his declaration and as confirmed by Dell, Plaintiff Mendenhall's employment with Dell ended in July 2005.  (Mendenhall Decl. at ¶ 1.)  Plaintiff Mendenhall filed his consent to join this lawsuit on August 5, 2008.  Accordingly, these two Plaintiffs' claims are barred even under the FLSA's three-year limitation period for willful violations.  They are thus not similarly situated employees who could opt into this action as a matter of law.  See Badgett v. Tex. Taco Cabana, L.P., No. 05-3624, 2006 WL 2934265, at *3 (S.D. Tex. Oct. 12, 2006).

*employee[s]."*[6]   All of the above described assertions contained in declarations signed by Plaintiffs are clearly contradicted by Plaintiffs' own exhibits and deposition testimony.

First, almost all of the Plaintiffs admitted under oath when deposed that they received a fixed salary, including seven of the nine Plaintiffs who claimed to be "hourly employee[s]" in their declarations.   (See Barker Dep. at 25:21-26:6; Brothers Dep. at 56:7-14[7]; Carson Dep. at 15:9-15[8]; Davis Dep. at 24:3-7, 66:8-13[9]; Haley Dep. at 32:10-17; Moore Dep. at 66:21-67:2, 75:14-21, 77:7-10[10]; Ricketts Dep. at 46:3-11; Schrouf Dep. at 37:7-16, 40:24-41:3; Stewart Dep. at 19:15-18, 30:9-13, 47:9-12, 59:9-11; Wojciechowski Dep. at 18:24-19:2.)

---

[6] See Brothers Decl. at ¶ 1; Carson Decl. at ¶ 1; Davis Decl. at ¶ 1; Gandhi Decl. at ¶ 1; Haley at ¶ 1; Mendenhall at ¶ 1; Moore Decl. at ¶ 1; Ricketts Decl. at ¶ 1; Schrouf Decl. at ¶ 1 (emphasis added).

[7]
    Q . . . Is that the way you understood your compensation to be?  That you got a fixed  salary, regardless of
    the number of hours that you worked?
    A  Yes.
Brothers Dep. at 56:7-14.  Notably, Plaintiff Brothers stated in her declaration that she was "a full-time hourly employee."  (See Brothers Decl. at ¶1.)

[8]
    Q When you came to work at Dell, how were you paid?
    A Salary.
    Q And was part of that salary guaranteed?  I mean, was there a guaranteed base that you would receive?
    A Yes.
Carson Dep. at 15:9-15.  Notably, Plaintiff Carson stated in her declaration that she was "a full-time hourly employee."  (See Carson Decl. at ¶ 1.)

[9]
    Q  How were you paid?  On what basis were you paid?
    A  I had an offering letter.
    Q  Was it hourly, salary?
    A  Salary, nonexempt.
Davis Dep. at 24:3-7.

    Q   Do you remember whether or not you were always paid your base salary, regardless of the number of
    hours that you worked?  I mean, there wasn't a time where your pay got docked or anything like that?
    A  I don't believe it was docked, no, sir.
Davis Dep. at 66:8-13.  Notably, Plaintiff Davis stated in his declaration that he was "a full-time hourly employee." (Davis Decl. at ¶ 1.)

[10]
    Q  So was it your understanding that you've always received the same base pay each week?
    A  Yes.
    Q  Regardless of the number of hours that you've worked?
    A  Yes.
Moore Dep. at 66:21-67:2.

    Q  The first page says: "Weekly salary paid biweekly."  You understood that was how you were paid?
    A  Yes.
    Q  And you knew you were paid that weekly salary, regardless of number of hours worked?
    A  Yes.
Moore Dep. at 75:14-21.

    Q  Okay.  You had an understanding that your weekly salary stayed the same regardless of the number of

5

Second, Plaintiffs' pay checks and pay stubs corroborate that they received the same base salary each week regardless of time worked. The evidence shows that Dell <u>never</u> deducted pay from Plaintiffs' base salary, regardless of whether they had paid leave time available.[11] (Hudanick Decl. at ¶ 7; Atsumi Decl. at ¶¶ 3, 7.) In fact, Dell has <u>never</u> deducted pay from any salaried non-exempt employee's base salary regardless of whether they had paid leave time available. (Hudanick Decl. at ¶ 7; Atsumi Decl. at ¶¶ 3, 7.)

Third, the assertions in Plaintiffs' declarations described immediately above are clearly contradicted by Exhibit F to Plaintiffs' Motion, a set of Dell training slides explaining the salaried non-exempt pay structure. The first line of the first page states: ***"Weekly salary (paid bi-weekly) <u>paid regardless of number of hours worked</u>."*** Each of the next two pages states: "Pay=$450 (receive salary regardless of # of hours worked)." Thus, Plaintiffs' assertions in their declarations that "Dell did not explain" the compensation structure are contradicted by the documentary evidence submitted by the Plaintiffs in support of their Motion.

### 2. Plaintiffs' Declaration Testimony Regarding Lunch Deductions Is False and Belied by Their Own Depositions and by the Documentary Evidence.

The declarations signed and filed by Plaintiffs are also contrary to Plaintiffs' sworn deposition testimony regarding whether they were paid for work performed during their lunch hour. Plaintiffs' declarations state that *"Dell automatically deducted one hour of pay for my lunch break"* and that *"work performed for Dell"* during lunch breaks was *"routinely"* or

---

hours that you worked?

A  Yes.

Moore Dep. at 77:7-10. Notably, Plaintiff Moore stated in his declaration that he was "a full-time hourly employee." (Moore Decl. at ¶ 1.)

[11] For example, Plaintiff Moore worked 37.5 hours in the workweek ending June 25, 2006. He used no paid time off hours but received his entire salary. In the two workweeks ending August 6, 2006, he worked 34 hours and 37 hours respectively. He used no paid time off benefits in either week but received his full salary. Plaintiff Webb worked only 33.75 hours in the week ending September 30, 2007, used no paid time off hours, but received her full salary. Plaintiff Clanton worked only 37 hours for the workweek ending December 16, 2007, used no paid time off hours, yet received his full salary. (Hudanick Decl. at ¶ 7.)

"*often*" unpaid.   The deposition testimony of several Plaintiffs contradicts this conclusory language and shows that Plaintiffs' declarations are simply false.

First, the documentary evidence shows that Plaintiffs' testimony is false.   Plaintiffs reported their work time by entering the time that they worked into Kronos.   (See Appx. at ¶¶ 19-20.)   For employees who entered only a morning start time and an evening end time, Kronos would automatically deduct one hour for a lunch period unless the employee canceled the deduction by entering the cancel deduction code (represented as "CD" on Kronos records).   (Hudanick Decl. at ¶ 11.)   No cancel code was necessary because employees could avoid the automatic deduction by simply reporting a different lunch period by clocking out and clocking in.   (Id.)

Plaintiffs' Kronos records contradict their declarations and demonstrate that their allegations about automatic lunch deductions and working through lunch without pay are false.   For example, in his declaration filed with the Court, Plaintiff Schrouf stated that he "was **routinely** unpaid" for work allegedly performed during lunch.   (Schrouf Decl. at ¶ 8) (emphasis added).   However, of the 242 days that Plaintiff Schrouf worked at Dell during the three-year period prior to filing his consent to join this lawsuit, he reported a lunch period (*i.e.*, he did not have an automatic lunch hour deduction) on every day except three: June 1, 2006, and his last two days working for Dell, November 16-17, 2006.   (Hudanick Decl. at ¶ 11.)   Similarly, in his declaration filed with the Court, Plaintiff Wojciechowski stated that he "was **often** unpaid." (Wojciechowski Decl. at ¶ 8) (emphasis added).   Plaintiff Wojciechowski's time records show that he never had an hour deducted from his pay for lunch during the three years prior to his joining this lawsuit.   (Hudanick Decl. at ¶ 11.)   Plaintiff Stewart stated in his declaration filed with the Court that he "often worked through all or a portion of my lunch break" and was "**routinely** unpaid" for off-the-clock work.   (Stewart Decl. at ¶¶ 8-9.)   Of approximately 435

work days at Dell in the three years before joining the lawsuit, Plaintiff Stewart had the automatic one-hour deduction on only 23 days and used the "CD" code to cancel the lunch deduction almost 400 times during that same period.  (Hudanick Decl. at ¶ 11.)  Other Plaintiffs also routinely used either the clock-out/clock-in or "CD" code method to cancel the default deduction when they worked during a lunch period, including Plaintiffs Gandhi, Barker, Haley, Pate, Romriell, Snead, and Webb.  (Id.)

Second, the deposition testimony of many Plaintiffs contradicts the declaration testimony. For example, while his declaration states that he was "routinely unpaid" for work allegedly performed during his lunch break, Plaintiff Barker gave a detailed explanation in his deposition of how to enter lunch periods into Kronos as time worked, and he testified that he entered his lunch times correctly for pay purposes when he knew he had worked through part of a lunch break.  (Barker Dep. at 61:5-20.)  Contrary to their declarations, Plaintiffs Brothers, Carson, Haley, and Wojciechowski testified (a) that they knew to enter lunch periods into Kronos as time worked when they worked through lunch, and (b) that they reported their lunch periods accurately for pay purposes.  (Brothers 64:12-18; Carson 28:1-20; Haley Dep. at 34:5-7, 132:1-19; Wojciechowski Dep. at 35:3-19.)  The two named Plaintiffs in the Davis case state in their declarations that *"Dell automatically deducted one hour of pay for my lunch break."*  (Davis Decl. at ¶ 7; Moore Decl. at ¶ 7.)  However, Plaintiff Davis testified in her deposition that she did not remember "ever hear[ing] any mention that Kronos automatically deducted an hour [for lunch]."  (Davis Dep. at 47:4-12.)  Plaintiff Moore testified that he simply did not "know anything about the way Kronos handled time for lunch" and did not "know whether it deducted an hour from [his] schedule or not."  (Moore Dep. at 20:16-21.)

The widespread contradictions between Plaintiffs' declarations and their sworn deposition testimony should be of grave concern for the Court.  Dell objects to and asks the

Court to strike all declarations filed by Plaintiffs with the Court in support of their Motion.  The recent decision of the United States District Court for the Northern District of Georgia in <u>Brooks v. BellSouth Telecommunications</u> is particularly instructive.  Similarly to this case, the plaintiffs in <u>Brooks</u> filed a motion for conditional certification of a FLSA collective action to which they attached declarations of twenty-six call center employees that were "nearly identical," "including those of the named Plaintiffs."  No. 1:07-cv-3054-ODE, Docket Entry No. 159, at 5 (N.D. Ga. Feb. 10, 2009) (Ex. U at 5).  The defendant objected to certain paragraphs of the declarations, providing evidence that the statements in those paragraphs were false.  <u>Id.</u> at 15.  The court disregarded those portions of the declarations that asserted facts contradicted by other evidence, finding that none of the declarants had made these statements based on personal knowledge.  <u>Id.</u>  Here, Plaintiffs' declarations regarding their compensation are not based on personal knowledge, and this Court should disregard them as did the court in <u>Brooks</u>.

