# EXHIBIT U

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

FILED IN CHAMBERS
U.S.D.C - Atlanta

FEB 1 0 2008

JAMES N. HATTEN, Clerk
By: _____
Deputy Clerk

NIKOLE BROOKS AND NICOLE
RUSSO, individually and on
behalf of others similarly
situated,

          Plaintiffs

v.                                    : CIVIL ACTION NO.
                                      : 1:07-CV-3054-ODE

BELLSOUTH TELECOMMUNICATIONS,
INC.

          Defendant

ORDER

     This case is before the Court on Plaintiffs' motion seeking
conditional certification of a collective class pursuant to
Section 216(b) of the Fair Labor Standards Act ("FLSA") and
requesting approval of a proposed notice to be mailed to potential
class members. [Doc. 79].   For the reasons stated herein,
Plaintiffs' motion is DENIED.

I.   Factual and Procedural Background

     A.   Factual Background

     Defendant BellSouth Telecommunications Inc. ("Defendant" or
"BellSouth") has sixty-five (65) call centers, which handle
residential and small business customers, as well as one Internet
Services facility, which handles customer calls relating to
internet services.   [Doc. 96-6, at 2].   These call centers are
located in Georgia, Louisiana, Alabama, South Carolina, North
Carolina, Florida, Mississippi, Tennessee and Kentucky. [Doc. 96-
6, at 7-8].   According to Defendant, the call centers serving
small businesses are staffed with "Sales Associates" and the call

centers serving consumers are staffed with Sales Associates supported by "Service Representatives." [Doc. 96-6, at 2-3]. Internet Services employees work as either "Customer Service Agents" or "Retention Agents." [Doc. 96-6, at 2-3].

   B.   Procedural History

      1.   Plaintiffs' Suit Against Bellsouth

Plaintiffs Nikole Brooks and Nicole Russo ("Plaintiffs") brought this action against BellSouth for violations of the FLSA. 29 U.S.C. §§ 201 et seq. Plaintiff Brooks is a former employee of BellSouth, and was employed as a Sales Associate at BellSouth's call center in Conyers, Georgia from 2004 until November of 2006. [Doc. 78 ¶ 5]. Plaintiff Russo worked as a Sales Associate in the Conyers, Georgia call center from approximately July 13, 2005 to the present. [Doc. 78 ¶ 6].

Both Plaintiffs submitted declarations stating that they receive (or received) a base hourly wage, plus commissions and bonuses. [Doc. 79-6, at 21-22]. Their duties involved taking incoming calls from customers who wished to add or change their service, as well as helping callers with equipment and billing questions. Id. They were also required to sell equipment, services, and upgrades. Id. Each named Plaintiff claims that her scheduled shift is or was usually eight hours long, including an unpaid thirty minute lunch break. [Doc. 79-6, at 21-22; Doc. 79-5, at 6-7]. Both Plaintiffs stated that they work (or worked) ten hours of mandatory overtime each week most weeks, for which they were paid. [Doc. 79-6, at 21; Doc. 79-5, at 6].

However, Plaintiffs Russo and Brooks claim in their declarations that they have routinely performed work before and

after their shifts, and during meal and rest breaks, for which they were not compensated, including time spent logging onto their computers prior to the start of their shift. [Doc. 79-6, at 22; Doc. 79-5, at 7]. They claim that the uncompensated time they worked constitutes a minimum of 15 minutes up to a maximum of 60 minutes of uncompensated work per day. [Doc. 79-6, at 22; Doc. 79-5, at 7].

Plaintiffs sued BellSouth on behalf of themselves and other employees pursuant to 29 U.S.C. § 216(b), alleging in the Amended Complaint that Defendant failed to pay them for time worked while they were logged into Defendant's phone system, rather than the hours that they actually worked, in violation of minimum wage and overtime requirements in 29 U.S.C. §§ 206, 207.[1] [Doc. 78 ¶ 9]. Plaintiff's Amended Complaint claims that "Defendant knowingly required Plaintiffs and the similarly situated individuals to perform unpaid work before and after logging into the phone system, including but not limited to booting-up computers, initializing several software programs and performing customer call-backs." [Doc. 78 ¶ 9]. Plaintiffs further alleged that

---

[1]Plaintiffs initially brought this suit against BellSouth Corporation, AT&T, Inc. and AT&T Corp. [Doc. 1]. Defendants brought two motions to dismiss. [Docs. 22, 25]. The parties subsequently stipulated for the dismissal of AT&T, Inc. without prejudice. [Doc. 38]. The parties later brought a consent motion to withdraw the motion to dismiss filed by BellSouth and AT&T Corp. [Doc. 25], dismiss BellSouth Corporation and AT&T Corp. without prejudice, add BellSouth Telecommunications as the sole Defendant, and for leave for Plaintiffs to file their First Amended Complaint. [Doc. 72]. The Court granted this motion on April 24, 2008. [Doc. 76].

