IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

| | | |
|---|---|---|
| HITUL GANDHI, individually and on behalf of a class of others similarly situated, | ) ) ) ) | |
| Plaintiffs, | ) ) | |
| v. | ) ) | Case No.: 08-CV-0248 LY |
| DELL INC. and DELL MARKETING USA, L.P. | ) ) ) | |
| Defendants. | ) ) | |

PLAINTIFFS' REPLY IN SUPPORT OF THEIR
MOTION AND MEMORANDUM FOR CERTIFICATION UNDER 29 U.S.C. § 216(b)
AND CLASS ACTION CERTIFICATION UNDER FED. R. CIV. PRO. 23

**DATE:** March 16, 2009

**STUEVE SIEGEL HANSON LLP**
George A. Hanson (admitted *pro hac vice*)
Email: hanson@stuevesiegel.com
Matthew L. Dameron (admitted *pro hac vice*)
Email: dameron@stuevesiegel.com
460 Nichols Road, Suite 200
Kansas City, Missouri 64112
Tel: 816-714-7100
Fax: 816-714-7101

**LEE & BRAZIEL LLP**
J. Derek Braziel
Texas Bar No. 00793380
Email: jdbraziel@l-b-law.com
Meredith Mathews
Texas Bar No. 24055180
Email: mmathews@l-b-law.com
1801 N. Lamar Street, Suite 325
Dallas, Texas 75202
Tel: 214-749-1400
Fax: 214-749-1010

**FEDERMAN & SHERWOOD**
William B. Federman
Texas Bar No. 00794935
Email: wbf@federmanlaw.com
Allison B. Waters
Texas Bar No. 00795994
Email: abw@federmanlaw.com
Nicholas G. Farha (admitted *pro hac vice*)
Email: ngf@federmanlaw.com
10205 N. Pennsylvania Ave.
Oklahoma City, Oklahoma 73120
Tel: (405) 235-1560
Fax: (405) 239-2112

**ATTORNEYS FOR PLAINTIFFS**

## I.      INTRODUCTION

Unable to refute the overwhelming evidence supporting certification, Dell raises a number of red herrings that have no impact on the Court's analysis and fails to undermine the only logical conclusion: that Dell treats business sales representatives uniformly and that certification is the appropriate remedy.  For the reasons set forth in Plaintiffs' Motion and Memorandum [Doc. # 59] and the reasons set forth herein, the Court should grant Plaintiffs' Motion.

## II.     THE COURT DOES NOT CONSIDER THE ULTIMATE MERITS OF PLAINTIFFS' CLAIMS FOR PURPOSES OF CERTIFICATION.

In its Opposition, Dell contends that the Court should deny Plaintiffs' Motion because Plaintiffs' underlying claims are without merit.  Requiring Plaintiffs to demonstrate the ultimate merits of their claims at this early stage is inappropriate because (1) the parties have engaged in limited discovery related only to issues of certification, and (2) it is improper for courts to consider the merits of a plaintiff's claim at the certification stage.

### A.      The Parties Have Not Engaged In Merits Discovery.

Dell contends that the "parties have conducted ample discovery" to suggest that the Court should apply a more stringent standard for certification under the FLSA.[1]  *See* Dell Opp. [Doc. # 67] at p. 19.  Of course, such a result is preposterous where Plaintiffs have deposed only a handful of individuals without the benefit of most of the records needed to support the merits of their claims, including:

- all payroll records for each business sales representative;

- internal communications related to the wage and hour policies at issue;

- badge swipe data for business sales representatives in the call center facilities;

---

[1]      Dell's counsel states that Plaintiffs have produced over 2,400 documents.  *See* Dell Exhibit S.  This is inaccurate.  According to Plaintiffs' records, Plaintiffs have produced only 540 pages of responsive documents.

- computer activity records of business sales representatives during unpaid time, including email records;

- telephone and voicemail records showing work activity during unpaid time;

- Dell's records related to providing in-house training and food for business sales representatives during unpaid meal breaks; and

- other documentary and deposition discovery.[2]

Plaintiffs have not had access to this discovery because the parties explicitly agreed to a Scheduling Order that contemplated only "preliminary discovery" related to certification. *See* Plaintiffs' and Defendants' Proposed Scheduling Order [Doc. # 14]. The Court endorsed this bifurcated discovery plan – the plan that Dell now attempts to disavow. *See* Scheduling Order [Doc. # 51].[3]

### B.    The Court Does Not Consider the Merits at Certification.

Because the parties have not yet conducted merits discovery, it would be highly improper for the Court to engage in any merits inquiry at this early stage of the litigation.    Dell commits considerable resources to arguing that Plaintiffs simply cannot prevail on their claims in the

---

[2]         Notably, Dell refused to provide interrogatory responses related to several of these categories because Plaintiffs' interrogatory was purportedly "premature (not related to class certification/notice)."   *See* Dell's Objections and Answer to Plaintiffs' First Interrogatories, attached hereto as Exhibit W, at Responses Nos. 8, 9, 14, and 15.   Indeed, Dell refused to articulate the bases for its affirmative defenses because such an explanation would be "premature (not related to class certification/notice)."   *Id.* at Response No. 17.   Thus, even after refusing Plaintiffs' discovery on the grounds that it was related to the merits, Dell now wants this Court to deny Plaintiffs' Motion based on the merits of their claims.   The Court should reject Dell's attempt to have it both ways.

[3]         Furthermore, the declarations submitted by Dell highlight the need for additional discovery.   For example, in Michael Hudanik's Declaration, Dell asserts that certain employees were properly compensated under the fluctuating workweek method of payment, but it cites no supporting documents; Plaintiffs should have the opportunity to test this merits-based assertion via proper discovery – not discovery limited only to certification.   *See* Hudanik Declaration at ¶ 7.   Additionally, none of the Attachments to Mr. Hudanik's Declaration bear a Bates label, meaning Dell has never produced them to Plaintiffs.   *See* Hudanik Declaration at Attachments A-F.   Thus, the unsupported assertions contained in Mr. Hudanik's Declaration, as well as those contained in other Dell declarations, suggests that Dell has voluminous additional materials related to the merits of the lawsuit that have never been produced to Plaintiffs.   Such a conclusion supports Plaintiffs' assertion that the parties have not yet engaged in full-fledged discovery adequate to address the merits of the litigation.

litigation. For example, Dell argues that it properly complied with the fluctuating workweek method of payment (Dell Opp. [Doc. # 67] at pp. 20-24), and that Dell properly paid its employees for all work (*Id.* at pp. 25-28). Dell's arguments are tantamount to a motion for summary judgment under Rule 56 because Dell asks the Court to conclude as a matter of law that Plaintiffs cannot prevail on their claims.