In summary, because Plaintiffs' declarations are conclusory, contradicted by their deposition testimony[12] and the documentary evidence, and not based on personal knowledge, they are unreliable and should be disregarded by the Court.  <u>See</u> <u>Brooks</u>, No. 1:07-cv-3054-ODE; <u>Xavier</u>, 2008 WL 4862533, at * 4; <u>Aguirre v. SBC Comm'ns, Inc.</u>, No. 05-3198, 2006 WL 964554, at *19 (S.D. Tex. Apr. 11, 2006) (brief and conclusory statements in plaintiffs' complaint and motion for notice are insufficient).

**B.    The Purported Class Plaintiffs Seek to Have Certified, i.e., the So-Called "Business Sales Representatives," Cover a Broad Spectrum of Dissimilar Jobs.**

Plaintiffs have chosen to refer to themselves and the individuals they seek to represent as *"business sales representatives."* (Pls.' Mot. at ¶ 1.) Dell does not use this term to refer to any group of its employees.  (Astsumi Decl. at ¶ 2.)  The term *"business sales representatives,"* as

---

[12] See summary of contradictions above and chart showing such contradictions at Tables 2-3 of the Factual Appendix.

coined by Plaintiffs, encompasses a broad spectrum of sales positions from the Small and Medium Business Unit ("SMB"), where Plaintiffs worked.[13]   As demonstrated by the chart below, the SMB Division contains 27 different sales jobs in seven subunits.  Each job within SMB has significant differences in compensation,[14] work schedules, lunch breaks, kinds of accounts handled, responsibilities, and managers.  (See  Hudanick Decl. at ¶ 4.)

| Sales Employee's Job  ISR = Inside Sales Representative  TSR = Technical Sales Representative | Work on a sales queue | Mostly handle incoming calls | Scheduled by Call Center Ops | Handle large orders | Have assigned accounts | Able to work from home | Have pre-shift huddles | Have set lunch period | Sell computer systems | Sell storage products | Sell software |
|---|---|---|---|---|---|---|---|---|---|---|---|
| **Asset Recovery Business (ARB)** | | | | | | | | | | | |
| ARB - ISR | Y | Y | Y | N | N | N | Y | Y | Y | N | N |
| ARB - TSR | N | N | N | N | N | N | Y | Y | Y | N | N |
| **Advanced Systems Group (ASG)** | | | | | | | | | | | |
| ASG - BSDt TSR | Y | N | N | N | N | N | N | N | Y | Y | N |
| ASG - BSDr TSR | N | N | N | Y | Y | N | N | N | Y | Y | N |
| ASG - MMD TSR | N | N | N | Y | Y | N | N | N | Y | Y | N |
| ASG - POS | Y | Y | Y | N | N | N | N | N | Y | N | N |
| **Business Systems Division Transactional (BSDt)** | | | | | | | | | | | |
| BSDt – New Queue- ISR | Y | Y | Y | N | N | N | Y | Y | Y | N | N |
| BSDt-Super queue-ISR | Y | Y | Y | N | N | N | Y | Y | Y | N | N |
| BSDt-Large Order Representative (LOR) | N | N | N | Y | N | N | Y | Y | Y | N | N |
| BSDt-S&P-ISR (Panama only) | Y | Y | Y | N | N | N | Y | Y | N | N | Y |
| BSDt-S&P-LOR | N | N | N | Y | N | N | Y | Y | N | N | Y |
| BSDt-S&P-software specialist ISR | N | N | N | Y | N | N | Y | Y | N | N | Y |
| **Business Systems Division Development (BSDd)** | | | | | | | | | | | |
| BSDd-ISR | Y | N | N | Y | Y | N | Y | Y | Y | Y | Y |
| BSDd-TSR | N | N | N | Y | Y | N | N | N | Y | Y | Y |
| **Business Systems Division Relationship (BSDr)** | | | | | | | | | | | |
| BSDr –ISR | N | N | N | Y | Y | N | N | N | Y | N | Y |
| BSDr-S&P ISR | N | N | N | Y | Y | N | N | N | Y | N | Y |
| BSDr-S&P-Software Specialist-ISR | N | N | N | Y | N | N | N | N | N | N | Y |
| BSDr-S&P-Hardware Specialist-ISR | N | N | N | Y | N | N | N | N | N | N | Y |
| **Mid Markets Division (MMD)** | | | | | | | | | | | |
| MMD –Development-ISR | N | N | N | Y | Y | N | N | N | Y | N | Y |
| MMD-Acquisition-ISR | N | N | N | Y | Y | N | N | N | Y | N | Y |
| MMD-Software and Peripherals (S&P)-ISR | N | N | N | Y | Y | N | N | N | N | N | Y |
| **Americas Transactional Group (ATG)** | | | | | | | | | | | |
| ATG–Affiliates (AFF)-ISR | Y | Y | N | Y | Y | Y | N | Y | Y | Y | Y |
| ATG – AFF-TSR | N | N | N | Y | Y | Y | N | Y | Y | Y | Y |
| ATG- Product Transactional Group (PTG) ISR | Y | Y | N | Y | Y | Y | N | Y | Y | Y | Y |
| ATG–PTG-TSR | N | N | N | Y | Y | Y | N | Y | Y | Y | Y |
| ATG -After Point Of Sale (APOS)-ISR | Y | N | N | N | N | Y | N | Y | N | N | Y |
| ATG –Employee Purchase Program (EPP)-ISR | Y | Y | Y | N | N | N | Y | Y | N | N | N |

[13] The SMB Unit is one of four business units at Dell in which sales representatives may work: Large Enterprise, SMB, Public, and Consumer.  As explained in the Hudanick and Atsumi declarations, the various sales representative jobs in these units have widely dissimilar duties, schedules, compensation plans, and working conditions.  (Hudanick Decl. at ¶ 3; Atsumi Decl. at ¶ 8.)  Sales representatives in the Large Enterprise business unit also make sales to businesses and would be covered by the Plaintiffs' definition of "business sales representatives" despite these fundamental differences.

[14] Plaintiffs allege (without evidentiary support) that "Dell classifies all business sales representatives as 'salary nonexempt' employees." (Pls.' Mot. at ¶ 13.)  Although it is true that "business sales representatives" are all paid on a salary basis, Plaintiffs' broad definition of that phrase encompasses both exempt and non-exempt employees.  For example, account executives are salaried exempt employees who are not paid according to the fluctuating workweek method of compensation.  Plaintiffs also fail to mention that the varying subgroups all had different compensation plans.  The training document attached to Ms. Atsumi's declaration gives an overview of the compensation plans for five of the seven SMB subgroups as of June 2, 2008.  (See Atsumi Decl. at ¶ 6 & Attach. 3.)

(See Hudanick Decl. at ¶ 4 & Attach. 1.)

Plaintiffs' assertion that Dell uses "one basic job description for all business sales representatives" is false and belied by Plaintiffs' own evidence. (Pls.' Mot. at ¶ 2.) The document attached to Plaintiffs' Motion discusses multiple inside sales representative (ISR) job descriptions. (Atsumi Decl. at ¶ 6, Attach. 1.) Moreover, that document does not cover the completely different category of technical sales representative (TSR). (Id.; Hudanick Decl. at ¶ 6.) Some Plaintiffs held TSR positions during their employment with Dell, including Plaintiffs Snead, Stewart, and Webb. (Id.; Stewart Dep. 11:18-22; Webb Dep. 9:16-20.) The job of a TSR is fundamentally different than the job of an ISR. (Id.) The various job titles listed in Plaintiffs' Exhibit A (i.e., ISR IB, ISR II, ISR III, etc.) are simply another way in which ISRs are differently situated. Plaintiffs are not similarly situated with respect to their job titles. For example, Plaintiff Webb testified that she had moved through the ranks from "SR IB" to "SR III," (Webb Dep. at 67:1-9), whereas Plaintiff Moore testified that he was never promoted beyond "SR IB," (Moore Dep. at 69:22-70:4).

Plaintiffs are also incorrect in alleging (without evidentiary support) that "[b]usiness sales representatives report up a uniform management structure." (Pls.' Mot. at ¶ 4.) As noted above, "business sales representatives" worked in a variety of groups and subgroups, all with different managers. As explained in the Declaration of Patti Powers, which Plaintiffs submitted as Exhibit B to their Motion, the management hierarchy for "business sales representatives" includes 11 Vice Presidents, 8 Directors, and approximately 260 managers. (Pls.' Mot., Ex. B at ¶ 6.)

Plaintiffs' allegations of FLSA violations are dissimilar in part because they held varied jobs.[15] For example, Plaintiffs Haley, Stewart, Ricketts, Schrouf, Webb, and Wojciechowski

---

[15] The individuals who have opted into this case demonstrate the diversity of jobs encompassed by the phrase "business sales representatives." For example, Plaintiff Barker testified that he was initially a "new queue" ISR, before being promoted to: "super queue" ISR; Business System Division Transactional (BSDt) software and peripheral (S&P) ISR; Business System Division Relationship (BSDr) S&P ISR; and finally to one of Dell's Large

11

assert that they were required to perform preliminary and postliminary tasks without compensation. (See Pls.' Mot. at ¶ 21.) Critical to their allegations is the assertion that they were to be manning telephones and available to take calls at their scheduled shift start. (Id. at ¶ 21-22.) These allegations could only apply to sales jobs involving a sales queue taking inbound calls on a schedule set by Call Center Operations. Other sales jobs, including all jobs with assigned accounts, did not have a requirement to be available for inbound calls during a scheduled shift. (Hudanick Decl. at ¶ 5.) Similarly, Plaintiffs testified in their declarations that they were required to work through their lunch period "to accommodate heavy call volume." However, only sales jobs that predominantly handled inbound calls ever had to "accommodate heavy call volume." Most sales jobs were unaffected by inbound call volume. (Hudanick Decl. at ¶ 5.)

**C.   Plaintiffs Were Individually Responsible for Accurately Reporting Their Time in Kronos, Although Their Timekeeping Habits Were Dissimilar.**

It is significant and fatal to Plaintiffs' lawsuit[16] that Plaintiffs reported their work time at Dell by entering, adjusting, and approving the time that they worked into Kronos.[17] Plaintiffs received extensive training on the use of Kronos. (See Atsumi Decl. at ¶¶ 4, 6; Appx. at ¶¶ 22-32.) Plaintiffs had the responsibility and the ability to record all of their work time in Kronos accurately for pay purposes. (See Hudanick Decl. at ¶ 9-11; supra Section II.A; and infra n.19.) Plaintiffs also had the ability to modify their reported work time after a pay period closed in Kronos via a WOW request. (See Atsumi Decl. at ¶ 9.) If any Plaintiff failed to receive

---

Order Representative (LOR) positions. (Barker Dep. at 9:11-11:9.) Although Plaintiff Haley also started out as a new queue ISR and a super queue ISR, he was then promoted to a position as BSDr Representative and then into the Mid-Market Division as a relationship sales representative. (Haley Dep. at 16:17-17:12, 20:5-20:20.) Moreover, when Plaintiff Haley worked as a new queue ISR, he was employed as a contract worker and did not actually become a Dell employee until later. (Id. at 8:4-11.) On the other hand, Plaintiff Dowell testified that she was in the Employee Purchase Plan (EPP) group the entire time she was at Dell. (Dowell Dep. at 19:18-20.)