Defendant was aware that employees regularly worked during meal and rest breaks, completing or correcting customer orders, performing callbacks, and finishing customer calls, and were not paid for this work. [Doc. 78 ¶ 10]. Plaintiffs claim that the time spent on these unpaid work activities amounts to an average of thirty minutes per person per day, but ranges from fifteen minutes per day to over sixty minutes per day. [Doc. 78 ¶ 11]. Plaintiffs further allege that the class of "similarly situated" employees includes Sales Associates, Service Representatives, Retention Agents, and Customer Service Agents. [Doc. 78 ¶ 13].

2.    Plaintiffs' Motion for Conditional Certification

Plaintiffs have now moved for conditional certification of a collective class pursuant to Section 216(b) of the FLSA, and seek judicial notice to be mailed to other potential class members who did not receive pay for time spent working before and after their scheduled shifts and during their meal and rest breaks. [Docs. 79, 79-2, at 1]. Plaintiffs also seek an order requiring Defendant to provide Plaintiffs a list of all putative plaintiffs. [Doc. 79]. The exact scope of the putative class is unclear from Plaintiffs' motion. It appears that Plaintiffs seek conditional certification of a collective class of all individuals who are or were employed by BellSouth Telecommunications as Sales Associates, Service Representatives, Retention Agents, and Customer Service Agents in any of its call centers nationwide during the three years prior to an order granting conditional certification. [Doc. 79-2, at 2, 15].

4

3.   Defendants' Response in Opposition

Defendant filed a response in opposition, claiming that Plaintiffs have failed to provide any admissible evidence of a common, company-wide unlawful policy or practice and therefore have failed to meet the legal standard for conditional certification.  Defendants contend that any instances of unpaid, off-the-clock work are "rare" and would require individualized issues ill-suited for class-wide resolution. [Doc. 95, at 3]. Plaintiffs filed a reply brief [Doc. 103], and Defendant filed a sur-reply [Doc. 113].

4.   Evidence Submitted with Plaintiff's Motion

Plaintiffs attached to their motion the declarations of 26 employees who held various positions in call centers located in Conyers, Georgia, Atlanta, Georgia, Stone Mountain, Georgia, Kennesaw, Georgia, Charleston, South Carolina, Louisville, Kentucky, Jackson, Mississippi, Covington, Louisiana, and Birmingham, Alabama. [ See Doc. 79-5, 79-6, at 1-6].  The declarations, including those of the named Plaintiffs, are nearly identical.

In Paragraph 5 of each of these declarations, the declarants state "I clock-in for work by logging into my phone.  Unless I am logged into my phone, the company does not characterize what I am doing as 'working' and therefore I am not compensated for any of the work I perform while not logged into my phone each day." [Doc. 79-5, 79-6, at 1-6].  Plaintiffs concede in their motion that "Defense counsel has indicated that Plaintiffs and those similarly situated were compensated for their scheduled shift, rather than the amount of time spent on Defendant's phone

5

system... Regardless, Defendant paid Plaintiffs and those similarly situated on a basis other than by the actual time they worked." [Doc. 79-2, at 5 n.4].

     5.   <u>Evidence Submitted with Defendant's Response in Opposition to Plaintiffs' Motion</u>

With its response in opposition to Plaintiffs' motion, Defendant produced evidence that payment to Sales Associates, Retention Associates, and Customer Service Associates for time worked is not dependent upon an employee being logged into the telephone system, but is instead determined by a scheduled shift, or "Tour." [Doc. 96-7, at 2].[2] According to the declarations submitted by Defendant, each Tour has a specific start time and end time and includes an unpaid meal break and paid rest breaks. [Doc. 96-7, at 2]. Defendant explains that exceptions for time worked outside of a Tour are captured and recorded in a variety of ways, including the Defendant's tracking of telephone system activity and other notification processes by which an employee's time worked is adjusted for payment. [Doc. 96-7, at 2, 4; Doc. 96-8, at 3]. Defendant put forth evidence that, by company policy, employees must report any work they perform outside of their scheduled Tour as an "exception" so that they can be paid for all work. Absent the entry of an exception, employees are paid for the hours in their scheduled Tour. [Doc. 96-7, at 2-4;

---

    [2]Defendant also contends that Service Representatives do not take incoming calls as part of their regular job duties, and has presented several declarations from supervisors and managers who attest that Service Representatives do not work on the phones. [Doc. 96-6, at 2-3]. Plaintiff disputes this fact. [Doc. 103, at 4 n.12].