Such a result would be highly improper given the admonition that courts are not to consider the merits of the underlying claims at the certification stage. In *In re Commonwealth Oil/Tesoro Petroleum Sec. Litig.*, 484 F. Supp. 253 (W.D. Tex. 1979), this Court stated:

> The initial question is whether and to what extent this court in ruling on a class certification motion may consider the merits of a plaintiff's case. ***There is considerable authority for the proposition that at the class certification stage of a proceeding, a court may make no inquiry into the merits.*** . . . There is absolutely no support in the history of Rule 23 or legal precedent for turning a motion under Rule 23 into a Rule 12 motion to dismiss or a Rule 56 motion for summary judgment by allowing the district judge to evaluate the possible merit of the plaintiff's claims at this stage of the proceedings. ***Failure to state a cause of action is entirely distinct from failure to state a class action.***

*Id.* at 257 (refusing to consider the defendant's statute of limitation argument at class certification stage) (internal citations and quotations omitted) (emphasis added).[4]

---

[4] Other courts in the Fifth Circuit and Texas accord. *See Bertulli v. Indep. Assoc. of Continental Pilots*, 242 F.3d 290, 297 (5th Cir. 2001) ("We do not consider the merits of a case when reviewing class certification.") (citing *Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 178 (1974)); *Sembach v. McMahon College, Inc.*, 94 F.R.D. 260, 261 (S.D. Tex. 1982) ("It is well established that it is inappropriate for a court to try the merits of a plaintiff's claim when considering his motion for class certification."); *In re First Republicbank Sec. Litig.*, No. 3-88-0641, 1989 WL 108795, at *9 n. 19 (N.D. Tex. Aug. 1, 1989) ("Plaintiffs need not prove their case at this point, but must merely meet the requirements of Rule 23.") (declining to consider a defendant's affirmative defense at certification stage); *Kelley v. Galveston Autoplex*, 196 F.R.D. 471, 474-75 (S.D. Tex. 2000) ("The Court may not consider the merits of Plaintiff's case in ruling on class certification. . . . [T]he Court may not consider [defendant's affirmative defense] in deciding whether a class should be certified.").

Similarly, when courts evaluate a motion for conditional certification under the FLSA, they do not consider the merits of a plaintiff's claims. *McElmurry v. US Bank Nat'l Assoc.*, No. CV-04-642-HU, 2004 WL 1675925, at *16 (D. Or. July 27, 2004) ("plaintiffs do not need to make a showing of success on the merits of their claims" for conditional certification purposes). *See also Smith v. T-Mobile USA, Inc.*, No. CV 05-5274, 2007 WL 2385131, at *7 (C.D. Cal. Aug. 15, 2007) ("in determining whether to certify a class action or a collective action, the court is not

Thus, the Court may not consider Dell's merits-based arguments – including its purported affirmative defenses – in evaluating Plaintiffs' Motion, particularly where the parties have not yet engaged in full discovery.  Plaintiffs look forward to the opportunity to resolve the merits of the litigation, but a motion for certification is not the proper forum, and the Court should reject Dell's attempt to convert Plaintiffs' Motion into a substantive ruling as a matter of law under Rule 12 or Rule 56.

## III.   THE COURT SHOULD CONSIDITIONALLY CERTIFY PLAINTIFFS' FLSA CLAIMS.

After excising Dell's merits-based arguments from its Opposition, the company's remaining arguments present no impediment to conditional certification under the FLSA, particularly where another court has already conditionally certified claims almost identical to those presented here.  *See Norman v. Dell*, No. 07-6028, 2008 WL 2899722 (D. Or. July 10, 2008).  Despite submitting a forty-page tome opposing certification, Dell has not contradicted any of the following conclusions and they are uncontroverted for purposes of Plaintiffs' Motion:

- Business sales representatives are uniformly governed by the same job description. Plaintiffs' Statement of Facts (hereafter "Pl. SOF") at ¶ 2.[5]  Dell argues there is not one

---

to consider the merits of the plaintiffs' case"); *Morton v. Valley Farm Transport, Inc.*, No. C 06-2933, 2007 WL 1113999, at *3 (N.D. Cal. Apr. 13, 2007) ("[defendant's] arguments go to the merits of plaintiffs' claims, and do not defeat certification"); *Stanfield v. First NLC Fin. Serv., L.L.C.*, No. C 06-3892, 2007 WL 3190527, at *4 (N.D. Cal. Nov. 1, 2006) ("the court will not evaluate the merits of plaintiffs' claims under the FLSA at this point in the litigation"); *Young v. Cooper Cameron Corp.*, 229 F.R.D. 50, 54 (S.D.N.Y. 2005) ("The focus of [the conditional certification] inquiry, however, is not whether there has been an actual violation of law but rather on whether the proposed plaintiffs are 'similarly situated' under 29 U.S.C. § 216(b) with respect to their allegations that the law has been violated."); *Schlotisek v. The Eldre Corp.*, 229 F.R.D. 381, 391 (W.D.N.Y. 2005) (the defendant's asserted defenses "go to the merits of plaintiff's claims, which are not relevant at this stage."); *Ayers v. SGS Control Serv., Inc.*, No. 03 Civ. 9078, 2004 WL 2978296, at *6 (S.D.N.Y. Dec. 21, 2004) ("Defendants' focus on the merits is misplaced at this stage.  Evaluation of the merits of plaintiffs' claims is unnecessary to determine whether notice is appropriate to the defined similarly situated class."); *LeGrand v. Educ. Mgmt. Corp.*, No. 03 Civ. 9798, 2004 WL 1962076, at *2 (S.D.N.Y. Sept. 2, 2004) (conditional certification "does not implicate the merits of the plaintiff's claim, and a finding that opt-in notices should be sent is not a suggestion that the claims are meritorious.").