[16] See Section III.A.2, infra.

compensation for hours worked, it was the result of that individual's own failure to report, adjust, or approve his or her time in Kronos.  (See Hudanick Decl. at ¶ 9-11; supra Section II.A; and infra n.19.)

While all Plaintiffs were responsible for accurately recording, adjusting, and approving their own time in Kronos, Plaintiffs had different timekeeping habits.  Some Plaintiffs testified that they entered their time into Kronos daily.  (See, e.g., Dowell Dep. at 28:5-18.)  Others filled out their time sheets in advance and corrected them later.  (See, e.g., Ricketts Dep. at 16:2-18.)  Others entered their time at the end of the pay period.  (See, e.g., Barker Dep. at 54:7-12.)  As noted above, several Plaintiffs used the Cancel Deduction code to ensure they were properly paid when they worked through lunch.  (See supra Section II.A.2.)  Other Plaintiffs used the different technique of clocking in and out during the actual period of their lunch.  (Hudanick Decl. at ¶ 11.)  Similarly, notwithstanding their allegations regarding preliminary work that was unpaid, several Plaintiffs reported work start times that varied extensively from their scheduled shift starting time.  (Id. at ¶ 9.)  These variations in Plaintiffs' timekeeping habits make each Plaintiff's off-the-clock claim dissimilar: each Plaintiff's claim requires individualized inquiry, making certification of their claims as a collective action inappropriate.

**D.     Dell Paid Plaintiffs for All Time Worked.**

Only *six* of the Plaintiffs' declarations allege that they performed any pre-shift or post-shift activities without pay.  (See Pls.' Mot. at ¶ 21.)  In fact, several Plaintiffs admitted in their depositions that they entered their time accurately into Kronos to account for all time worked.[18]  Plaintiffs allege that they had to "boot[] up their computers," "log[] on to Dell's computer network," or "open[] required computer programs" before each shift.  Id.  However, some

---

[17] Barker Dep. at 15:11-19; Brothers Dep. at 19:3-5, 22:1-3; Carson Dep. 27:12-28:3; Dowell Dep. at 28:5-18; Haley Dep. at 33:13-18, 34:5-7; Rickets Dep. at 16:2-18; Schrouf Dep. at 23:2-13; Webb Dep. at 23:10-17.
[18] See Brothers Dep. at 65:4-14; Carson Dep. at 27:12-28:3; Dowell Dep. at 28:5-15; Ricketts Dep. at 16:2-18; Schrouf Dep. at 23:2-13.

Plaintiffs testified that they either did not have to perform these tasks before the start of their shifts, (see, e.g., Dowell Dep. at 58:6-59:13), or that the time spent performing these tasks was no more than two to three minutes, (see, e.g., Carson Dep. at 17:20-25).  The record is clear that Plaintiffs received extensive training on how to enter their time into Kronos to capture all time worked, including time worked before or after their scheduled shift.  (See Appx. at ¶¶ 22-36.) As noted above, Plaintiffs' Kronos records show that several Plaintiffs routinely entered the precise times when they began and finished work.[19]  (See Hudanick Decl. at ¶ 9.)

**E.     Dell Paid Plaintiffs for Instances Where They Worked through Lunch.**

As noted above, several Plaintiffs have testified that they knew how to record their time accurately in Kronos for pay purposes, including how to accurately report when they worked through lunch.  See supra Section II.A.2.  Plaintiffs' testimony in this regard is corroborated by Plaintiffs' time records, which show that Plaintiffs accurately recorded instances where they worked during all or part of their one hour lunch break.[20]  (Hudanick Decl. at ¶ 11.)  The only

---

[19] For example:

- Plaintiff Romriell was scheduled to work from 8:00 am to 5:00 pm in June, July and August of 2006.  He routinely reported hours as early as 7:15 am.  During those three months, there were only three days in which he clocked in at 8:00 am or later.  Although his shift was scheduled to end at 5:00 pm, he routinely clocked out much later, sometimes as late as 9:00 pm.  Mr. Romriell clocked out at exactly 5:00 pm only 12 times and clocked out later 33 times during those months.

- From May to July 2006, Plaintiff Haley was scheduled to work starting at 8:00 am.  He routinely clocked in at 7:30 am.

- Plaintiff Davis was employed by Dell from July 2005 until October of 2005.  She clocked in at times ranging from as early as 7:00 am to as late as 10:45 am and clocked out as late as 10:50 pm.  She clocked out at exactly 5:00 pm only on four occasions, three of which were in the first week of her employment.

(Hudanick Decl. at ¶ 9.)

[20] For example:

- During the three years prior to his joining the litigation, Plaintiff Schrouf worked 242 days for Dell.  Of those 242 days, he reported a lunch period and did not have a lunch hour deduction on 239 days.  The only days he did not report a different lunch period were June 1, 2006 and November 16-17, 2006 (his last two days of work).

- Plaintiff Wojciechowski worked 41 days for Dell in the three years prior to joining this suit.  Of those days, he did not have a single day on which the default one-hour deduction was applied.  Instead, he clocked out and back in for his meal breaks.

- Of the approximately 435 work days at Dell in the three years before Plaintiff Nicholas Stewart joined the

support offered by Plaintiffs for their allegation that they "consistently work through all or a portion of their meal break" or that this time "goes unpaid," (Pls.' Mot. at ¶¶ 25-26), are their declarations, which have already proven unreliable on this issue and contrary to Plaintiffs' own deposition testimony.  They are also contrary to the clear facts as documented in Dell's records. (Hudanick Decl. at ¶ 11; see Section II.A at 7-8.)

**F.   Plaintiffs' Allegation That Dell "Improperly Classified" Them Misstates the Issue.**

Plaintiffs allege that Dell "improperly classified business sales representatives as salaried non-exempt employees."  (Pls.' Mot. at ¶ 27.)  This is not a misclassification case.  Neither Plaintiffs nor Dell has ever argued that Dell's so-called business sales representatives working at its call centers were exempt from the overtime provisions of the FLSA.[21]  Dell simply pays them pursuant to the fluctuating workweek method of compensation, which is legal and appropriate under the FLSA.  See 29 C.F.R. § 778.114.

### III.  ARGUMENTS & AUTHORITIES

When Congress amended the FLSA by passing the Portal-to-Portal Act of 1947, it mandated that plaintiffs file a written consent to sue with the Court as a requirement for joining a collective action under the FLSA, "[i]n part responding to excessive litigation spawned by plaintiffs lacking a personal interest in the outcome."  Hoffmann-La Roche Inc. v. Sperling, 493 U.S. 165, 173 (1989).  Sixty years later, in Bell Atlantic Corp. v. Twombly, Justice Souter expressed the Supreme Court's concern about allowing a "largely groundless claim" to "take up

---

lawsuit, Mr. Stewart had the automatic one-hour deduction on only 23 days.  He used the "CD" code to cancel the lunch deduction almost 400 times during that same period.

- Other plaintiffs also routinely used either the clock-out/clock-in or "CD" code to cancel the default deduction when they worked during a lunch period, including Tracie Hurt Webb, Christopher Snead, Bradley Pate, Russell Romriell, Joshua Barker, Jamey Mendenhall, David Haley, and Hitul Gandhi.

(Hudanick Decl. at ¶ 11.)

[21] In this regard, the order attached to Plaintiffs' Motion as Exhibit P from Viera v. First Union Corp. is irrelevant to the issues in this case.  In Viera, the plaintiffs complained that defendant had "intentionally misclassif[ied]" them "as being exempt from the overtime compensation requirements of 29 U.S.C. § 216(b)."  (Pls.' Mot., Ex. P.)

the time of a number of other people, with the right to do so representing an *in terrorem* increment of the settlement value." Bell Atl. Corp. v. Twombly, 127 S.Ct. 1955, 1966 (2007). The granting of notice to potential class members in FLSA collective actions is largely discretionary.  As another district court in Texas has noted, "[t]he relevant inquiry is not whether the court has discretion to facilitate notice, but whether this is an appropriate case in which to exercise discretion." Hall v. Burk, No. 3:01-CV-2487, 2002 WL 413901, 2002 U.S. Dist. LEXIS 4163, * 5, 6 (N.D. Tex. Mar. 11, 2002).  The considerations and concerns expressed by Congress in passing the Portal-to-Portal Act and by the Supreme Court in Twombly must certainly bear on the exercise of the Court's discretion in this case where Plaintiffs rely almost proudly on mere allegations, many of which contradict Plaintiffs' own deposition testimony.  This is particularly the case here because Plaintiffs have had months to conduct discovery and muster evidence in support of their Motion.  Plaintiffs have failed to carry their burden to demonstrate why Court should exercise its discretion to certify a class and thereby facilitate notice of the case to thousands of potential class members.  Plaintiffs cannot establish that they or the members of the putative class are "similarly situated."  This Court should deny Plaintiffs' Motion in its entirety.

**A.     Plaintiffs' Motion Should Be Denied Because Plaintiffs Are Not Similarly Situated.**

Section 216 (b) of the FLSA authorizes "any one or more employees" to maintain a suit "for and in behalf of himself or themselves and other employees similarly situated."  29 U.S.C. § 216 (b).  The FLSA also provides: "No employee shall be a party plaintiff to any such action unless he gives his consent in writing to become such a party and such consent is filed in the court in which such action is brought."  Id.  Congress enacted the written consent requirement "for the purpose of limiting private FLSA plaintiffs to employees who asserted claims in their

own right and freeing employers of the burden of representative actions." Hoffmann-La Roche, 493 U.S. at 173 (citing 93 Cong. Rec. 538, 2182[22]).

"At the initial notice stage, plaintiffs must provide 'substantial allegations that the putative class members were together the victims of a single decision, policy, or plan . . ..'" Songer v. Dillon Res., Inc., 569 F. Supp. 2d 703, 707 (N.D. Tex. 2008) (quoting H&R Block, Ltd. v. Housden, 186 F.R.D. 399, 400 (E.D. Tex. 1999)); see also Mooney, 54 F.3d at 1214, n.8. "A court may deny plaintiffs' right to proceed collectively if the action arises from circumstances purely personal to the plaintiff, and not from any generally applicable rule, policy, or practice." Simmons v. T-Mobile USA, Inc., No. 06-1820, 2007 WL 210008, at *4 (S.D. Tex. Jan. 24, 2007); Aguirre, 2006 WL 964554, at *5; England v. New Century Fin. Corp., 370 F. Supp. 2d 504, 507 (M.D. La. 2005).