Doc. 96-8, at 3]. Defendant's evidence indicates that corrections to time worked are made by the end of each pay period and are then coded and sent to the payroll system so that each employee is paid for the time he or she worked. [Doc. 96-7, at 4].

Defendant further presented evidence that the telephone system is used to track "adherence," which is a measure of how closely the work activity of each hourly employee taking calls from customers matches his or her scheduled Tour, and Defendant issues daily "Adherence Reports" that reflect this correlation. [Doc. 96-7, at 3; Doc. 96-8, at 3].

In addition, Defendants provided evidence that employees taking calls are trained to log into their phone system at the beginning of each Tour, prior to logging into their computer system or doing any other work. [Doc. 96-7, at 3; Doc. 96-8, at 3-4]. According to the declarations submitted by Defendant, employees are required to log out of their computer and then the phone system immediately when their Tour ends. [Doc. 96-8, at 4]. If an employee is caught on a phone call that extends into their lunch break, they are trained to begin their break when the call ends, and then take the full time allotted for their lunch or break. [Doc. 96-8, at 4]. When an employee is caught on a phone call at the end of a shift, the time on the call is tracked by the telephone system and is later recorded as an exception for which the employee is paid. [Doc. 96-7, at 4; Doc. 96-8, at 4]. Defendant also submitted their published policies as to payment of overtime and several follow-up reminders sent to managers to remind them of the policies regarding the recording of overtime. [See "Overtime Pay Policy for Non-Exempt Employees," Doc. 96-6, at

7

3, 10-12; October 13, 2006 memo entitled "Accurate Records of Time Worked by Non-Exempt (both represented and non-represented) employees," Doc. 96-6, at 14-15; "Accurate Time Reporting for Sales Associates," Doc. 96-6, at 17; "Reminder Regarding Accurate Records of Time Worked," Doc. 96-6, at 19-22].

In support of its contentions, Defendant submitted 74 declarations from Sales Associates, Service Representatives, supervisors, managers, and call center directors across the Southeast. All of the declarants state that company policy dictates that hourly call center employees are prohibited from logging into the phone system or the computer system prior to the start of their Tour. In addition, all of Defendant's declarants state that at the beginning of a Tour, employees must first log into the phone system, and then log into the computer system. Finally, all of the Defendants' declarants describe their use of either a manual "exceptions log" or emails to managers to record and report time worked outside of scheduled Tours. None of the declarants state that they worked time for which they were not paid, or that they knew of any Sales Associates who had worked and not been paid. Several declarations attest to the fact that Service Representatives do not take incoming calls from customers, but instead only work to clear errors on orders. [Doc. 96-3, at 47-48; Doc. 96-4, at 51-53, 74-75].

Finally, Defendants submitted evidence that, from January 2006 through May of 2008, it paid Sales Associates, Customer Service Agents, Retention Agents, and Service Representatives in its Consumer and Small Business call centers and its Internet Services facility for approximately 920,000 hours of extra time in

8

addition to scheduled Tours and involuntary overtime. [Doc. 96-12,
at 2]. In addition, from October 2005 through May 2008, Defendant
paid Brooks and Russo, as well as twelve (12) of the declarants
who submitted declarations with Plaintiff's motion, for 1,050
hours of extra time in addition to scheduled Tours and involuntary
overtime. [Doc. 96-12, at 2].

      6.   <u>Evidence Submitted with Plaintiff's Reply Brief</u>

Plaintiffs attached to their reply brief five (5) new
declarations of employees and eleven "supplemental declarations"
of employees who had signed declarations that were originally
submitted with Plaintiff's motion.    In these "supplemental
declarations," the declarants explain that they were originally
under the impression that Defendant was paying them based on the
time they were logged into the phone system because Defendant
required them to be logged into the phone system throughout their
Tour. [Docs. 103-3, 103-4, at 1-2].

All of the declarations Plaintiffs submitted with their reply
brief acknowledge the fact that Defendant used an "exception log"
for employees to record overtime, but the declarants claim that
they understood this overtime to only include time spent on
incoming calls that lasted more than eight minutes past the end of
a Tour.   In addition, all of the declarants claim that they were
deterred from completing exception logs out of fear of being
disciplined for doing so.   Several of the declarants who work in
the Charleston, South Carolina call center specifically stated
that they were reprimanded for filing an exception in the
exception log or were told by their supervisor that they would not
be paid overtime.   [Doc. 103-3, at 6-8, 15-17, 20-22; Doc. 103-4,

at 6-8]. All of the declarants stated that they thought that they were expected to log into their computers prior to the start of the Tour and prior to logging into the phone system, and that they were not to log out of their computer systems until after the end of their Tour. One of the declarants stated that she was instructed in April of 2008 that she could no longer log into her computer system prior to logging into her phone, but that prior to that time, she had not understood this to be the rule.