[5]     Plaintiffs incorporate herein the Statements of Fact in their Motion and Memorandum for Certification Under 29 U.S.C. § 216(b) and Class Action Certification Under Fed. R. Civ. P. 23 [Doc. # 59].

job description covering business sales representatives, but the company's interrogatory responses indicate otherwise. *See* Ex. W at Response No. 4 (directing Plaintiffs to a single job description for all business sales representatives – the same job description attached as Exhibit A to Plaintiffs' Motion).

- Business sales representatives are uniformly employed by the same Dell entity. *Id.* at ¶¶ 3-4.

- Dell uniformly classifies all business sales representatives as "salary nonexempt" employees, meaning they are paid a purported base salary and eligible for overtime compensation that is paid at a half-time rate. *Id.* at ¶¶ 13-15.

- Dell uses a uniform timekeeping system called Kronos for all business sales representatives. *Id.* at ¶¶ 18-19.

- Dell has programmed Kronos to automatically deduct one hour of pay for every six hour shift. *Id.* at ¶¶ 24.

Despite these apparent unifying characteristics, Dell attempts to inject and generate distinctions among business sales representatives, but none of those distinctions bear on the issues in this litigation. For example, Dell asserts that business sales representatives in a variety of units "have widely dissimilar duties, schedules, compensation plans, and working conditions." *See* Dell Opp. [Doc. # 67] at p. 10, n. 13. The only evidence Dell cites to support its argument are the self-serving declarations submitted by its corporate executives – executives who never voiced these purported distinguishing characteristics during their depositions. Moreover, even if Dell's assertion is true – which Plaintiffs do not concede – any purported dissimilarity is

irrelevant to whether business sales representatives are "similarly situated" for purposes of conditional certification under the FLSA.[6]

Moreover, for the first time in the litigation Dell argues that the position "business sales representative" does not exist, and suggests that Plaintiffs somehow invented that title for their own benefit. *See* Dell Opp. [Doc. # 67] at p. 9. But the evidence shows that Dell itself routinely uses the term "business sales representative" to refer to sales representatives employed by its business division. *See* Ex. W (never objecting to Plaintiffs' use of the term "business sales representative"); *Id.* at Response No. 2 (identifying the number of "business sales representatives" employed at each call center facility); Deposition of Amy Atsumi at 17:14-16, attached hereto as Exhibit X (authorizing Plaintiffs' counsel to use the term "business sales representative" to refer to "non-consumer sales representatives"). Thus, Dell began disavowing the job category "business sales representatives" only after the close of certification discovery. The Court should reject Dell's tactics and reach the conclusion supported by the uncontroverted evidence: Dell treats business sales representatives as a cohesive, uniform group.

Indeed, the undisputed facts demonstrate that Dell classifies and treats business sales representatives as a cohesive, uniform group for purposes of wage and hour policies. Such similar treatment easily satisfies the standards for certification, particularly in the FLSA context where courts hold that the standard for conditional certification "is a lenient one" that "typically" results in conditional certification. *Mooney v. Aramco Services Co.*, 54 F.3d 1207, 1213-14 (5th Cir. 1995).

---

[6]       *See Valcho v. Dallas County Hosp. Dist.*, 574 F. Supp. 2d 618, 621 (N.D. Tex. 2008) (to demonstrate similarly situated employees under the FLSA, "the positions need not be identical, but similar") (quoting *Aguilar v. Complete Landsculpture, Inc.*, No. 04-CV-0776, 2004 WL 2293842, at *1 (N.D. Tex. Oct. 7, 2004)).

### A.      Dell's Evidence Is Not Reliable.

The evidence Dell proffered to defeat certification is unreliable because it is in the form of self-serving declarations submitted by Dell's corporate executives – declarations that contain only conclusory statements that are not supported by the evidence.  For example, Amy Atsumi's Declaration makes several conclusory assertions that are not supported by any evidence.  She concludes that "No sales representative was ever improperly paid under the fluctuating work week" but she does not explain her conclusion nor does she reference any extrinsic evidence to support her allegation.  *See* Dell Ex. A at ¶ 7.  Similarly, Ms. Atsumi refers to a number of attachments as being "representative" of what business sales representatives would have received, but she does not authenticate the documents in any way or even articulate when the documents were in effect or if they were effective in all Dell call centers.[7]  *Id.* at ¶ 6.  Thus, Ms. Atsumi's Declaration is not reliable.

Similarly, Michael Hudanick's Declaration is not reliable because it is conclusory.  For example, Mr. Hudanick states, "The job of a Technical Sales Representative is fundamentally different than the job of an [Inside Sales Representative]" but he provides no explanation that would distinguish the two jobs other than their titles.  *See* Dell Ex. B at ¶ 6.  Similarly, Attachment A to Mr. Hudanick's Declaration is unconvincing because it does not address the issues in this litigation – i.e., how those individuals were compensated.  The Attachment – which

---

[7]      Dell takes Plaintiffs to task for attaching Plaintiffs' Exhibit F to their initial Motion and repeatedly points to it as evidence that Dell complied with the fluctuating workweek method of payment.  Notably, Dell never authenticates the document or identifies if it was ever actually used in any trainings.  In fact, when Plaintiffs' counsel asked counsel for Dell for a timeframe for the document, Dell's counsel responded that he did not know of a time frame for the document.  *See* Deposition of Tracie Webb at 107:20-24, attached hereto as Exhibit Y.  Plaintiffs who were questioned about Exhibit F testified that they had never seen the document.  *See* Deposition of Hitul Gandhi at 97:23 to 98:5, attached hereto as Exhibit Z; Deposition of Parvin Greene at 117:18 to 118:11, attached hereto as Exhibit AA; Deposition of Daniel Wojciechowski at 49:4-18, attached hereto as Exhibit BB; Webb Depo. at 120:9-18 (Ex. Y).  Thus, there is no reliable evidence for concluding that Dell ever used or relied on Exhibit F to train business sales representatives.