For the reasons stated above, this Court should disregard the declarations filed in support of Plaintiffs' Motion because they are unreliable, i.e., they are contradicted by Plaintiffs' deposition testimony, conclusory, not based on personal knowledge, and inconsistent with the documentary evidence described herein.   Put more directly, Plaintiffs' declarations contain clearly false information.   However, even if the Court decides to pay any regard to these false and misleading declarations, they are insufficient to satisfy Plaintiffs' notice-stage burden.   See, e.g., Treme v. HKA Enters., Inc., No. 07-1134, 2008 WL 941777 (W.D. La. Apr. 7, 2008) ("[U]ncorroborated assertions, without more, do not fulfill the plaintiff's burden under Lusardi."); Aguirre, 2006 WL 964554, at *6-7 (holding that brief and conclusory statements in plaintiffs' complaint and motion for notice are insufficient); Hall v. Burk, 2002 U.S. Dist. LEXIS

---

[22] As Senator Donnell remarked during debate of the Portal-to-Portal Act: "Obviously, . . . this is a wholesome provision, for **it is certainly unwholesome to allow an individual to come into court alleging that he is suing on behalf of 10,000 persons and actually not have a solitary person behind him,** and then later on have 10,000 men join in the suit, which was not brought in good faith, was not brought by a party in interest, and was not brought with the actual consent or agency of the individuals for whom an ostensible plaintiff filed the suit."  93 Cong. Rec. 2182 (1947) (remarks of Sen. Donnell) (emphasis added).

4163 at *7-8 (unsupported assertions of widespread violations are insufficient).  In a recent case from the Northern District of Texas, the court denied the plaintiffs' motion for conditional certification where plaintiffs' only evidence were "virtually identical" affidavits containing "primarily conclusory allegations unsupported by any factual assertions demonstrating the basis of the affiants' knowledge."  See Songer, 569 F. Supp. 2d at 707.[23]  The court held that these affidavits alone were insufficient to demonstrate that conditional certification was warranted.  Id. The court held the affidavits were not evidence of a "widespread discriminatory plan" and accordingly denied the plaintiffs' motion for conditional certification.  Id.; see also Treme, 2008 WL 941777 at *3 (denying plaintiff's motion for conditional certification where plaintiff's only supporting evidence was (1) an affidavit that was "nothing more than an unsupported restatement of the allegations contained in the Complaint"; and (2) evidence that another court had conditionally certified a collective action against the same defendant).

Plaintiffs place great emphasis on the notion that the conditional certification/notice stage determination is a "fairly lenient standard."  (Pls.' Mot. at 11, 13, 15.)  As noted above, even when the parties have conducted little discovery and the court has minimal evidence before it, this first stage of the Lusardi test is not toothless: courts still require some **evidence** of a common, unlawful policy beyond conclusory assertions in pleadings, affidavits, or declarations. Leniency is not required at the conditional certification/notice stage of a case like this where the parties have conducted ample discovery.  See, e.g., Mooney, 54 F.3d at 1214; Valcho v. Dallas County Hosp. Dist., 574 F. Supp. 2d 618, 622 (N.D. Tex. 2008). ("[T]he court has less cause for leniency during the 'notice' phase of the analysis where a plaintiff has already conducted discovery on the certification issue.  . . . **Thus because the court does not intend that its powers be used for a 'frivolous fishing expedition,' . . . it will hesitate to facilitate notice**

---

[23] Unlike in this case, the record in Songer did not contain evidence contradicting the plaintiffs' affidavits.

**where a plaintiff, having already conducted discovery, still cannot support her claim with evidence.**") (emphasis added); <u>Harris v. Fee Transp. Servs., Inc.</u>, No. 3:05-cv-0077-P, 2006 WL 1994586 (N.D. Tex. May 15, 2006) (**"[W]here the parties have had the opportunity to conduct discovery on the issue of certification, the similarly situated inquiry is more stringent."**) (collecting cases); <u>Basco v. Wal-Mart Stores Inc.</u>, No. 00-3184, 2004 WL 1497709, at *4-5 (E.D. La. July 2, 2004).  In <u>Valcho</u>, where the plaintiff had three months to conduct discovery prior to filing her motion for conditional certification, the court required the plaintiff "to produce evidentiary support beyond the bare allegations contained in her complaint and personal declaration."  <u>Valcho</u>, 574 F. Supp. 2d at 622-23; <u>see also</u> <u>Thiessen v. Gen. Elec. Capital Corp.</u>, 996 F. Supp. 1071, 1080-81 (D. Kan. 1998) (analyzing whether plaintiffs were "similarly situated" under heightened evidentiary standard where plaintiffs had conducted three months of discovery and obtained opt-in consents).

The parties have conducted ample discovery in this case.[24]  The Court should deny Plaintiffs' Motion because Plaintiffs have failed to produce "evidentiary support beyond the bare allegations contained in [Plaintiffs'] complaint and personal declaration[s]."  <u>See</u> <u>Valcho</u>, 574 F. Supp. 2d at 622-23.  Plaintiffs' argument for conditional certification and the resultant issuance of notice is supported by nothing more than conclusory allegations and unreliable declarations, which fail to demonstrate the existence of a "single decision, policy, or plan" that violated the FLSA.  On the other hand, substantial testimonial and documentary evidence demonstrates that Plaintiffs' claims and job characteristics are too overwhelmingly disparate to justify collective treatment.  Plaintiffs have failed to carry their burden of demonstrating that they and the members of the putative class they seek to have certified are similarly situated.

---

[24] As of March 2, 2009, Dell has produced a combined total of 3,354 pages of documents (1,033 in <u>Davis</u> and 2,321 in <u>Gandhi</u>) and has taken 15 depositions (5 in <u>Davis</u> and 10 in <u>Gandhi</u>).  Plaintiffs have produced 2,409 documents (540 in <u>Davis</u> and 1,869 in <u>Gandhi</u>) and have taken 5 depositions (2 in <u>Davis</u> and 3 in <u>Gandhi</u>).  The parties have exchanged written discovery in the form of interrogatories and requests for production.  (Londa Decl. at ¶ 2.)

1.      **Plaintiffs' Allegations Regarding the Fluctuating Workweek Method of Compensation Do Not Constitute Violations of the FLSA and Are Not Conducive to Collective Action Treatment.**

Plaintiffs claim that Dell violated the FLSA through its application of the fluctuating workweek method of compensation.   Plaintiffs cannot dispute that the fluctuating workweek method of compensating non-exempt employees does not violated the FLSA: the Department of Labor specifically authorizes its use.  See 29 C.F.R. § 778.114.  Under the fluctuating workweek method of compensation, an employer pays its non-exempt employees a fixed weekly salary as compensation for all hours worked by the employee during the week, in addition to an overtime premium at half the employee's regular rate.  Id.  As the Department of Labor's regulations explain: "Since the salary in such a situation is intended to compensate the employee at straight time rates for whatever hours are worked in the workweek, the regular rate of the employee will vary from week to week and is determined by dividing the number of hours worked in the workweek into the amount of the salary to obtain the applicable hourly rate for the week. Payment for overtime hours at one-half such rate in addition to the salary satisfies the overtime pay requirement because such hours have already been compensated at the straight time regular rate, under the salary arrangement."  Id.

Plaintiffs claim that Dell's application of the fluctuating workweek was unlawful because Plaintiffs and the putative class members lacked a clear, mutual understanding that they would receive their salary regardless of hours worked if they did not have paid leave time available; "the hours worked by business sales representatives did not actually fluctuate above and below forty hours per week"; and Dell deducted from their salary payments when they worked fewer than 40 hours in a week and did not have leave time available.  (Pls.' Mot. at ¶ 27.)[25]  Plaintiffs'

---

[25] Plaintiffs do not dispute in their Motion that their salary exceeded the minimum wage.  Paragraph 20 of the Complaint in Gandhi states that the salary paid to Dell employees "is insufficient to satisfy the applicable minimum wage requirements absent Dell's efforts to 'true up' the payment."  Plaintiffs' Motion contains no mention of this allegation because the allegation is demonstrably false.  Even if the allegation were true, making adjustments to

claims are without merit because: (1) Plaintiffs knew that their salary did not depend on hours worked and that Dell did not make deductions from their salaries; and (2) their argument about their hours not fluctuating below forty hours per week is both factually contrary to the evidence and legally without merit. Plaintiffs' allegations are demonstrably false and cannot support conditional certification of a collective action.

> a.   **Plaintiffs' Claim That They and the Putative Class Members Lacked the Required Clear, Mutual Understanding Is Belied By (1) Plaintiffs' Knowledge That Their Salary Did Not Depend on Hours Worked and (2) the Clear Evidence That There Were No Deductions to Their Salaries.**

Plaintiffs claim that they lacked a "clear, mutual understanding" that they would receive their weekly salary regardless of the amount of time they worked in a given week, as required under the fluctuating workweek method of compensation.[26] To support this claim, Plaintiffs state in their Motion that they "believed" that Dell would deduct from their salaries if they worked fewer than forty hours and had no leave time available and that Dell did, in fact, make

---

ensure employees are paid minimum wage is lawful. Ayers v. SGS Control Servs., Inc., No. 03 CIV 9077 RMB, 2007 WL 646326, at *11 (S.D.N.Y. Feb. 27, 2007) (holding that an employee's base salary must only be "'reasonably calculated to provide' an average hourly rate at least equal to the applicable minimum wage") (quoting Cash v. Conn Appliances, Inc., 2 F.Supp.2d 884, 894 (E.D. Tex. 1997)); see also Aiken v. County of Hampton, 172 F.3d 43, 1998 WL 957458, at *5 (4th Cir. 1998); Davis v. Friendly Express, Inc., 2003 WL 21488682, at *2 (11th Cir. Feb. 6, 2003).

[26] The fluctuating workweek method of compensation is appropriate "when the employer and employee have agreed on a fixed salary for varying hours," regardless of whether the employee understands any other aspect of how overtime is calculated. Blackmon v. Brookshire Grocery Co., 835 F.2d 1135, 1138-39 (5th Cir. 1988) (reversing district court's computation of overtime damages and remanding with instructions to recalculate damages according to the fluctuating workweek method). "Section 778.114 does not require that the employee know the hours expected to be worked, that the fixed salary is not [to] be paid for weeks where the employee performs no work, or any other details of how the FWW is administered." Samson v. Apollo Res., Inc., 242 F.3d 629, 637 (5th Cir. 2001). In other words, "§ 778.114 requires only 'a "clear mutual understanding" between employer and employee that the fixed salary is to be compensation for all straight time hours worked, whether few or many.'" Dufrene v. Browning-Ferris, Inc., 994 F. Supp. 748 (E.D. La. 1998); see also Yadav v. Coleman Oldsmobile, Inc., 538 F.2d 1206, 1207-08 (5th Cir. 1976) (applying fluctuating workweek where plaintiff "understood that she was to receive a straight salary of $1,000.00 per month for whatever hours she worked"); accord Griffin v. Wake County, 142 F.3d 712, 717 (4th Cir. 1998) ("'[W]e do not find that the FLSA places the burden on the employer to hold an employee's hand and specifically tell him or her precisely how the payroll system works, particularly 'if that fact can be easily gleaned from employment policies, practices and procedures[.]'") (quoting Monahan v. County of Chesterfield, 95 F.3d 1263, 1275 (4th Cir. 1996)).

deductions from their salary when they were absent without leave time and failed to work at least forty hours in a workweek.  (<u>See</u> Pls.' Mot. at ¶¶ 27-28.)