C.   Opt-In Plaintiffs

In their reply brief, Plaintiffs claim that 54 individuals have filed consent forms to be included in the class of putative plaintiffs. [Doc. 79-9; Doc. 103, at 3; Doc. 103-2 ¶2]. Since Plaintiffs filed their reply, four of the putative plaintiffs have withdrawn from the action [Docs. 126, 128, 135, 136], and 49 have filed consents to join, bringing the total number of putative plaintiffs to 99. [Docs. 125, 127, 129, 137-50, 152-53, 155-57].

II. Discussion

A.   Legal Standard for Conditional Certification

The FLSA permits collective action "against any employer... by any one or more employees for and on behalf of himself or themselves and other employees similarly situated." 29 U.S.C. § 216(b). Unlike a typical class action suit under Fed. R. Civ. P. 23, where an unwilling plaintiff must "opt out" of the class, a class action pursuant to Section 216(b) of the FLSA requires employees or former employees to "opt in" to the class, by filing a written consent to join the action. Cameron-Grant v. Maxim Healthcare Serv., Inc., 347 F.3d 1240, 1249 (11th Cir. 2003). District courts may, in their discretion, facilitate notice to

potential plaintiffs to an FLSA collective action to implement this "opt in" procedure. See Hoffmann-LaRoche, Inc. v. Sperling, 493 U.S. 165, 169 (1989).

The United States Court of Appeals for the Eleventh Circuit has endorsed a two-tiered approach to certification of a collective action under the FLSA. See Hipp v. Liberty Nat'l Life Ins. Co., 252 F.3d 1208, 1218-19 (11th Cir. 2001). [3] The two-tiered approach defines two phases of certification: the earlier, "notice" phase, after which a class is conditionally certified, and a later phase prompted by the filing of a motion for decertification, at which point the case is either certified as a collective action or the conditional class is decertified. Id. at 1218. The instant motion asks the Court for conditional class certification, which is the first tier of the Hipp approach.

At the notice phase, the district court should determine: 1) whether there are other employees who wish to opt-in to the action; and 2) whether those employees are "similarly situated" with respect to their job requirements and pay provisions. Dybach v. State of Fla. Dep't of Corrections, 942 F.2d 1562, 1567-68 (11th Cir. 1991). Plaintiffs bear the burden of establishing that they are similarly situated with the group of employees they wish to represent. Grayson v. K Mart Corp., 79 F.3d 1086, 1096-97 (11th Cir. 1996). This burden, however, is not heavy. Plaintiffs

---

[3] Although Hipp involved collective actions brought under the Age Discrimination in Employment Act of 1967, the Eleventh Circuit has made clear that the two-tiered analysis in Hipp as to conditional certification applies with equal force to FLSA collective actions. Cameron-Grant v. Maxim Healthcare Servs., Inc., 347 F.3d 1240, 1243 n.2 (11th Cir. 2003).

are not required to show that they hold identical positions but, rather, must show only that their positions are similar to those positions held by the putative class members. <u>Hipp</u>, 252 F.3d at 1217; <u>Grayson</u>, 79 F.3d at 1096. Although the similarly situated standard is not a stringent one, a showing of similarity requires more than unsupported and generalized allegations. <u>See Hipp</u>, 252 F.3d at 1219 (citing <u>Grayson</u>, 79 F.3d at 1097); <u>Haynes v. Singer Co., Inc.</u>, 696 F.2d 884, 887 (11th Cir. 1983). Plaintiffs may make this showing by "making substantial allegations of class-wide discrimination, that is, detailed allegations supported by affidavits which successfully engage defendants' affidavits to the contrary." <u>Id.</u> at 1097 (internal quotation and citation omitted).

The Eleventh Circuit has stated that "a unified policy, plan, or scheme of discrimination may not be required to satisfy" the similarly-situated requirement of Section 216(b). <u>Hipp</u>, 252 F.3d at 1219 (quoting <u>Grayson</u>, 79 F.3d at 1095). Nevertheless, a plaintiff "must make some rudimentary showing of commonality between the basis for his claims and that of the potential claims of the proposed class, beyond the mere facts of job duties and pay provisions." <u>Williams v. Accredited Home Lenders, Inc.</u>, No. 5-1681, 2006 WL 2085312, at *3 (N.D. Ga. Jul. 25, 2006).

Where plaintiffs seek to send court-approved notice to potential plaintiffs at the first-tier conditional certification stage, courts should treat those requests with a higher level of scrutiny:

> We can think of no good reason for apparent judicial sponsorship of the notice, at a stage in the litigation when there had been no determination that the plaintiff's allegations have any merit, and we can think of a good reason against it, which

> is that the judicial imprimatur is likely to be
> misunderstood as a representation that the suit
> probably has merit...