does not bear a Bates label and appears to have never been produced to Plaintiffs – attempts to distinguish among business sales representatives based on factors such as who handles "large orders" and what type of products they sell.  *See* Attachment A to Dell Exhibit B.  These are distinctions without a difference because none of these issues affect whether Dell properly classified business sales representatives under the fluctuating work week method of payment or whether Dell properly kept track of the overtime hours worked by business sales representatives.  In this respect, Dell's proffered evidence is unreliable and inapposite.[8]

### B.   Plaintiffs' Evidence Is Reliable.

Without any reliable evidence to submit in opposition to certification, Dell then attempts to undermine the Declarations submitted by Plaintiffs.  Dell's efforts are in vain.

Dell attempts to discredit seven opt-in Plaintiffs by arguing that they wrongfully stated in their Declaration that they were "hourly" employees when, in fact, they received a salary.  *See* Dell Opp. [Doc. # 67] at pp. 5-6.  But several Plaintiffs – not just those identified by Dell – testified that they were confused about how they were paid (i.e., on a salary basis) and that it was their understanding that Dell would deduct from their salary if they missed work.[9]  Thus, Dell's

---

[8]      To the extent Mr. Hudanick attaches payroll records to endorse his conclusory statements, there is no evidence that the payroll records are comprehensive for the relevant time period, and they are submitted only for a handful of Plaintiffs.  Thus, it appears Dell selected particular payroll records to support its conclusions.

[9]      *See* Deposition of Joshua Barker at 16:14-17:19, attached hereto as Exhibit CC (testifying he was unaware and never understood whether he was paid on a salary or hourly basis and further testifying he was not allowed to take time off if he did not have vacation, floating holiday or PBA time remaining); Gandhi Depo. at 39:19-40:14 (Ex. Z) (""If I worked under 40 hours, I only got paid – I'm not sure how they calculated the pay, but I did not get the – my full – like, the same amount of pay as I did if I worked 40 hours."); Greene Depo. at 67:5-68:9 (Ex. AA) (testifying about confusion surrounding base salary), 118:13-25 (testifying he understood base salary to mean he was only paid for those hours worked if he worked less than 40 hours per week); Deposition of David Haley at 91:15-92:16, attached hereto as Exhibit DD (testifying he is unsure what made up his base salary and how it was calculated); Webb Depo. at 20:2-16 (Ex. Y) ("Q: How were you compensated once you moved to Dell? A: I don't know…I couldn't tell you. They couldn't clearly explain to us;" further testifying "And then the base pay, which I don't know what that is."), 57:2-58:3 (did not receive full base pay when worked less than 40 hours in a week on at least two separate occasions), 78:24-80:6 (unaware whether she was an hourly or salary employee); Wojciechowski Depo. at 73:2-14 (Ex. BB) (testified he believed he would receive pay only for those hours actually worked if worked less than 40 hours per week).

deposition citations are out of context and this dispute highlights one of the primary issues in the litigation: Plaintiffs allege that Dell cannot satisfy the salary basis component of the fluctuating workweek method of payment.   Plaintiffs' Declarations support this allegation and Dell's argument to the contrary is inapposite.

Other than these deposition citations, Dell relies primarily on its own Declarations to "prove" that Plaintiffs' Declarations are inaccurate.   However, as set forth above, Dell's Declarations are conclusory and not supported by any objective evidence.   Thus, Dell has failed to discredit Plaintiffs' Declarations and the Court should reject Dell's attempt to strike them from consideration.[10]

### C.    Plaintiffs' Misclassification Claim Is Amenable to FLSA Certification.

Having failed to refute Plaintiffs' evidence, Dell then argues the merits of Plaintiffs' claim for the company's violation of the fluctuating workweek.   As set forth above, the Court cannot inquire into the merits of Plaintiffs' claims.   Nonetheless, there are a few points to make related to Plaintiffs' fluctuating workweek claim that highlight how the claim is amenable to certification.

Plaintiffs' fluctuating workweek claim is a "misclassification" claim because Dell uniformly classifies all business sales representatives under the fluctuating workweek method of payment; Dell does not and cannot dispute this fact.   When an employer classifies all employees under a particular compensation scheme and then that classification comes under attack, conditional certification under the FLSA is particularly appropriate.   Indeed, courts hold that an

---

[10]     Dell's reliance on *Brooks v. BellSouth Telecommunications* is unavailing.   In that case, the defendant's competing evidence was submitted by other individuals in the same job category that the plaintiff was seeking to have certified – not just by management employees.   In this case, Dell has submitted no evidence from other business sales representatives to contradict Plaintiffs' allegations and, accordingly, *Brooks* is inapposite to the Court's analysis.

employer cannot uniformly classify employees for wage purposes and then argue that those same employees are not similarly situated after the commencement of litigation arising from the classification.  *See Wang v. Chinese Daily News*, 231 F.R.D. 602, 613 (C.D. Cal. 2005) ("Defendant cannot, on the one hand, argue that all reporters and account executives are exempt from overtime wages and, on the other hand, argue that the Court must inquire into the job duties of each reporter and account executive in order to determine whether that individual is 'exempt.'"); *Krzesniak v. Cendant Corp.*, No. C 05-05156, 2007 WL 1795703, at *17 (N.D. Cal. June 20, 2007) (same); *Tierno v. Rite Aid Corp.*, No. C 05-02520, 2006 WL 2535056, at *9 (N.D. Cal. Aug. 31, 2006) (rejecting the defendant's argument of individualized inquiries where the defendant had "always categorically classified all Store Managers as exempt employees"). Thus, because Dell classifies all business sales representatives uniformly, conditional certification under the FLSA is appropriate.