The <u>only</u> support provided by Plaintiffs for their allegations are the conclusory statements contained in their declarations, (<u>See</u> Pls.' Mot. at ¶ 28), which, as demonstrated above, are contradicted by their sworn deposition testimony and the documentary evidence, (<u>supra</u> Section II.A.1).  Plaintiffs testified in their depositions that they were aware that they were paid on a salary basis and that they received their biweekly base salary regardless of hours worked.  (<u>See</u> <u>supra</u> Section II.A.1; Appx. at Table 2.)  In addition to their deposition testimony, the evidence submitted by Plaintiffs in support of their motion belies the allegation.  Plaintiffs received offer letters informing them that they were paid a salary.  (Pls.' Mot. at Ex. I.)  Plaintiffs were trained on their compensation and specifically shown that they would receive their full salary regardless of hours worked.  (Pls.' Mot. at Ex. F.)  Those training materials state in the very first bullet point: "Weekly Salary (paid bi-weekly) paid regardless of number of hours worked."  (<u>Id.</u>)  The next two slides model two scenarios in which the employee worked fewer than 40 hours but still received their full salary – each time with the parenthetical notation that the employee would "receive salary regardless of # of hours worked."  (<u>Id.</u>)

In addition to Plaintiffs' deposition testimony and documentary training materials, Plaintiffs and the putative class all received the requisite clear, mutual understanding from their bi-weekly paychecks.  Although Plaintiffs alleged that Dell improperly deducted from their salary payments, Plaintiffs **failed to produce evidence of a single improper deduction.**  Dell has thus far produced almost 1,400 pages of Plaintiffs' pay stubs during discovery.  (Londa Decl. at ¶ 3.)  Plaintiffs do not cite to a single deduction because the undisputable evidence is that Plaintiffs' base salary was never docked.  (Hudanick Decl. at ¶ 7; Atsumi Decl. at ¶¶ 3, 7; <u>see</u> <u>also</u> <u>supra</u> n.11.)

Plaintiffs's pay checks and pay stubs conclusively establish (1) that Plaintiffs clearly understood that they would receive their bi-weekly salary regardless of hours worked, and (2) that Plaintiffs did receive their bi-weekly salary regardless of hours worked, even when they did not have any paid leave time available.  As a matter of law, pay checks and pay stubs alone establish the presence of the required clear mutual understanding.  Friendly Exp., 2003 WL 221488682, at *2 (affirming district court's judgment, that, **as a matter of law, the explanation provided on the weekly pay stubs received by Plaintiffs "satisfied the requirement that a clear mutual understanding exists"**) (emphasis added).  Plaintiffs and the employees they seek to represent "**received a regular lesson – in the form of their paychecks – about how the fluctuating workweek plan operates.**" Griffin, 142 F.3d at 716-17; see also Saxton v. Young, 479 F. Supp. 2d 1243, 1257 (N.D. Ala. Mar. 14, 2007) (**"[A]n employee's pay stubs would be sufficient to establish the requisite mutual understanding necessary to establish a 'clear understanding' between an employer and employee regarding the use of the fluctuating workweek method."**) (emphasis added); accord Teblum v. Eckerd Corp. of Fla., Inc., No. 2:03-CV-495, 2006 WL 288932, at *5 (M.D. Fla. Feb. 7, 2006).  Thus, even had Plaintiffs not testified about their understanding and even had the offer letters and the training materials not been clear, Plaintiffs' paycheck stubs invalidate their claim.

> **b.    The FLSA Does Not Require Plaintiffs' Hours To Fluctuate Above and Below Forty Hours per Week for the Fluctuating Workweek Method of Overtime to Apply.**

Plaintiffs do not argue that their hours did not fluctuate *at all*.  Instead, Plaintiffs argue that "Dell cannot rely on the fluctuating workweek method of payment where the work schedules . . . did not fluctuate **below forty hours per week.**"  (Pls.' Mot. at ¶ 29.)  This argument is

factually contrary to the evidence[27] and legally without merit.  As a matter of law, an employee's hours need not fluctuate above and below forty hours per week for the fluctuating workweek method to apply.  **"[N]either existing authority nor the language of 29 C.F.R. § 778.114(a) supports Plaintiffs' argument that an employee's hours [must] fluctuate above and below 40 for the fluctuating workweek method of computing overtime compensation to apply."** Mitchell v. Abercrombie & Fitch Co., 428 F.Supp.2d 725, 735 (S.D. Ohio 2006) (emphasis supplied); accord Evans v. Lowe's Home Centers, Inc., No. 3:CV-03-0438, 2006 WL 1371073, at *3 (M.D. Pa. May 18, 2006), **("Plaintiffs argued that since they [regularly] worked in excess of forty hours a week, the fluctuating work week method did not apply . . ..  Neither the language of 29 C.F.R. 778.114(a) supports [the Plaintiffs'] point of view nor does the existing authority.")** (citations omitted) (emphasis supplied); see also Griffin, 142 F.3d at 715; Condo v. Sysco Corp., 1 F.3d 599, 602 (7th Cir. 1993); Newsom v. NPC Int'l, Inc., No. 03-2068, slip op. at 8-9 (W.D. Tenn. Sept. 29, 2003) (attached as Exhibit T) ("Accordingly, the Court finds that an employee's hours need not vary both above and below forty hours per week in order for an employer to utilize the fluctuating work week method of calculating overtime."); Roy v. County of Lexington, South Carolina, 948 F.Supp. 529, 531 (D.S.C. 1996).

---

[27] All Plaintiffs' hours did in fact fluctuate above and below forty hours per week, with the exception of Plaintiff Davis, who was employed by Dell for only three and a half months.  (Hudanick Decl. at ¶ 8).  For example, Plaintiff Ricketts' hours worked per week varied from a low of 17 hours to a high of 48.75 hours; Plaintiff Romriell's hours worked per week varied from a low of 23.5 hours to a high of 59.25 hours; and Plaintiff David Haley worked as few hours as 34 in a workweek and as many as 58.5 in a workweek.  (Id.)

2.     **Plaintiffs' Off-the-Clock Claims Are Not Appropriate for Collective Action Treatment as a Matter of Law.**

a.     **Plaintiffs' Off-the-Clock Claims Are Not Actionable as a Matter of Law Because Plaintiffs Bore Responsibility for Accurately Reporting Their Time.**

Plaintiffs' off-the-clock allegations cannot constitute a violation of the FLSA as a matter of law because Plaintiffs bore the responsibility for accurately reporting their time.[28]  "[I]f the 'employee fails to notify the employer or deliberately prevents the employer from acquiring knowledge of the overtime work, the employer's failure to pay for the overtime hours is not a violation of § 207.'"  Newton v. City of Henderson, 47 F.3d 746, 747 (5th Cir. 1995) (quoting Forrester v. Roth's I.G.A. Foodliner, Inc., 646 F.2d 413, 414-15 (9th Cir. 1981)).  In Newton, the plaintiff had the duty to submit time reports showing any overtime hours worked but did not do so.  Id. at 748.  Because the employee did not "adhere to [the employer's] procedures for claiming overtime," the court held that the plaintiff could not show that his employer had "violated the FLSA by paying him only for the hours claimed on his time sheets."  Id.; accord Harvill v. Westward Commc'ns, L.L.C., 433 F.3d 428, 441 (5th Cir. 2005) (citing Newton, 47 F.3d at 748); Forrester, 646 F.2d at 414-15 ("[W]here the acts of an employee prevent an employer from acquiring knowledge, here of alleged uncompensated overtime hours, the employer cannot be said to have suffered or permitted the employee to work."); Brumbelow v. Quality Mills, Inc., 462 F.2d 1324, 1327 (5th Cir. 1972) (affirming holding that plaintiff "was estopped and could not profit from her own wrong in furnishing false data to the employer"); see also McKnight v. Kimberly Clark Corp., 149 F.3d 1125, 1130 (10th Cir. 1998) (noting that employee's **"failure to record claimed [uncompensated] time is fatal to a later claim for**

---

[28] As noted above, Plaintiffs had the responsibility and the ability to report their time accurately into Kronos.  See supra Section II.D.  Plaintiffs received extensive training on the use of Kronos.  Id.  If Plaintiffs made a mistake in reporting their time, they also had the ability to have their recorded work time changed via a WOW request.  See id. If any Plaintiff failed to receive compensation for hours worked, it was the result of that individual's own failure to report his or her time.  (See Hudanick Decl. at ¶ 9-11; supra section II.A.; and supra n.19.)

such [time]") (emphasis added); <u>Basco v. Wal-Mart Stores, Inc.</u>, No. Civ. A. 00-3184, 2004 WL 1497709, at *8 (E.D. La. Jul. 2, 2004) (denying motion for conditional certification and noting that defendant would be permitted to raise as a defense that plaintiffs failed to take advantage of Wal-Mart's system for accurately recording time); <u>Wilks v. Pep Boys</u>, No. 3:02-0837, 2006 WL 2792218, at *4 (M.D. Tenn. Sept. 26, 2006).

> **b.   Even if Plaintiffs' Allegations Could Constitute a Violation of the FLSA, Which They Cannot, Plaintiffs' Off-the-Clock Claims Require Individualized Inquiries That Make Collective Treatment Inappropriate.**

Even if Plaintiffs' off-the-clock allegations could constitute a cognizable claim under the FLSA, which they cannot, such allegations require individualized inquiries that make them inappropriate for collective action certification.  In <u>Simmons v. T-Mobile USA, Inc.</u>, the court denied the plaintiffs' motion for conditional certification of a FLSA collective action, noting that the case involved "claims of 'off the clock' unpaid overtime, where allegedly dozens (if not hundreds) of different low-level supervisors with wide management discretion in practice violate Defendant's clear, lawful written policies at some or many of Defendant's more than one hundred different retail locations."  2007 WL 210008, at *5.  The court held:

> While Simmons has evidence that at least some Texas RSRs have been required to work overtime hours and either to report them as regular scheduled hours or not to report the hours at all, . . . he has no independent admissible evidence from or about SRSRs whom he seeks to represent.  **Simmons's own personal observations are insufficient in the circumstances of this case (with 113 different T-Mobile locations and over a hundred supervisors) to constitute meaningful proof, even under a lenient standard, that raises an inference that the T-Mobile Texas SRSRs are "similarly situated" as to unpaid overtime claims for FLSA conditional certification purposes.**

<u>Id.</u> at *8 (emphasis added).  Similarly, Plaintiffs' declarations, should they be given any credence at all, do not establish the existence of other individuals who are similarly situated.  Plaintiffs' off-the-clock claims are dissimilar because each individual had different timekeeping habits, necessitating individualized treatment of each Plaintiff's claims.   (See <u>supra</u> Section II.D.)