Haynes, 696 F.2d at 886 n.2 (quoting Woods v. New York Life Ins.
Co., 686 F.2d 578, 581 (7th Cir. 1982)).

    B.   Admissibility of Declarations Filed with Plaintiffs'
        Motion for Conditional Certification

Defendant has filed an objection to Paragraphs 5, 9, and 11
of each declaration originally filed with Plaintiffs' motion for
certification, as well as the declarations of Brenton Orrender and
Lorraine Singleton, also filed with Plaintiffs' motion. [Doc. 97].
Defendant requests that the Court treat the objection in the
alternative as a motion to strike these paragraphs and the
Orrender and Singleton Declarations.     [Doc. 97, at 3 n.3].
Because Paragraphs 5, 9, and 11 are largely identical in all of
the declarations originally filed with Plaintiff's motion [Doc.
79], these paragraphs will be analyzed collectively.

        1.   Paragraphs 5, 9, and 11: Personal Knowledge

Defendant contends that Paragraphs 5, 9, and 11 of each of
the declarations are not based on the personal knowledge of the
declarant.     Courts are split as to whether the evidence
submitted to support a motion for conditional certification must
satisfy all requirements of admissibility at trial.   Some courts
have held that evidence must be fully admissible in order to be
considered for conditional certification.     See Harrison v.
McDonald's Corp., 411 F. Supp. 2d 862, 865 (S.D. Ohio 2005);
Richards v. Computer Sciences Corp., No. 3-03-CV-00630(DJS), 2004
WL 2211691, at *1-*2 (D. Conn. Sept. 28, 2004);   McElmurry v. US
Bank Nat'l Assoc., No. CV-04-642-HU, 2004 WL 1675925, at *10 (D.

Or. Jul. 27, 2004).  Other courts have taken a "relaxed approach" to evidentiary standards in connection with a motion for conditional certification, considering hearsay and other evidence that does not meet all of the requirements of admissibility.  See Fasanelli v. Heartland Brewery, Inc., 516 F. Supp. 2d 317, 321-22 (S.D.N.Y. 2007); Crawford v. Lexington-Fayette Urban County Gov't, No. 06-299, 2007 WL 293865, at *3-*4 (E.D. Ky Jan. 26, 2007); White v. MPW Industrial Serv., Inc., 236 F.R.D. 363, 368 (E.D. Tenn. 2006); Aguayo v. Oldenkamp Trucking, No. CV F 04-6279, 2005 WL 2436477, at *4 (E.D. Cal. Oct. 3, 2005).

Even courts taking the more "relaxed" approach have required that affidavits or declarations be based on the affiant's or declarant's personal knowledge.  See Crawford, 2007 WL 293865, at *4; White, 236 F.R.D. at 369 ("affidavits submitted at the notice stage must be based on the personal knowledge of the affiant"); Aguayo, 2005 WL 2436477, at *4 (holding that declaration supports allegations where it is reasonable to infer that employee would have personal knowledge of the matters in the declaration).

### a.   Paragraph 5

The Court will disregard Paragraph 5 in the declarations originally submitted with Plaintiffs' motion for conditional certification because these statements were was not based on the declarants' personal knowledge.  Paragraph 5 of each of the declarations states, "I clocked-in for work by logging into my phone.  Unless I was logged into my phone, the company did not characterize what I was doing as 'working' and therefore I was not compensated for any of the work I performed while not logged into my phone each day."  Plaintiffs later submitted eleven

14

"supplemental declarations" explaining that the declarants understood this fact to be true because they were required to be logged into the phone system during their Tour. [Doc. 103-3, 103-4, at 1-2]. Plaintiffs have acknowledged in their filings that Defendant has indicated that it does not pay employees according to their time logged into the phone system, and they do not appear to contest this fact. [Doc. 79-2, at 5 n.4]. Because it appears that none of Plaintiffs' original declarants made the statement in Paragraph 5 based on personal knowledge, the Court will not consider these paragraphs as factual support for Plaintiffs' motion for conditional certification.

b.   Paragraph 9

The Court finds that Paragraph 9 of the declarations filed with Plaintiff's motion appears to have been based on the personal knowledge of the declarant, and it will therefore consider it in connection with Plaintiffs' motion.   In Paragraph 9, all of the declarants state that they regularly observed co-workers working off-the-clock, and that they believe that their co-workers would be interested in joining the action. Defendant argues that the declarant would have no way of knowing whether his or her co-workers were performing uncompensated work.   [Doc. 97, at 8-9]. Because Paragraph 9 only states what the declarant personally observed, and makes no statement regarding whether his or her co-worker were being compensated, the Court disagrees with Defendant. See White, 236 F.R.D. at 369 (accepting statement of fact in affidavit where it is reasonable to infer from the evidence submitted that the affiant had personal knowledge); Aguayo, 2005 WL 2436477, at *4 (accepting declaration where it is reasonable to