### D.  Plaintiffs' Claims for Unpaid Time Are Amenable to FLSA Certification.

Dell also argues that Plaintiffs' claims for unpaid time are not amenable to certification, but Dell does not address the myriad of cases that conditionally certify similar claims in the call center environment.[11]  *See Oliver v. Aegis Communications Group, Inc.*, No. 3:08-cv-00828 at Doc. # 30 (N.D. Tex. Oct. 30, 2008);[12] *Burch v. Qwest Comm. Int'l, Inc.*, 500 F. Supp. 2d 1181 (D. Minn. 2007) (conditionally certifying a collective of call center workers under the FLSA); *Sherrill v. Sutherland Global Services, Inc.*, 487 F. Supp. 2d 344 (W.D.N.Y. 2007) (same); *Smith v. TeleTech Holdings, Inc.*, AAA No. 11 160 02726 04 (Dec. 26, 2006) (same);[13] *Hens v.*

---

[11]     Conditional certification is particularly appropriate here where it is undisputed that Dell programs its timekeeping system to deduct one hour of pay for every six hours of work. *See* Pl. SOF at ¶ 24.  This is a uniform policy applied to all business sales representatives.

[12]     *See* Pl. Ex. O.

[13]     *See* Pl. Ex. S.

*ClientLogic Operating Corp.*, No. 05-381, 2006 WL 2795620 (W.D.N.Y. Sept. 26, 2006) (same); *Clarke*, 370 F. Supp. 2d 601 (same).   Nor does Dell address or distinguish the certification of almost identical claims under the FLSA in *Norman*.   *See Norman*, 2008 WL 2899722.

For the reasons set forth herein, Plaintiffs have satisfied the "lenient standard" governing conditional certification under the FLSA and the Court should grant their Motion.   *Mooney*, 54 F.3d at 1213-14.

## IV.   THE COURT SHOULD CERTIFY PLAINTIFFS' CLAIMS UNDER RULE 23.

As set forth herein, the Oklahoma law claims brought pursuant to 40 O.S. §§165.1, 165.3 and 165.9 by Consolidated Plaintiffs, Catherine L. Davis and Tommy Moore (herein "Consolidated Plaintiffs", "Davis", and/or "Moore") are appropriate for class certification pursuant to Rule 23.

### A.   Oklahoma's Wage Laws Are Not Cumulative of the FLSA.

By way of defeating Plaintiffs' right to Rule 23 class certification, Dell argues that Oklahoma law is essentially cumulative of the FLSA and that Rule 23 certification would do no more than allow Plaintiffs' to circumvent the FLSA's opt-in requirement.   *See* Dell Opp. [Doc. # 67] at p. 29.   Dell's support for this proposition is Okla. Admin. Code §380:30-1-8, and a reference to alleged comments made during an initial case status conference.   To the contrary, Oklahoma wage statutes differ in material respects from the FLSA.   Specifically, Oklahoma's wage statutes were enacted to ensure that employees were paid all wages due in a timely manner. Section 165.2 requires every employer to "pay all wages due the employees… at least twice each calendar month on regular paydays designated in advance by the employer."   40 O.S. § 165.2.[14]

---

[14]      "Whenever an employee's employment terminates, "employers 'shall pay the employee's wages in full, less offsets . . . at the next regular designated payday established for the pay period . . .'"   *Id.* at § 165.3(A).

Willful failure to pay these wages to terminated employees subjects the employer to additional liability of liquidated damages in the amount of two percent of the unpaid wages for each day upon which such failure continues. *Id.* at § 165.3(B). This section is applicable herein, as Dell willfully withheld overtime compensation to employees in the proposed class, including Plaintiff Davis. Specifically, approximately **two years** after Davis' employment at Dell terminated, she received a check for past unpaid overtime. *See* Deposition of Patti Powers at 130:25-133:14 and Ex. 5 thereto, attached hereto as Exhibit EE. Dell explains this payment as a "true up," which was done bi-weekly in connection with base pay or quarterly in connection with variable compensation. *Id.* at 133:22-137:12. Yet, Dell admittedly did not pay Davis and any other potential class members all overtime due within the quarterly time period. *See* Powers Depo. (Ex. EE) at 144:10-153:14 at Ex. 5 and Ex. 7 (Dell-Davis 232-34). Clearly, under Oklahoma law, Dell is required not simply to pay the "true up", but also the statutory two percent penalty provided under Section 165.3(B) to all business sales representatives. Further, Oklahoma law also provides for recovery of prejudgment interest should the court award liquidated damages, which may not be allowed under the FLSA. 23 O.S. § 6.[15]

Substantive differences between the relevant provisions of the Oklahoma Labor Code and the FLSA were recognized in *Mickle v. Wellman Products, LLC*, No. 08-cv-0297, 2008 WL 3925266, *8 (N.D. Okla. Aug. 20, 2008) (slip copy). In *Mickle*, the court remanded the case to state court, holding that a defendant may not rely on the FLSA as a federal defense to a state law claim as a basis for removal. *Id.* Accordingly, Oklahoma wage statutes are not identical to the

---

[15]    The relevant statute provides: "Any person who is entitled to recover damages certain, or capable of being made certain by calculation, and the right to recover which is vested in him upon a particular day, is entitled to recover interest thereon from that day, except during such time as the debtor is prevented by law, or by the act of the creditor from paying the debt." Interpreting this provision, *Sandpiper North Apartments v. American Nat. Bank*, 680 P.2d 983, 993 (Okla. 1984) held that prejudgment interest is allowed when the amount of recovery is "liquidated or capable of ascertainment by calculation."

FLSA and certification of a class action based upon Oklahoma law pursuant to Rule 23 is appropriate. *See also Garcia v. Tyson Foods, Inc.*, -- F.R.D. --, 2009 WL 352603 (D. Kan. Feb. 12, 2009) (wherein the District Court of Kansas certified both a collective action under FLSA and a class action arising under the Kansas Wage Payment Act).