Moreover, deposition testimony and the variance in Plaintiffs' declarations show that Plaintiffs have widely varying allegations regarding alleged "off-the-clock" work.  (See supra Section II. A, D-F.)  The individualized inquiries and defenses required by Plaintiffs' off-the-clock claims would make effective disposition and management of this case as a collective action procedurally burdensome, if not impossible.

This Court has refused to certify a collective action involving claims of working through lunch similar to those asserted by Plaintiffs here.  Dudley v. Tex. Waste Systems, Inc., No. SA-05-CA-0078, 2005 WL 1140605 (W.D. Tex. May 16, 2005).  In Dudley, the plaintiff alleged that the defendant "adjusted" his time records by deducting a half-hour or hour each day for lunch breaks.  Id. at *2.  The evidence showed that employees were required to take a half-hour or one-hour lunch break each day and to advise management if they worked through lunch.  Id.  In declining to conditionally certify a collective action, the court noted:

> **Any analysis of lunch breaks will result in this court and any jury hearing individual testimony regarding whether drivers regularly took lunch breaks, or only occasionally. If they did not take lunch breaks, the fact finder will need to hear the dates each driver actually worked through lunch and whether they needed to be compensated for an extra 30 minutes or one hour for the particular day. Further, the fact finder will need to hear whether any driver advised management that they worked through their break and required compensation.**

Id.  All of the issues that concerned the court in Dudley are present in this case.  Indeed, the Court need only look at the time records of the Plaintiffs to see their widely varied habits regarding lunch.   Accordingly, litigation of Plaintiffs' lunch claims would involve highly individualized inquiries, making collective treatment inappropriate.

### 3.    Plaintiffs Have Produced No Evidence to Support Their Allegation That "Dell's Incentive Policies Are Unlawful."

Plaintiffs allege that Dell "alters the requirements [of quotas, incentives, and promotions] so that business sales representatives cannot obtain" those quotas, incentive or promotions.  (Pls.'

Mot. at ¶ 36.)  Plaintiffs also allege that Dell "failed to include the incentive compensation in calculating business sales representatives' regular rate of pay."  (Id. at ¶ 40.)  In support of these allegations, Plaintiffs cite only to a paragraph from their original Complaint.  They cite no testimonial or documentary evidence to support these allegations.  (Id. at ¶¶ 35, 36, 40) (citing Complaint at ¶ 22.)  Plaintiffs did not even mention these allegations in their declarations. Plaintiffs' assertions about Dell's incentive policies not only fail to meet the requirements of the Lusardi test, they fail "to raise a right to relief above the speculative level" or "to state a claim to relief that is plausible on its face."  Twombly, 127 S.Ct. at 1965, 1974.[29]  Plaintiffs have not made "substantial allegations" that Dell's incentive policies are unlawful under the FLSA, and they have not presented "evidentiary support beyond the bare allegations" in this regard.  Valcho, 574 F. Supp. 2d at 622-23.

## B. The Court Should Deny Plaintiffs' Motion to Certify a Rule 23 Class Action under Oklahoma Law.

The Plaintiffs who worked in Dell's Oklahoma call center seek, in addition to collective action certification under the FLSA, certification of a Rule 23 class action under Oklahoma law on behalf of "business sales representatives" employed by Dell in Oklahoma.  Plaintiffs' Oklahoma law claims are identical to their FLSA claims both substantively and with respect to potential damages.[30]  Certifying a Rule 23 class action under Oklahoma law would do nothing more than allow the Oklahoma Plaintiffs to circumvent the FLSA's Congressionally mandated opt-in requirement.

---

[29] See also Landavazo v. Toro Co., No. 08-50227, 2008 WL 5111078 (5th Cir. Dec. 5, 2008) (affirming dismissal for failure to state a claim where plaintiff's "factual allegations [were] not enough to raise his right to relief above the speculative level") (citing Twombly, 127 S.Ct. at 1965).

[30] At the status conference held in the Oklahoma case on August 6, 2008, Plaintiffs' counsel readily acknowledged that Oklahoma law is substantively identical to the FLSA.  In fact, Oklahoma law simply and expressly adopts the overtime requirements of the FLSA and "adopts the regulations of the U.S. Department of Labor as published in the Code of Federal Regulations, and the Interpretive Bulletins relating thereto, in determining compliance issues on such claims."  See OKLA. ADMIN. CODE §380:30-1-8 (Regular wages, overtime and benefits).

"Recognizing the important due process concerns of both plaintiffs and defendants inherent in the certification decision, the Supreme Court requires district courts to conduct a **rigorous analysis** of Rule 23 prerequisites." Unger v. Amedisys Inc., 401 F.3d 316, 320-21 (5th Cir. 2005) (emphasis added)).[31]  "District courts are required to take a 'close look' at the parties' claims and evidence in making its Rule 23 decision." Id. at 321 (citing Amchem Prods., Inc. v. Windsor, 521 U.S. 591, 615 (1997)).  "The party seeking certification bears the burden of demonstrating that the rule 23 requirements have been met." Stirman, 280 F.3d at 562.  "Courts cannot make an informed decision [about class certification] based on bare allegations, one-sided affidavits, and unexplained Internet printouts." Unger, 401 F.3d at 325.[32]

### 1.     Plaintiffs Cannot Satisfy the Requirements of Rule 23 (a).

Rule 23 (a) provides: "One or more members of a class may sue or be sued as representative parties on behalf of all members only if: (1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interests of the class." FED. R. CIV. P. 23 (a).  Plaintiffs cannot satisfy these requirements, and this Court should accordingly deny Plaintiffs' motion to certify a class action under Rule 23.

---

[31] Accord Stirman v. Exxon Corp., 280 F.3d 554, 561 (5th Cir. 2002) ("A district court must conduct a rigorous analysis of the rule 23 prerequisites before certifying a class.") (quoting Gulf Oil Co. v. Bernard, 452 U.S. 89, 100 (1981))

[32] "The propriety of class action suits can seldom be determined on the basis of pleadings alone, and, ordinarily, it is the duty of the trial court to hold an evidentiary hearing before deciding whether to grant or deny class certification." King v. Gulf Oil Co., 581 F.2d 1184, 1186 (5th Cir. 1978); see also Satterwhite v. City of Greenville, Tex., 578 F.2d 987, 993 (5th Cir. 1978), cert. granted, judgment vacated on other grounds, 445 U.S. 940 (1980).  However, where a district court denies class certification without holding an evidentiary hearing, the court's denial will be upheld unless the plaintiff can show on appeal that he was prejudiced by the failure to hold the hearing. Gulf Oil, 581 F.2d at 1186-87 (5th Cir. 1978).

a.    **Numerosity.**

In Thiebes v. Wal-Mart Stores, Plaintiffs sued Wal-Mart, alleging that Wal-Mart encouraged its employees to work off the clock and that it did not pay employees for all hours worked in violation of the FLSA.  No. 98-802-KI, 1999 WL 1081357, at *3 (D. Or. Dec. 1, 1999).  The plaintiffs also contended that Wal-Mart violated Oregon wage and hour laws.  The court conditionally certified a collective action under the FLSA, but denied plaintiffs' motion to certify an opt-out Rule 23 class, stating that it was "**prudent to defer certifying a class action to see how many employees do, in fact, choose to opt in to the collective action**."  Id. (emphasis supplied).  Plaintiffs subsequently renewed their motion after notice was issued. Thiebes v. Wal-Mart Stores, No. 98-802-KI, 2002 WL 479840, at *1 (D. Or. Jan. 9, 2002).  In rejecting plaintiffs' renewed motion, the court stated as follows:

> A key prerequisite to the certification of a class action is that the putative class is so numerous that joinder of all members is impracticable.  **Notwithstanding plaintiffs' argument that I should use a figure in excess of 15,000 individuals to apply this standard, I believe the appropriate figure on which to focus is the 425 individuals who decided to opt into the collective action.  The fact that such a small percentage of the employees opted in is telling (by plaintiffs' calculations, the percentage is 2.7%) and cautions against a finding that joinder is impracticable, especially in light of the fact that the notice of the FLSA collective action included a description of plaintiffs' theory of the case that is the same as their basis for liability under the state law claims**.

Id. at *3 (emphasis added).

Plaintiffs allege that the Oklahoma law/Rule 23 class they seek to represent includes approximately 1,900 "business sales representatives" who worked at Dell's call center in Oklahoma.  (Pls.' Mot. at 18.)  However, only *twelve* "business sales representatives" employed at Dell's Oklahoma call center (by Plaintiffs' count, less than 1%) had opted into this case as of February 19, 2009 (including the named Plaintiffs).  Here, as in Thiebes, certification of an Oklahoma opt-out Rule 23 class action "would bring in many more employees than those who

believe they were actually aggrieved by [Dell's] conduct."  See Thiebes, 2002 WL 479840.  As such this Court should find that Plaintiffs cannot meet the numerosity requirement of Rule 23 (a).

### b.    Commonality.

Rule 23 (a)(2) requires Plaintiffs to demonstrate that common questions of law and fact exist.  See Thiebes, 1999 WL 1081357, at *4.  As demonstrated above, Plaintiffs' allegations in this case necessarily and unavoidably require individualized inquiries into each Plaintiff/putative Plaintiff's job, work schedule, compensation plan, and timekeeping habits; whether each individual performed pre-shift or post-shift tasks without entering their time accurately into Kronos; whether each individual accurately reported time spent working through lunch; and whether each individual understood that he or she was paid on a salary basis for all hours worked.  In addition, the Oklahoma Plaintiffs do not even allege the same six violations of Oklahoma law listed in Plaintiffs' Motion.  Indeed, the Original Complaint in Davis does not allege that Dell "fail[ed] to compensate business sales representatives at the required minimum wage," nor do Plaintiffs mention that allegation anywhere else in their Motion, (see supra n.25), nor did any of the Oklahoma Plaintiffs allege in their depositions that Dell violated the FLSA by not paying the required minimum wage.  See Mike v. Safeco Ins. Co. of Am., 223 F.R.D. 50, 53 (D. Conn. 2004) (denial of both the FLSA and Rule 23 classes where court would be required to conduct an individualized inquiry with respect to each class member to determine class membership); see also Allison v. Citgo Petroleum Corp., 151 F.3d 402, 419 (5th Cir. 1998) (stating that "under such circumstances an action conducted nominally as a class action would 'degenerate in practice into multiple lawsuits, separately tried'").