15

infer that declarant would have personal knowledge of facts in declaration).

        c.    __Paragraph 11__

     The Court will not disregard Paragraph 11 in the declarations filed with Plaintiff's motion.  In Paragraph 11, all declarants state that their supervisor was aware that the declarant was performing work for which he or she was not compensated, and that the declarant's supervisor regularly saw the declarant come into work and perform work before and after shifts, and during meal and rest breaks.  The declarants do not specify how they knew that their supervisors were aware of their uncompensated work.  As explained below, however, the Court finds that even if the Court accepts the statements of the declarants in Paragraph 11, Plaintiffs' have failed to satisfy the standard for conditional certification.  Therefore, the Court will consider Paragraph 11 as support for Plaintiff's motion.

        2.   __Declarations of Orrender and Singleton__

     Finally, the Court finds that the declarations of Orrender and Singleton are relevant.  Defendant objects that the declarations of Orrender and Singleton are irrelevant and do not satisfy Federal Rule of Evidence 401 because neither Orrender or Singleton was employed by Defendant within the putative class period.[4] [Doc. 97, at 10].  Because Plaintiffs may satisfy their burden for conditional certification by showing a class-wide practice or policy that violates the FLSA, the Court finds that declarations from employees outside the putative class period may

_____

[4] 29 U.S.C. §§ 255(a), 256(a).

be relevant to show such a practice or policy, even if the individual declarants are barred from proceeding by the statute of limitations. Therefore, the Court will consider these declarations in its analysis of Plaintiff's motion.

C.   Conditional Certification

The Court finds that this is not an appropriate case for a collective action. Plaintiffs must, at the initial stage of conditional certification, provide some credible evidence of "class-wide" violations of the FLSA, or make some rudimentary showing of the commonality between their claims and those of the putative class. Plaintiffs have failed to make even this rudimentary showing.[5]

1.   Commonality of Claims as to Plaintiff's Work
      Before and After Scheduled Shifts

Plaintiffs' theory of what constitutes the class-wide violation in this case has varied from the Amended Complaint [Doc. 78], to their motion for conditional certification [Doc. 79], and finally to their reply brief in support of their motion for conditional certification. [Doc. 103]. Initially, Plaintiffs' Amended Complaint alleged that Plaintiffs and those in the putative class were similarly situated because they all had similar job duties involving working the telephones in Defendant's call centers, and all had been denied payment for work they

---

[5]Plaintiffs argue that Defendants have improperly advocated that this Court apply a "heightened" analysis more appropriate for the second stage of certification. Because the Court finds that Plaintiffs cannot even satisfy the lenient standards of the notice stage, the Court declines to determine whether a more rigorous analysis could be applied in this case.

performed when they were not logged into Defendant's telephone
system and for work performed during rest and lunch breaks. [Doc.
78, at 3-4]. In their motion for conditional certification and
judicial notice, Plaintiffs alleged that all of the class members
had the same job duties taking incoming calls, and that "[a]ll
these individuals were paid in the same unlawful manner—Defendant
knowingly only paid them for the time they were scheduled to work
and be on the phones, and denied them pay for work they performed
when they were not logged into the phones and work they performed
during their meal and rest breaks." [Doc. 79-2, at 11]. All of
the declarations submitted with Plaintiff's initial motion
attested to the fact that Defendant failed to classify any time
they spent not logged into the phone system as time worked.

After Defendant submitted substantial evidence that they do
not pay their employees based on the time they spend logged into
their phones, but instead pay them for their scheduled Tours,
Plaintiffs asserted in their reply brief that Defendant failed to
pay employees for work performed outside their scheduled Tours
because they were required to log into and out of their computer
systems prior to and after their scheduled Tours. [Doc. 79-2, at
5-6].    Eleven   of   Plaintiff's   original   declarants   filed
supplemental declarations, stating that they had believed that
they were being paid only for the time they spent logged into the
phone system, but that they were still denied pay even if they
were being paid only for their scheduled Tour. [Doc. 103-3, 103-4
at 1-2]. Declarations submitted with Plaintiff's original motion
for which there are no "supplemental declarations" still allege
that the declarants were paid based on the time they spent logged

18

into the phone, as well as an allegation that they worked outside their shift times.   As noted above, the Court will disregard Paragraph 5 in these declarations because it does not appear to have been based on the declarants' personal knowledge.   However, the Court notes that all of Plaintiffs' declarations have varying theories of how or why they were deprived of payment for overtime work.