> **B.      Plaintiffs Satisfy Rule 23(a).**
>
> *1.      Numerosity*

Although Plaintiffs demonstrate that Dell employed an ample number of Oklahoma business sales representatives to meet the numerosity requirement of Rule 23, Dell improperly relies upon *Thiebes v. Wal-Mart Stores*, No. Civ. 98-802, 2002 WL 479840 (D. Or. Jan. 9, 2002), to confuse the issue.  In *Thiebes*, a case in which ostensibly less than one percent of all potential class members filed consents to opt-into the case for purposes of the FLSA, the court declined to grant a subsequent motion for class certification on claims presented.  Yet in *Thiebes*, unlike this case, the plaintiff moved for class certification, then later withdrew its motion, only to re-urge the motion again.  Finally, upon consideration, ruling on the motion for class certification was deferred, although a collective action under the FLSA was conditionally certified and class notice was issued, after which 425 of a potential 15,000 potential class members filed consents to participate.  *Id*. at *3.  *Thiebes* is inapposite, as no collective action notice has been issued herein and, as such, it is pure speculation to assume that the number of class participants would remain constant rather than increasing.  Indeed, since the filing of Plaintiff's Motion, at least six additional persons have filed consents to opt-in to this suit as party plaintiffs.  *See* Notices of Consent at Docs. ## 61-64, 66.

Even if the Court considers the current number of opt-in plaintiffs to be instructive, numerous other courts have found the numerosity requirement is satisfied despite a relatively

low number of opt-in plaintiffs (as a percentage of the total class).[16]   Accordingly, Dell's argument is without merit.

### 2.      Commonality

As Plaintiffs have demonstrated, there are numerous common questions of law and fact here, none of which require an individualized inquiry.  "Absolute commonality" is not required.  *Oplchenski v. Parfums Givenchy, Inc*., 254 F.R.D. 489, 495 (N.D. Ill. 2008).  Indeed, as Dell fails to acknowledge, the existence of one common question satisfies the commonality requirement, as the threshold is not high.  *Id*.; *see also Sterling v. Velsicol Chem. Corp.*, 855 F.2d 1188, 1197 (6th Cir. 1988); *Forbush v. J.C. Penney Co., Inc*., 994 F.2d 1101, 1106 (5th Cir. 1993); *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1020 (9th Cir. 1998).

According to the Dell's Human Resources Site Lead for Oklahoma City, Dell programs Kronos, its timekeeping mechanism, to deduct one hour of time for employee lunches.  *See* Deposition of J. Machinski at 49:14-23, attached hereto as Exhibit FF.  Yet, Dell frequently brings in lunch for business sales representatives in Oklahoma and conducts training during lunch.  *Id*. at 51:7-21.  Dell does not keep track of this and makes no effort to re-program Kronos on training days, such that the program will not improperly deduct compensable employee time.  *Id*. at 51:22-53:18.  Given this testimony, Dell's policy and practice is to undercount hours worked.[17]

---

[16]       *See Noble v. 93 University Place Corp*., 224 F.R.D. 330, 342 (S.D.N.Y. 2004) (numerosity requirement was satisfied with only three opt-in plaintiffs); *Scott v. Aetna Services, Inc*., 210 F.R.D. 261, 267 (D.Conn. 2002) (numerosity requirement met with 22 opt-in plaintiffs out of a potential of 281); *Niemiec v. Ann Bendick Realty*, No. 1:04-cv-00897, 2007 WL 5157027, at *7 (E.D.N.Y. April 23, 2008) (numerosity element satisfied where 10 opt in plaintiffs joined case **after** receiving class notice; Court declined to determine whether class members were dissuaded from joining class).

[17]       *See Colozzi v. St. Joseph's Hospital Health Center*, -- F.Supp.2d --, 2009 WL 211401, *7 (N.D.N.Y. Jan. 26, 2009) (certifying an FLSA collective action of patient care employees who were required, on occasion, to work through or during lunch without compensation due to patient care demands associated with their positions, where the employer utilized Kronos automatic meal break deduction).

The same is true with regard to in and out punches in Kronos.  Specifically, Dell has programmed Kronos to round time entries to the nearest quarter hour.  *See* Atsumi Depo. (Ex. X) at 69:25-70:25.  Therefore, contrary to its arguments herein, Dell does not record ***exact*** time of its business sales representatives.  *See* Dell's Opp. [Doc. # 67] at p. 3.  Also, and further to this point, and in clear contrast to Hudanick's Declaration, Dell's policy does not compensate business sales representatives for "all time worked."  *See* Hudanick Dec. at ¶ 9.  This uniform policy is significant and presents a common question among all the potential class members.

Similar arguments to those presented by Dell were recently rejected by the District Court of Kansas.  *See Garcia*, 2009 WL 352603, at *4-6 (evidence of varying job duties performed by each plaintiff did not diminish the "predominant relevant similarity" – Tyson's "practice of requiring employees to perform uncompensated work activities.").

### 3.    *Typicality*

Typicality, like commonality, is not a demanding test pursuant to Rule 23.  *Forbush*, 994 F.2d at 1106 (citing *Shipes v. Trinity Industries*, 987 F.2d 311, 316 (5th Cir. 1993)).  Representative claims are considered "typical" if they are reasonably co-extensive with those of putative class members.  *See Hanlon*, 150 F.3d at 1020.  Allegations of similar wrongful employment practices satisfy both commonality and typicality requirements of Rule 23(a).  *Shipes*, 987 F.2d at 316 (citing *Carpenter v. Stephen F. Austin State Univ.*, 706 F.2d 608, 617 (5th Cir. 1983)).  Here, as in *Shipes*, Dell employed the same employment practices and training materials for all business sales representatives hired in Oklahoma City, Oklahoma.  *Id*.  Likewise, all putative class members were subject to one or more of the same wrongful employment practices, including automatic deduction of lunch breaks and rounding of time punches in and out of Kronos.  *See* Machinski Depo. (Ex. FF) at 49:14-23 and 51:7-53:18.  *See*

*also* Atsumi Depo. (Ex. X) at 69:25-70:25.  Dell's attempts to parse the deposition testimony taken herein does not defeat the typicality of claims presented.  However, because common issues identified include the same alleged course of conduct by Dell in classifying workers, typicality should also be satisfied for purposes of Rule 23(a).