### c.    Typicality

Rule 23 (a)(3) requires Plaintiffs to demonstrate that "the claims or defenses of the representative parties are typical of the claims or defenses of the class."  FED. R. CIV. P.

23 (a)(3).  "[A] class representative must 'possess the same interest and suffer the same injury' as the class members."  <u>Vuyanich v. Republic Nat. Bank of Dallas</u>, 723 F.2d 1195, 1199 (5th Cir. 1984) (citing <u>Schlesinger v. Reservists Comm. to Stop the War</u>, 418 U.S. 208, 216 (1974); <u>E. Tex. Motor Freight Sys., Inc. v. Rodriguez</u>, 431 U.S. 395, 403 (1977)).  Notably, claims asserted by the named Plaintiffs in this case are not even typical of the claims advanced by the other individuals who have joined this suit.  As described in the Factual Appendix, Plaintiffs have alleged different claims against Dell.  (<u>See</u>  Appx. at ¶¶ 12-14.)

> **d.    Adequacy.**

"Rule 23(a)'s adequacy requirement encompasses class representatives, their counsel, and the relationship between the two."  <u>Stirman</u>, 280 F.3d at 563 (holding that district court had failed to conduct "a sufficiently 'rigorous' analysis" of the adequacy of the named plaintiff, where district court had found only that "no conflicts exist to preclude certification" regarding the adequacy requirement).  Courts "must consider '[1] the zeal and competence of the representative[s'] counsel and . . . [2] the willingness and ability of the representative[s] to take an active role in and control the litigation and to protect the interests of absentees[.]'"  <u>Id.</u>

Deposition testimony given by named Plaintiffs Davis and Moore shows that they are inadequate representatives of the class they seek to represent.  Plaintiff Davis swore in an affidavit that litigating their claims in this district would be "inconvenient" and would "work a substantial hardship on" her.  <u>See</u> Davis Aff. at ¶ 3.  Plaintiff Moore testified in his deposition that he did not know what a Rule 23 class action was, that he did not know he might have additional responsibilities as a class representative, **and that he would not be able to participate in the action at all if it were transferred to this Court.**  Moore Dep. at 46:5-

47:9[33]; Moore Aff. at ¶ 3.  Plaintiff Moore's lack of knowledge of his responsibilities as a class representative affect his ability to take an active role in and control the litigation and protect the interests of absentees.  Named Plaintiffs' financial concerns detract from both their ability and their willingness to adequately represent the class.

As indicated in considerable detail earlier in this Response, Plaintiffs signed and filed declarations in support of their Motion, which in numerous significant ways contradict their own sworn deposition testimony.  The signing and filing of these unreliable declarations is disturbing.  It is an additional reason why neither the named Plaintiffs nor Plaintiffs' counsel can meet Rule 23 (a)(4)'s adequacy of representation requirement.   See Evans v. IAC/Interactive Corp., 244 F.R.D. 568, 578-79 (C.D. Cal. 2007) (**"The discrepancies between the declarations and depositions are certainly troubling, and as discussed below, raise significant questions about the competence, if not the integrity, of the Plaintiffs and their counsel."**) (emphasis added); Byes v. Telecheck Recovery Servs., Inc., 173 F.R.D. 421, 426-27 (E.D. La. 1997) (finding that named plaintiff's "clearly false" affidavit filed with the court "indicates to the court that [plaintiff] places blind reliance on her attorneys, but even more so, it reflects poorly on the

---

[33]   Q  The lawsuit that you filed was filed as a collective action under the Fair Labor Standards Act, and also a Rule 23 class action under the Oklahoma statute. **Do you have any understanding of what your responsibility is as a Rule 23 class representative?**
**A  No.**
Q  Have you ever heard the term "Rule 23"?
A  No.
**Q   Do you have any understanding of any responsibilities you might have over and above just being a regular plaintiff in this lawsuit?**
**A  No.**
**Q   You've provided an affidavit in this lawsuit that, if the case were transferred to Austin, that you would be unable to participate at all. Do you remember doing that?**
**A  Yes.**
**Q  Was that truthful and accurate?**
**A  Yes.**
Q  Was that for financial reasons?
A  Yes.  And work reasons.
**Q   Okay.  If you had extra responsibilities as a class representative, knowing that the suit would be in Austin now, would you be able to undertake any additional responsibilities?**
**A  No.**
Moore Dep. at 46:5-47:9 (emphasis added).

adequacy of counsel"); see also Dubin v. Miller, 132 F.R.D. 269, 272 (D. Colo. 1990) ("A plaintiff's lack of credibility and the impurity of his motives can render him an 'inadequate' class representative.")

### 2. Plaintiffs Cannot Satisfy the Requirements of Rule 23 (b)(3).

In addition to satisfying the prerequisites of Rule 23 (a), a party seeking to certify a class action must also satisfy one of the three requirements in Rule 23 (b).  Plaintiffs allege that they satisfy the requirements of Rule 23 (b)(3).  They do not.

Certification under Rule 23(b)(3) requires a finding that "questions of law or fact common to the members of the class *predominate* over any questions affecting only individual members" and that "a class action is *superior* to other available methods for the fair and *efficient adjudication* of the controversy."  Liberty Lincoln Mercury v. Ford Mktg., 149 F.R.D. 65, 76 n.21 (D.N.J. 1993).  This standard requires Plaintiffs to make an even greater showing of commonality than that required under Rule 23 (a)(2).  Id.  As discussed above, Plaintiffs' allegations do not meet the less rigorous standard for commonality under Rule 23 (a)(2). Accordingly, Plaintiffs certainly do not meet the heightened standard under Rule 23 (b)(3).

Plaintiffs have also failed to show that a class action is superior to other available means that may more efficiently resolve this controversy.  To the contrary, because Plaintiffs' Oklahoma law claims require a person-by-person, day-by-day review of the facts and circumstances of each putative class member's hours worked, the payment or non-payment for such hours, the employment circumstances in various departments under the supervision of numerous managers, and the personal experiences and alleged damages of each member, certification of a class under Rule 23(b)(3) would be a logistical and managerial nightmare. Furthermore, Plaintiffs have failed to provide any detailed explanation of how they envision this case proceeding as an opt-out Rule 23 class action under Oklahoma law.  Plaintiffs' failure to

articulate a detailed class action litigation plan provides yet another reason that mandates the denial of class certification.  See Valentino v. Carter-Wallace, Inc., 97 F.3d 1227, 1234 (9th Cir. 1996).

Significantly, Plaintiffs cannot satisfy the superiority requirement of Rule 23 (b)(3) for the additional reasons that  (1) sending both an opt-in notice under the FLSA and an opt-out notice under Rule 23 to potential class members is confusing; and (2) FLSA collective actions are inherently incompatible with Rule 23 class actions.[34]  See Riddle v. Nat'l Security Agency, Inc., No. 05 C 5880, 2007 WL 2746597, at *3-4 (N.D. Ill. Sept. 13, 2007) (denying certification under Rule 23 for these reasons).  Plaintiffs' proposal to issue both an opt-in notice under the FLSA and an opt-out notice under Rule 23 would be contradictory and confusing.  In denying certification of a class under Rule 23, the district court in Thiebes stated the following:

> At this time, I decline to certify a class under Rule 23 for a number of pragmatic reasons:  First, I believe it would **be difficult to fashion an effective notice to perspective class members that explains their opportunity to opt into the FLSA collective action as well as their choice to opt-out of the class action. Second, it is prudent to defer certifying a class action to see how many employees do, in fact, chose to opt into the collective action.**  At that point, I will be best equipped to determine if joinder is impracticable and, thus, whether a class action may be appropriate.  Likewise, at that juncture, the variety of workers and their experiences at Wal-Mart can be ascertained and I will be better able to determine if the named plaintiffs are adequate class representatives.  Third, Wal-Mart has expressed its intent to move against some, if not all, of plaintiffs' state law claims and it should have an opportunity to do so before the proposed class is certified.  **Finally, I make the general observation that, while plaintiffs have articulated a unifying theory of why hourly workers throughout Oregon may have not been paid all of the overtime pay that they were due (and that such a theory is sufficient to find that hourly employees are similarly situated for purposes of FLSA), plaintiffs have not demonstrated that a class action is the superior method for resolving the numerous state law claim (where varying elements) that they have pled.  Plaintiffs' motion for class certification is denied**.

Id. (emphasis supplied).

---

[34] The incompatibility of Rule 23 class actions with § 216 (b) collective actions is discussed in greater detail below.

In <u>Leuthold v. Destination America, Inc.</u>, 224 F.R.D. 462, 464 (N.D. Cal. 2004), plaintiff tour directors sued their employer under the FLSA and California law.  They moved to certify these claims as a collective action under the FLSA and as a class action under California law/Rule 23.  The court granted plaintiffs' motion to certify the FLSA collective action but declined  to certify a Rule 23 class action under California law because plaintiffs did not satisfy the superiority requirement of Rule 23 (b)(3).   <u>Id.</u> at 464, 469-70.  The court found that the plaintiffs' attempt to "prosecute their pendent state law claims as part of the FLSA class action . . . **undercuts all the Rule 23 (b)(3) superiority factors**."  <u>Id.</u> at 469 (emphasis supplied).  The court in <u>Leuthold</u> found it likely that certification would result in "the somewhat peculiar situation of a large number of plaintiffs in the state law class who have chosen not to prosecute their federal claims." 224 F.R.D. at 470.  Similarly, in <u>Muecke v. A-Reliable Auto Parts and Wreckers, Inc.</u>, No. 01 C 2361, 2002 U.S. Dist. LEXIS 11917 (N.D. Ill. June 21, 2002), the court denied the plaintiffs' request to certify both a FLSA collective action and a Rule 23 class action.  In <u>Muecke</u>, the court found that Rule 23 (b)(3) certification of a state-law wage class "founders on the requirement that plaintiffs show that 'a class action is superior . . ..'"  <u>Id.</u> at *5.  Specifically, the court found that "[b]ecause all of the companies' present and former employees will have the chance to decide whether to [opt-in to] the § 216(b) case, and because those who wish to do so will be before the Court, it makes no real sense to the Court to certify a class that will automatically include all of the employees unless they opt out."  <u>Id.</u> at *6.  Similarly, the Court should decline to certify a Rule 23/Oklahoma law class action in this case.