Furthermore, Plaintiffs have failed to produce a factual showing of the commonality of claims involving employees logging into their computer prior to the beginning of their Tour.   The declarants who submitted declarations with Plaintiffs' reply brief allege that they logged into software applications prior to the start of their scheduled Tour because "Defendant expected me to be ready to take a call at the start of my tour," and that no one stopped them from doing so, and that they understood that it was expected of them.   [Doc. 103-3, Exs. A-K ¶¶ 3-4, Doc. 103-4, Exs. L-P ¶¶ 5-6].   Similarly, all of these declarants state that they could not log out of their computer systems until the end of the Tour because "I had to have access to these systems until my Tour ended." [Doc. 103-3, Exs. A-K ¶ 4, Exs. L-P ¶ 6].

These declarants give no reason as to why they understood that they had to log into their computer systems prior to their Tour to take phone calls other than that they felt they had to be ready to take a call immediately.   There is no indication that Defendant actually required the declarants to log in early. Tellingly, one of Plaintiffs' declarants states, "I was only told once not to log into my computer before the start of my shift... Even though I was told that one time not to log into my computer

before the start of my shift, I continued to do it because I could not be ready to take a call at the start of my shift without logging into the computer system early." [Doc. 103, Ex. O ¶ 6]. All of the declarations submitted by Defendants from Sales Associates and their supervisors attest to the fact that Defendant's policy is for employees to log into the phone system first, at the beginning of their Tour, and then to log into their computers.   Defendant also put forth a substantial number of declarations indicating that employees can be immediately available for phone calls even when they do not log into their computer prior to their Tour, because they can either remain "unavailable" in the telephone system for calls while their computer programs open, or they can take a call and tell the customer to wait while their computer software boots up. [See, e.g., Doc. 96-3, at 2-3, 46]. Plaintiffs' evidence indicates only that some employees may have misunderstood Defendant's policies, or that their supervisors failed to enforce these policies.

      2.   Commonality of Claims Regarding Reporting of
           Exceptions

      Plaintiffs have similarly failed to make a factual showing of commonality amongst the putative plaintiffs as to the process for reporting "exceptions," or time worked outside of their Tours. All of the declarations submitted with Plaintiffs' reply brief state that the declarants were aware that an "exception log" existed for the purpose of reporting overtime, but that the declarants "understood" that such overtime only included time spent on incoming calls that lasted longer than eight minutes past the end of a Tour, and that they did not know they could report

any other work completed outside of a Tour. [Docs. 103-3, 103-4, at 1-18]. The declarants give no indication of why they had such an understanding of how the exception log worked. The declarations do not allege that the declarants have knowledge of a routine practice by the Defendant of denying payment for overtime of less than eight minutes.

Four of the declarations submitted by Plaintiffs attest to the fact that the declarants were reprimanded or discouraged from submitting any overtime on the "exceptions log." [See Doc. 103-3, at 7-8, 16, 21; Doc. 103-4, at 8]. These incidents alone, however, do not suffice to establish a class-wide pattern of violations or indicate that these were more than isolated occurrences.

Other declarants state that they felt they might be disciplined for submitting overtime, but they fail to state why they felt this way, other than that they were under the impression that their adherence would be negatively affected. However, Defendant put forth evidence that adherence would not decrease due to the filing of exceptions, which Plaintiff has failed to refute. [See Doc. 111-4, at 2].

Finally, the declarations originally submitted with Plaintiffs' motion, for which the declarants submitted no supplemental declaration, do not mention an "exception log" at all, nor do they indicate whether the employee was discouraged from reporting exceptions, or whether the employees were paid for calls extending eight minutes past their scheduled shift.

Given the varying nature of the above allegations, and the inconsistencies in the declarations, the Court finds that

Plaintiffs have failed to show that there is any commonality of claims amongst the putative plaintiffs as to the reporting of overtime or exceptions. The most that Plaintiffs' evidence shows is that a few supervisors may have failed to follow company policy or that there were varying levels of understanding amongst employees regarding company policy.

> 3.   Commonality of Claims Regarding Work During Meal and Rest Breaks

Plaintiffs alleged in their motion that the class of putative plaintiffs was required to work during breaks "to meet minimum production standards." [Doc. 79-2, at 5-6; Doc. 103, at 3]. Plaintiffs did not specify what such standards entail, or whether they were told to work through meal and rest breaks without pay. The allegations in the declarations submitted by Plaintiffs are similarly general and vague: "I routinely work before and after my shift, and work during meal and rest breaks... My work during meal and rest breaks often included filling customer orders and doing other tasks to meet the minimum production standards established by the company." [See Docs. 79-5, 79-6, 79-7, at 1-6; see also Doc. 103-4, at 3-18]. Even at the notice stage, Plaintiffs must meet their burden with "detailed allegations supported by affidavits which successfully engage defendants' affidavits to the contrary." Hipp, 252 F.3d at 1219. They cannot rest only on generalized allegations.