### 4.      *Adequacy*

Named Plaintiffs Davis and Moore, as well as Plaintiffs' counsel, are demonstrated to be adequate for purposes of Rule 23.  Dell takes no issue with counsel in its response; however, it does attack Davis and Moore as being purported inadequate class representatives.  Davis and Moore initially brought suit in their state of residence, Oklahoma.  Over their objection, this case was transferred and consolidated.  Dell cites no authority for the proposition that opposition to transfer defeats the adequacy of a Named Plaintiff to serve in a representative capacity.  Indeed, notwithstanding the hardship presented by travel to this district for purposes of trial, both Davis and Moore stand ready and able to serve in their representative capacity, and understand and accept this responsibility.  See Supplemental Declarations of Davis and Moore, attached hereto as Exhibits GG and HH, respectively.

*Evans v. IAC/Interactive Corp.* is not applicable, as that case concerned the fact that plaintiffs were altogether unfamiliar with their declarations – a fact that Dell does not even allege here.  244 F.R.D. 568, 578-79 (C.D. Ca. 2007).  Likewise, *Byes v. Telecheck Recovery Servs., Inc.*, 173 F.R.D. 421 (E.D. La. 1997) involved a named plaintiff with an undisclosed criminal conviction, an issue not relevant here.  Finally, *Dubin v. Miller* is also improperly cited by Dell. 132 F.R.D. 269, 272 (D. Colo. 1990).  *Dubin* is a securities case wherein the plaintiff had a close relationship with potential unnamed individuals, who should have been named defendants in the case, as well as other connections to the defendant which tainted his credibility.  *Id*. at 272-73.

No such ill motives have been alleged against Davis or Moore.  Accordingly, adequacy of representation is established.

### C.      Plaintiffs Satisfy Rule 23(b)(3).

To certify a class action, the court must find that the common questions of law and fact predominate over issues, if any, which only affect individual members of the proposed class, and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy.  Fed. R. Civ. Pro. 23(b)(3).  Plaintiffs satisfy both of these requirements.

### 1.      *Predominance*

In the context of overtime pay litigation, courts have often found that common issues predominate where an employer treats the putative class members uniformly with respect to compensation, even where the party opposing class certification presents evidence of individualized variations.  *See, e.g., Wang*, 231 F.R.D. at 613; *Krzesniak*, 2007 WL 1795703, at *17; *Tierno*, 2006 WL 2535056, at *9.

Plaintiffs and the other Class Members were treated uniformly by Dell.  Plaintiffs and putative class members were all subject to Dell's uniform policies concerning timekeeping through Kronos and lunchtime deduction policies, among others.  Pursuant to 40 O.S. §§ 165.1, 165.3 and 165.9, the Plaintiffs' claims are not individualized from claims of the putative class, although damages may undoubtedly vary.  Essentially identical issues will be tried, including whether Plaintiffs and class members are due unpaid compensation for hours worked off the clock while employed at Dell.

### 2.      *Superiority*

Given the number of current opt-ins who have joined the FLSA portion of this case to date, there can be little doubt that adjudicating the claims of current and former Oklahoma

business sales representatives as a class action under Rule 23 is the preferred method of resolving their claims.

Contrary to Dell's arguments, several courts recognize that FLSA and Rule 23 certifications may co-exist.[18]  Indeed, this Court has recognized that a related claim under Rule 23 may be organized, notwithstanding an FLSA claim.  *See Jackson v. City of San Antonio*, 220 F.R.D. 55, 59 (W.D. Tex. 2003).  Notably, numerous recent cases have adopted a similar view that FLSA and state statutes are not irreconcilable and have granted dual certification.[19]

Oklahoma law has substantive differences from the FLSA, which are set forth herein.  Among these differences, Oklahoma based workers have broader damage recovery.  Accordingly, it would be patently unfair to deny Oklahoma based workers to pursue these remedies under the allowances of a class action pursuant to Rule 23.

---

[18]    *See Garcia v. Tyson Foods, Inc.*, No. 06-2198, 2009 WL 352603, at *13 (D. Kan. Feb. 12, 2009); *Carnevale v. GE Aircraft Engines*, 492 F. Supp. 2d 763, 770-71 (S.D. Ohio 2003) (denying motion to dismiss and holding that it held supplemental jurisdiction over state law claims for improper classification of salaried workers of absent class members in collective action under FLSA); *Bamonte v. City of Mesa*, No. CV 06-01860, 2007 WL 2022011, at *4-5 (D. Ariz. July 10, 2007) (rejecting irreconcilability argument and holding that "the values of economy, convenience, fairness, and comity on balance favor" exercising supplemental jurisdiction); *Chavez v. IBP, Inc.*, No. CT-01-5093-EFS, 2002 WL 31662302, at *2 (E.D. Wash. Oct. 28, 2002) (holding that it had supplemental jurisdiction over claims under state wage and hour laws); *Beltran-Benitez v. Sea Safari, Ltd.*, 180 F. Supp. 2d 772, 774 (E.D.N.C. 2001) (rejecting irreconcilability argument and exercising supplemental jurisdiction over state claims); *Ansoumana v. Gristede's Operating Corp.*, 201 F.R.D. 81, 96 (S.D.N.Y. 2001) (holding that the class action for state labor law claims in FLSA action were superior to other available methods for the fair an efficient adjudication of the controversy).  In the interest of brevity, Plaintiffs have cited only a few cases allowing FLSA and Rule 23 claims to proceed simultaneously, but scores of other cases allow such claims to co-exist.  Indeed, "*[d]istrict court cases permitting FLSA collective actions to proceed simultaneously with Rule 23 state actions are legion*." *Osby v. Citigroup, Inc.*, No. 07-cv-6085, 2008 WL 2074102, at *3 n. 2 (W.D. Mo. May 14, 2008) (collecting cases and rejecting argument that FLSA and Rule 23 claims cannot co-exist) (emphasis added).

[19]    In *Ansoumana*, the court stated:

>  If the related FLSA and Minimum Wage Act claims were to be litigated in parallel fashion, in this court and in the New York Supreme Court, there would be great potential for confusion of issues; considerable unnecessary costs, inefficiency and inconsistency of proceedings and results; and the problems inherent in parallel class action litigation.