### 3.     Rule 23 Class Actions and § 216(b) Collective Actions are Inherently Incompatible.

"**FLSA § 216(b) collective actions are incompatible with Rule 23 state-law class actions and cannot be brought together under one lawsuit.**"  <u>Ramsey v. Ryan Beck & Co., Inc.</u>, No. 07-635, 2007 WL 2234567, *2 (E.D. Pa. Aug. 1, 2007) (emphasis added).  "Dual-filed"

or "hybrid" wage suits, i.e., lawsuits seeking certification of § 216 (b) and Rule 23 representative actions in the same suit, "cause the FLSA claims to be 'swept into the case if class certification is granted.'"  Ellis v. Edward D. Jones & Co., L.P., 527 F. Supp. 2d 439, 446 (W.D. Pa. 2007).  As stated by the Fifth Circuit: **"There is a fundamental, irreconcilable difference between the class action described by Rule 23 and that provided for by FLSA § 16(b).  . . . It is crystal clear that § 16(b) precludes pure Rule 23 class actions in FLSA suits."**  LaChapelle v. Owens-Illinois, Inc., 513 F.2d 286, 288 (5th Cir. 1975) (emphasis added); accord Jackson v. City of San Antonio, 220 F.R.D. 55, 58 (W.D. Tex. 2003) (quoting LaChapelle and noting: "Rarely is a rule stated with such clarity"); see also Sandoz v. Cingular Wireless LLC, 533 F.3d 913, 916 (5th Cir. 2008) (quoting LaChapelle).  Courts have reasoned that this irreconcilable difference between the opt-in and opt-out procedures is, by itself, sufficient reason to refuse to certify a Rule 23 class action under state wage laws in the same suit as a FLSA collective action.[35]  Given that Plaintiffs have already admitted that their Oklahoma law claims are no different from their FLSA claims, this Court should refuse to certify a Rule 23 class action under Oklahoma law in the same case as a § 216 (b) collective action.

## C.     Plaintiffs' References to Norman v. Dell Inc. et al. Are Irrelevant.

In an apparent attempt to convince the Court to rubber-stamp their motion for conditional certification under the FLSA and to issue notice to putative class members, Plaintiffs ask the Court to take note of the United States District Court of Oregon's decision to conditionally

---

[35] See, e.g., Burkhart-Deal v. Citifinancial, No. 7-1747, 2008 WL 2357735 (W.D. Pa. June 5, 2008); Riddle v. Nat'l Security Agency, Inc., No. 05-c-5880, 2007 WL 2746597 (N.D. Ill. Sept. 13, 2007) ("Creating a Rule 23 class in this suit would [Congress's] goal [in creating the opt-in procedure]."); Williams v. Trendwest Resorts, Inc.  No. 2:05-CV-0605-RCJ-LRL, 2007 WL 2429149, *3-4 (D. Nev. Aug. 20, 2007) (holding that "the class action mechanisms of the FLSA and Rule 23 are incompatible"); Himmelman v. Continental Cas. Co., 2006 U.S. Dist. LEXIS 56189, at *5 (D.N.J. Aug. 11, 2006); Herring v. Hewitt Assoc., Inc., No. 06-267 (GEB), 2006 WL 2347875, at *5 (D.N.J. Aug. 11, 2006); Moeck v. Gray Supply Corp., No. 03-1950 (WGB), 2006 WL 42368, at *5 (D.N.J. Jan. 6, 2006) ("Allowing Plaintiff Moeck to circumvent the opt-in requirement and bring unnamed parties into federal court by calling upon state statutes similar to the FLSA would undermine Congress's intent to limit these types of claims to collective actions.") (citing McClain v. Leona's Pizzeria, Inc., 222 F.R.D. 574, 577 (N.D. Ill. 2004) (holding that allowing a plaintiff to certify an opt-out class in federal court would undermine the congressional intent behind § 216(b))).

certify a FLSA collective action involving a class of Dell "consumer sales representatives," in Norman, et al. v. Dell Inc., et al., No. 07-6028, 2008 WL 2899722 (D. Or. July 10, 2008). Consumer sales representatives work in a distinct business unit and have entirely different job characteristics, timekeeping requirements, compensation plans, and work schedules than the individuals Plaintiffs seek to represent. (See Hudanick Decl. at ¶¶ 3-6; Atsumi Dep. at 17:6-21.) Even if the facts in Norman were similar to the facts presented here, which they clearly are not, the conditional certification in Norman has no relevance here. See Treme, 2008 WL 941777 at *3 (denying plaintiff's motion for conditional certification where plaintiff's only supporting evidence was (1) an affidavit that was "nothing more than an unsupported restatement of the allegations contained the Complaint"; and (2) evidence that another court had conditionally certified a collective action against the same defendant).[36] Interestingly, while relying heavily on the Norman court's conditional certification under the FLSA, Plaintiffs decline to advise the Court that the court in Norman refused to certify a Rule 23 class action under Oregon law. Norman v. Dell Inc., No. 07-6028, 2008 WL 2899722 (D. Or. July 10, 2008).

**D.     If the Court Certifies a Collective Action or Class Action, Dell Should Not Be Required to Produce Employee and/or Former Employee Names, Addresses, Telephone Numbers, Social Security Numbers,  and/or Other Personal Information; Notice Should Be Sent by Dell or a Third-Party Administrator.**

In the event the Court certifies a FLSA collective action or a Rule 23/Oklahoma law class action, Dell should not be required to produce current or former employees' names, addresses, telephone numbers, Social Security numbers, and/or other personal information to Plaintiffs

---

[36] See also Shook v. Bd. of County Comm'rs of County of El Paso, 543 F.3d 597, 610 (10th Cir. 2008) (holding, with respect to the fact that "another district court judge in the same district in which plaintiffs filed their suit has recently certified a class similar to the one plaintiffs seek to have certified," that "the fact that other courts might reach conclusions different from that reached by the district court in this case is not dispositive in our case"); Logan v. Denny's, Inc., 259 F.3d 558, 579 (6th Cir. 2001) (holding that outcome in "another proceeding based upon discrimination charges involving entirely different parties and entirely different facts, and even a different geographic locale, is irrelevant at trial in a subsequent proceeding"); Pappa v. Unum Life Ins. Co. of America, No. 3:07-CV-0708, 2008 WL 2048664, at *2 (M.D. Pa. May 12, 2008) ("The fact that another district court certified a class action against Defendant UnumProvident is irrelevant to this case.").

and/or Plaintiffs' counsel due to the "privacy concerns implicit in information derived from personnel records."  Torres v. CSK Auto, Inc., No. EP-03-CA-113(KC), 2003 WL 24330020, at *3 (W.D. Tex. Dec. 17, 2003) (denying FLSA plaintiffs' request for names, addresses, Social Security numbers and telephone numbers of putative class members based on privacy concerns).[37]  As an alternative, Dell proposes using the procedure described by this Court in Torres, where the court ordered the defendant to issue notice to the certified class as follows:

> Defendant shall send a letter to all [employees] employed since January 2000, notifying such employees of the specific FLSA violation alleged and providing that any affected employee may "opt-in" to the present action within forty-five days of mailing by contacting plaintiffs counsel at a designated address. The letter shall be in a form letter approved by plaintiffs' counsel, with form fields completing the name and address of employees and a respond [sic] deadline forty-five days beyond the date of mailing.  Defendant will not be ordered to produce detailed information of its [employees], but will instead provide a list of all employees to whom the letters were sent, the date of mailing, which should be same day unless good cause is shown for a longer period and a certificate of mailing signed by counsel of record.  This procedure should both avoid the promulgation of confidential information outside the office and preclude concerns inherent in the direct solicitation of prospective clients by attorneys through mass mailings.

Id.  As a further alternative, a third party should be retained to send notice to putative class members if this action is certified as a collective or class action.  As noted by the court in In re American Family Mut. Ins. Co. Overtime Pay Litigation, "use of a third-party administrator is appropriate to protect the integrity of the process and to protect the confidential information of potential opt-in plaintiffs."  No. 06-cv-17430-WYD-CBS, 2009 WL 248677, at *4 (D. Colo. Feb. 3, 2009); accord Prentice v. Fund for Pub. Research, No. C-06-7776-SC, 2007 WL 2729187 (N.D. Cal. Sept. 18, 2007) ("The Court agrees that using a third party is the best way to ensure the neutrality and integrity of the opt-in process."); Russell v. Wells Fargo & Co., No. 07-3993

---

[37] Aguilar v. Complete Landsculpture, Inc., No. 3:04-cv-0776-D, 2004 WL 2293842, at *5 (N.D. Tex. Oct. 7, 2004); Humphries v. Stream Int'l, Inc., 2004 U.S. Dist. LEXIS 220465, at *12 (N. D. Tex. Feb. 13, 2004) (denying plaintiffs' request for potential opt-ins telephone numbers, dates of birth, and social security numbers due to privacy concerns).

CW, 2008 WL 4104212, at *5 (N.D. Cal. Sept. 3, 2008) ("[I]t would be more appropriate to have a third-party claims administrator distribute the collective action notice, as was done with the first notice that was sent to some members of the putative class."); see also Barnwell v. Corr. Corp. of America, No. 08-2151-JWL, 2008 WL 5157476 (D. Kan. Dec. 9, 2008); Wren v. Rgis Inventory Specialists, C-06-05778 JCS, 2007 WL 4532218 (N.D. Cal. Dec. 19, 2007).

## IV.  CONCLUSION

Plaintiffs have failed to demonstrate that they and the putative class they seek to certify are "similarly situated."   Accordingly, Plaintiffs' Motion for Certification under the FLSA should be denied.  Plaintiffs have also failed to satisfy the requirements of Rule 23 (a) and (b), and, accordingly, the Court should not certify a Rule 23 class of Oklahoma Plaintiffs under Oklahoma law.  Plaintiffs' Motion for Certification under 29 U.S.C. § 216(b) and Class Action Certification under Fed. R. Civ. P. 23 should be denied.

Respectfully submitted,

/s/   Jeffrey C. Londa
Jeffrey C. Londa, TX #12512400
Ogletree, Deakins, Nash, Smoak & Stewart, P.C.
jeffrey.londa@ogletreedeakins.com
500 Dallas Street, Suite 3000
Houston, Texas 77002-4709
(713) 655-5750; (713) 655-0020 (Fax)

Michael W. Fox, TX #07335500
Ogletree, Deakins, Nash, Smoak & Stewart, P.C.
michael.fox@ogletreedeakins.com
301 Congress Avenue, Suite 1250
Austin, Texas 78701
(512) 344-4700; (512) 344-4701 (Fax)

Brittan L. Buchanan, TX #03285680
Van Osselaer & Buchanan LLP
9600 Great Hills Trail, Suite 300 West
Austin, Texas 78759
512.225.2822 (direct); 512.225.2801 (fax)

**ATTORNEYS FOR DEFENDANTS**

## CERTIFICATE OF SERVICE

I hereby certify that on this 27th day of February, 2009, a copy of the foregoing pleading was filed electronically with the Clerk of Court to be served by operation of the Court's electronic filing system and by regular U.S. mail to all counsel of record.

George A. Hanson
Matthew L. Dameron
Stueve Siegel Hanson LLP
460 Nichols Road, Suite 200
Kansas City, MO  64112

Meredith Black-Matthews
J. Derek Braziel
Lee & Braziel, L.L.P.
1801 N. Lamar Street, Suite 324
Dallas, TX  75202

/s/   Jeffrey C. Londa
Jeffrey C. Londa