Furthermore, Plaintiffs' evidence undermines their own allegations. Plaintiffs attached to their motion a company email from a supervisor, Tina Sylvester, dated November 4, 2002, addressed to a team of Sales Associates at the Kennesaw, Georgia

call center.  This email reads, "This is just to clarify that you
need to pay close attention to your schedule for starting times
and lunch times...  For half hour and hour lunches, if you leave
late, you adjust the time you return.  Example: lunch is 1:00 and
you get off the phone at 1:10, for half hour lunch you would
return at 1:40, for an hour 2:10...  For splits there is no
adjustment.  If you work 8 minutes into your lunch, turn in your
OT on your exception sheet and you will be paid for it." [Doc. 79-
7, at 7].  If anything, this email indicates that Defendant had a
policy to ensure that employees took their full breaks and does
not indicate, as Plaintiffs contend, a "policy of systematically
denying these employees pay for time they were working." [Doc. 79-
2, at 6].  Furthermore, the email is dated prior to the putative
class period, and Defendant submitted the declaration of Director
of Workforce Management Geoffrey Lee, which Plaintiff has not
refuted, that the rounding scheme referenced in this email is no
longer Defendant's current practice. [Doc. 96-7, at 4-5].

       4.   Commonality of Job Duties

In addition, the job duties of the putative plaintiffs varies
such that all of the putative plaintiffs could not have common
claims.  Plaintiffs claim that "[a]lthough they may have held
different  job  titles,  they  all  performed  similar  job
responsibilities- handling calls from Defendant's customers who
wished to add or change service." [Doc. 103, at 11].  However,
Defendant has submitted evidence that Service Representatives do
not take any incoming calls from customers, and that they are only
expected to correct errors on customer orders.  This difference is
significant, because the crux of Plaintiff's argument is that

"Defendant knowingly only paid [plaintiffs] for the time they were scheduled to work and be on the phones," and that employees were required to log into and out of computer systems before and after their Tour so that they could take customer calls immediately. [Doc. 103, at 5].

Plaintiffs argue that four of the declarations they have submitted from Service Representatives indicate that those Service Representatives were taking incoming calls from customers and performing the same duties as Sales Associates. [Doc. 79-5, at 1, 4, 18; Doc. 79-6, at 13; Doc. 103-4, at 16]. However, these declarations do not allege that this phenomenon was company-wide or that Service Representatives, in general, were responsible for taking incoming calls.

### 5.   Plaintiffs' Evidence Indicates Defendant Routinely Paid Overtime

Finally, other evidence Plaintiffs use to support their claims actually indicate that Defendant regularly paid its employees overtime. For instance, Plaintiffs attached an Adherence Report as an exhibit to their motion and argue that Defendant's use of the notation "OTNW," or "overtime not worked," in the report is proof that employees were working overtime for which they were not paid. [Doc. 79-7, at 8]. However, Defendant has presented evidence that the term "overtime not worked" refers to the rounding of overtime worked by an employee to the next 15-minute increment. [Doc. 79-7, at 8; Doc. 96-7, at 4]. Thus, it appears that where the Adherence Report indicates that Plaintiff Russo worked nine minutes past her Tour, the six minutes of "overtime not worked" on the Adherence Report represents six

24

minutes of overtime paid to Russo even though she did not work those six minutes. [Doc. 79-7, at 8; Doc. 96-7, at 4]. Plaintiff has failed to refute this evidence.

Plaintiff also attempts to argue that reminders provided to management and employees regarding Defendant's policies of paying employees for all time worked indicate that these policies were only recently instituted.  This argument holds no merit.  An employer's effort to remind employees of its policies does not establish that the policies were not originally in place.

Finally, Plaintiffs contend that the fact that the document "Accurate Time Reporting for Sales Associates" was attached unsigned to a number of Defendant's declarations undermines Defendant's argument that such a policy was in place.  However, unsigned copies of this document were attached either to declarations of supervisors or managers who stated that they used the document to review the policies with their team, or to declarations of sales associates who stated that they were advised by their Union not to sign policy statements issued by the Defendant. [See, e.g., Doc. 96-4, at 30, 62-63].  The fact that employees declined to sign the policy statement does not undermine their testimony as to the fact that they were instructed about these policies and followed them.

III. Conclusion

The Court has carefully considered the parties' filings.  In summary, Plaintiffs' motion for conditional certification and

judicial notice [Doc. 79] is DENIED.

SO ORDERED, this _10_ day of February, 2009.

ORINDA D. EVANS
UNITED STATES DISTRICT JUDGE