201 F.R.D. at 96.

## V.   THE COURT SHOULD EXERCISE ITS AUTHORITY TO CONTROL NOTICE TO CLASS MEMBERS.

Dell argues that it should not be required to provide contact information for putative members of the class to Plaintiffs' counsel.  Alternatively, Dell argues that it should be allowed to "send a letter" to putative members of the class in a manner consistent with *Torres v. CSK Auto, Inc.*, No. 03-113, 2003 WL 24330020 (W.D. Tex. Dec. 17, 2003).

The Court should reject Dell's proposal because *Torres* is an outlier opinion.  It cites no other cases in developing its novel approach, and no other cases have cited to *Torres* and adopted its method for distributing notice; thus, it is an isolated aberration.  Also, Dell's "concern" about providing sensitive information ignores the fact that any such information will be subject to the Protective Order in this case.  *See* Protective Order [Doc. # 23].  Thus, Plaintiffs' counsel will be under an ongoing obligation to maintain the confidentiality of the information.[20]

One of the primary benefits of granting certification is that it allows the Court to control the notice procedure.  *See Edwards v. City of Long Beach*, 467 F. Supp. 2d 986, 990 (C.D. Cal. 2006); *Bonilla v. Las Vegas Cigar Co.*, 61 F. Supp. 2d 1129, 1137 (D. Nev. 1999).  *See also Penk v. Oregon State Bd. of Higher Educ.*, No. 80-436, 1982 WL 325 (D. Or. May 26, 1982) (court supervising notice and communications with class members); *Manual for Complex Litig.* (4th ed.) at § 21.33 ("The judge has ultimate control over communications among the parties, third parties, or their agents and class members on the subject of the litigation to ensure the integrity of the proceedings and the protection of the class.").  Indeed, the form that will be used as a model to craft the notice in this case clearly contemplates that the notice is being sent on

---

[20]   *Torres* also expressed a concern about attorneys directly soliciting prospective clients via mass mailings. Dell has not articulated such a concern here and, instead, limited its concern to providing Plaintiffs' counsel with sensitive personal information.  Again, there is no need for concern where a Protective Order is in effect.

behalf of the Court.[21]  *See* Federal Judicial Center Model Class Action Notice, attached hereto as Exhibit II.  This model was created and developed by the Federal Judicial Center – certainly this carries a more meaningful imprimatur than a letter from Dell.

Also, the notice should be controlled by and sent on behalf of the Court, particularly where "[o]nce a class has been certified, the rules governing communications apply as though each class member is a client of the class counsel.  Defendants' attorneys, and defendants acting in collaboration with their attorneys, may only communicate through class counsel with class members on matters regarding the litigation."  *See Manual* at § 21.33.  Having Dell directly contact putative class members would undermine this attorney-client relationship, particularly where receiving a communication directly from Dell might have the unintended effect of intimidating putative class members and discouraging them from participating in the litigation.

The Court can avoid all these potential complications and decline to adopt the *Torres* model – a model that no other court has implemented.  Instead, Plaintiffs submit that they will proffer a draft notice within ten (10) days after the Court issues its ruling on class certification. Of course, Plaintiffs anticipate that Dell will have the opportunity to review and submit comments on the draft notice before the Court provides its final approval.

## VI.    CONCLUSION

Dell is unable to articulate any reasonable basis for denying Plaintiffs' Motion for Certification.  For the reasons outlined in their Motion and herein, Plaintiffs respectfully request that the Court grant their Motion for Certification.

---

[21]    The Federal Judicial Center's model notices are the preferred format.  *See Manual* at § 21.311 (referring to the Federal Judicial Center's model and noting that it offers guidance regarding plain language).  The model notice is available online at www.fjc.gov (last visited on March 14, 2009).

**DATE:**  March 16, 2009                    Respectfully submitted,


**STUEVE SIEGEL HANSON LLP**


        /s/ George A. Hanson
George A. Hanson (admitted *pro hac vice*)
Email:  hanson@stuevesiegel.com
Matthew L. Dameron (admitted *pro hac vice*)
Email:  dameron@stuevesiegel.com
460 Nichols Road, Suite 200
Kansas City, Missouri 64112
Tel:     816-714-7100
Fax:     816-714-7101

**LEE & BRAZIEL LLP**
J. Derek Braziel
Texas Bar No. 00793380
Email:  jdbraziel@l-b-law.com
Meredith Mathews
Texas Bar No. 24055180
Email:  mmathews@l-b-law.com
1801 N. Lamar Street, Suite 325
Dallas, Texas 75202
Tel:     214-749-1400
Fax:     214-749-1010

        and

**FEDERMAN & SHERWOOD**
William B. Federman
Texas Bar No. 00794935
Email:  wbf@federmanlaw.com
Allison B. Waters
Texas Bar No. 00795994
Email:  abw@federmanlaw.com
Nicholas G. Farha (admitted *pro hac vice*)
Email:  ngf@federmanlaw.com
10205 N. Pennsylvania Ave.
Oklahoma City, Oklahoma 73120
Tel:     (405) 235-1560
Fax:     (405) 239-2112

**ATTORNEYS FOR PLAINTIFFS**

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that the foregoing was filed on the Court's CM/ECF system on March 16,

2009, and delivered to the following individuals:

Jeffrey C. Londa
E-mail: jeffrey.londa@ogletreedeakins.com
Ogletree Deakins
500 Dallas Street, Suite 3000
Houston, Texas 77002-4709
Tel:     (713) 655-0855
Fax:     (713) 655-0020

Michael W. Fox
E-mail: michael.fox@ogletreedeakins.com
Ogletree Deakins
301 Congress Avenue, Suite 1250
Austin, Texas 78701
Tel:     (512) 344-4711
Fax:     (512) 344-4701

**ATTORNEYS FOR DELL INC.**
**and DELL MARKETING USA, L.P.**


                                    /s/ Matthew L. Dameron
                                    Matthew L. Dameron
                                    **Attorney for Plaintiffs**