```
 1                    UNITED STATES DISTRICT COURT
                      WESTERN DISTRICT OF TEXAS
 2                          AUSTIN DIVISION

 3  HITUL GANDHI, ET AL        ) Docket No. A 08-CA-248 JRN
                               )
 4  vs.                        ) Austin, Texas
                               )
 5  DELL, INC., ET AL          ) October 15, 2009

 6

 7                 TRANSCRIPT OF MISCELLANEOUS HEARING
                BEFORE THE HONORABLE ANDREW W. AUSTIN

 8

 9  APPEARANCES:

10  For the Plaintiff:        Mr. J. Derek Braziel
                              Lee & Braziel
11                            1801 North Lamar Street, Suite 325
                              Dallas, Texas 75202
12
    (Telephonically)          Mr. Nicholas G. Farha
13                            Federman & Sherwood
                              10205 North Pennsylvania Avenue
14                            Oklahoma City, Oklahoma 73120

15  (Telephonically)          Mr. Bradley Thomas Wilders
                              Stueve, Siegel & Hanson
16                            460 Nichols Road, Suite 200
                              Kansas City, Missouri 64112
17

18  For the Defendant:        Mr. Christopher H. Hahn
                              Dell, Inc.
19                            One Dell Way, MS # 8033
                              Round Rock, Texas 78682
20
                              Mr. Brittan L. Buchanan
21                            Van Osselaer & Buchanan
                              9600 Great Hills Trail,
22                            Suite 300 West
                              Austin, Texas 78759
23

24

25
```

1    **(Appearances Continued:)**

2    For the Defendant:          Mr. Jeffrey C. Londa
                                  Ogletree, Deakins, Nash,
3                                 Smoak & Stewart
                                  One Allen Center
4                                 500 Dallas Avenue, Suite 3000
                                  Houston, Texas 77002

5

6    Transcriber:                Ms. Lily Iva Reznik, RPR, CRR
                                  200 W. 8th Street
7                                 Austin, Texas 78701
                                  (512)916-5564

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25   Proceedings recorded by electrical digital sound recording,
     transcript produced by computer.

```
1              (Proceedings commence at 10:34 a.m.)

2              THE CLERK:  The Court calls A 08-CV-248, Hitul Gandhi,

3    and Others vs. Dell for hearing.

4              THE COURT:  Counsel, if y'all could just all announce

5    for the record who you represent.

6              MR. BRAZIEL:  Derek Braziel for the plaintiffs, your

7    Honor.

8              MR. LONDA:  Jeff Londa for Dell, your Honor.  Chris

9    Hahn, who is in-house counsel for Dell, is also here with me,

10   and he will make the argument.  And Britt Buchanan.

11             MR. BUCHANAN:  Good morning, your Honor.

12             THE COURT:  And on the phone?

13             MR. FARHA:  Nick Farha for the plaintiffs and Phil

14   Dunavit (phonetic) for the plaintiff.

15             THE COURT:  Okay.  Is that everybody who's there on the

16   phone?

17             MR. FARHA:  Yes.

18             SPEAKER:  I think Mr. Wilder was supposed to try and

19   call in.

20             MR. FARHA:  Brad Wilders is on the phone for

21   plaintiffs.  Can you hear him, sir?

22             THE COURT:  Mr. Wilder?

23             MR. WILDERS:  Yes, I'm here.  Sorry.  Cutting in and

24   out on me.

25             THE COURT:  All right.  If you're on a speaker phone,
```

1   it might help if you pick up the receiver.

2          MR. WILDERS:  Okay.  I could do that.

3          THE COURT:  Because you're not coming in terribly loud

4   for our purposes.

5          All right.  The sole purpose of this hearing, as I

6   indicated in the notice, is to address one issue with regard to

7   the matter, referred to me by Judge Nowlin, on what sort of

8   notice should be sent out to the prospective members of the

9   collective action.  And the specific issue on which the parties

10  differ is -- there's several where y'all differ, but the one

11  where y'all differ that I need some additional argument on is on

12  to whom should this notice be sent?

13         I mean, you know, one of the issues is, you know, who

14  should send it out and we need to be able to identify from Dell's

15  perspective what addresses and what names of employees are going

16  to be put on those notices to be mailed out.  In the plaintiffs'

17  proposed notice, the language used is simply business sales

18  representative, with a little additional definition provided in

19  the -- under the heading of to be eligible to join this lawsuit,

20  you must have, and then, there's a list of two things:  Must have

21  been employed as a business sales representative during a certain

22  time period and then, worked at the call center in one of the

23  following cities.

24         Dell's notice says, to be eligible you must have been

25  employed in a call center as a business sales representative, and

1    then, there's more specificity provided in Dell's small and

2    medium business unit.  And then, their timeframe is, also,

3    slightly different.  Starts from September '06, rather than the

4    April '05 date that the plaintiffs have.  And then, there's more

5    definition as far as who's excluded from the group, and that

6    would be those who worked outside the small and medium business

7    unit and who were not telephone-dedicated employees.  That's what

8    Dell has proposed in its notice.

9          And I think, fundamentally, we need to know, you know,

10   the group that is supposed to be getting these notices and who

11   are eligible to join the lawsuit.  This was an issue on which you

12   joined issue back on the collective action side of things, sort

13   of.  It wasn't directly on this point.  It was about whether

14   there was sufficient similarity between the plaintiffs to be in

15   one, single collective action on that point.  You know,

16   ultimately we've ruled that there is enough similarity among the

17   plaintiffs, but we still need to define the group.

18         So I need to hear, I guess, the plaintiffs' position

19   with regard to what Dell has suggested as to whether that is an

20   accurate description, what they proposed as to what -- how you

21   want to define this class and if not, why.  And so, that's what I

22   need to hear about.  So, Mr. Braziel.

23         MR. BRAZIEL:  Would you like it up at the podium?

24         THE COURT:  Yeah.  If you could come up to the podium.

25   And again, just to remind everybody, we're -- you know, our

1   record is a digital audio record, so you've got to be speaking

2   into a microphone to be on that record.

3           MR. BRAZIEL:  All right.  Well, your Honor, may it

4   please the Court.

5           We believe that the issue of the who is getting notice

6   was long settled in the collective action when we moved for

7   conditional certification.  We had been defining business sales

8   representatives all along the way.  Dell's overall position had

9   been, wait, that includes too many job categories.  And this

10  court heard all of those arguments where they -- and recognized

11  them in the report and recommendation where they said it's 27 job

12  titles, seven business units, cuts across all these different

13  kinds of business units.  And the Court determined that for

14  purposes of conditional certification, it was okay to have all

15  those folks in one group, over Dell's objections.

16          Dell then went to the magistrate -- or to the district

17  court and filed objections making these very same arguments and,

18  in fact, invoked, for the first time, trying to limit, at some

19  point, the group to whom notice would be sent to inside sales

20  representatives 1 and 1B.  So even though they came in arguing

21  that this group includes 27 different groups and cuts across

22  business units and they're not similar, when it suited their

23  purposes there, they said, that's who we think the business sales

24  representatives are.  But now that notice has to go out, they

25  want to limit it as much as they can.  And I think they're being

1    disingenuous with the Court in making that argument initially;

2    and I think these arguments were already settled in the initial

3    conditional certification proposals and discussions.  And they

4    made similar kinds of disingenuous statements and, I guess,

5    affirmative statements as to who's in the class in sworn

6    documents, presented both to this court and to the Court in

7    Oklahoma.

8           So let me sort of break that apart and explain what I

9    mean.  We've always taken the position that Dell's internal job

10   titles and their business units, the way they market or segment

11   their markets, those are Dell's lines.  Those are not our lines.

12   Our lines are that these are non-consumer sales representatives

13   who are selling --

14          THE COURT:  Let me stop you right there.

15          MR. BRAZIEL:  Sure.

16          THE COURT:  I understand that you've addressed this

17   previously, in a slightly different context but whether it's

18   appropriate to identify this as a collective action.  The tricky

19   part I'm having here is one of the issues is whether we should

20   have an independent, you know, or third-party administrator for

21   the mailing of the notices, assuming that we choose to do that.

22          MR. BRAZIEL:  Right.

23          THE COURT:  And order that, then Dell needs to -- we're

24   relying on Dell to identify the names and the addresses that the

25   notices are to go to.  And their position seems to be, well,

1  business sales representative's really not a term we use, and as

2  you say, the lines that they use are their lines and your lines

3  are different.  So we just need to have at least enough clarity

4  that Dell knows what it's supposed to identify in the way of

5  addresses and names, and the Court knows that, too.

6          MR. BRAZIEL:  Okay.

7          THE COURT:  So that's where I'm kind of --

8          MR. BRAZIEL:  Well, I think Dell's trying to redraw the

9  lines from what it drew initially.  I think it actually initially

10 drew the lines.  It set out in a nice little chart that's on page

11 10 of their response for the motion for notice, the 27 different

12 job titles --

13         THE COURT:  Right.

14         MR. BRAZIEL:  -- right, across all the different

15 segments.  It said, this is what we consider to be the business

16 sales representative group.  They've already said that.  In

17 addition, if your Honor -- if I may.

18         THE COURT:  Well, I don't know if I --

19         MR. BRAZIEL:  Well, let me go one step --

20         THE COURT:  I don't know if that -- if they would agree

21 with you as to that's what they were saying with that list

22 because as I read the brief there -- and I, actually, you know,

23 I've got that here in front of me.  They -- their argument from

24 that chart is but not all of these people would fit even your --

25 the plaintiffs' descriptions because they claim that not all of

1   these were -- that were being paid on a flexible work-week method

2   of payment, which I think would be -- you would agree that is

3   something that should -- all the plaintiffs in this action

4   should.

5           MR. BRAZIEL:  I think that's right.  But I don't think

6   they say that all the people in that group were not paid on a

7   fluctuating work-week basis.

8           THE COURT:  There's a footnote 14 where they say that

9   not all of the people in these -- in this list of 27 were paid

10  according to the fluctuating work-week method of compensation.

11  They argue that the, for example, account executives were

12  salaried, exempt who were not paid according to that work week.

13  Now, I don't know where an account executive is in these 27.

14          MR. BRAZIEL:  I was going to say, I read all 27.  An

15  account executive is not listed there.

16          THE COURT:  Right.  I --

17          MR. BRAZIEL:  Right?  They're all -- they fall into

18  four groups: ISRs, TSRs, there's an LOR, and there's a POS.

19  Those are the four broad families that they had previously

20  identified.  So account executive's not on there.

21          And certainly we're not talking about exempt people in

22  this case.  I think everybody knows that we don't want to include

23  exempt people in this case.  These are for the non-exempt --

24  salaried, non-exempt business sales reps that cut across all

25  these job descriptions and all these business segments.  I think

1    it is probably easier to say, let's ask Dell how they previously

2    defined it.  If you don't think they defined it here, they

3    certainly did when they responded to our interrogatories and when

4    they made affirmative representations to the Court.

5              If I may, your Honor.

6              THE COURT:  Uh-huh.

7              MR. BRAZIEL:  I flagged Interrogatory No. 2.  The

8    response to Interrogatory No. 2.  And in that response, it's in

9    response to our request they give us the names and addresses of

10   the business sales representatives, which we've defined as we

11   always defined it and as Dell has put in part of its notice where

12   it defined it as the telephone-dedicated individuals who are

13   selling the products at those different facilities.

14             Now, Dell, presumably with the same understanding that

15   they had when they responded to the motion for notice, does a

16   head count, and they come up with, roughly, 7,700 individuals.

17   So they've already gone through this process and said, this is

18   how many people we think are in the group.  There's no lack of

19   clarity on their side.  They want to carve out as much as they

20   can at this point.  They know who we meant, and whoever they

21   counted, that's who we want.  That's the functioning and

22   operational definition that we've had the entire time in this

23   case.

24             In addition to that -- and this will maybe inform the

25   Court a little bit more -- this is the declaration of Patty

1    Powers that was Exhibit either B or C -- and the interrogatories

2    were B or C to the motion for conditional certification.  She

3    does the same thing.  She does a head count and she calls them

4    business sales representatives, and this not even in response to

5    a interrogatory.  They go through and they do a head count, and

6    they say there's, roughly, 7,800 people in that group, and then,

7    there's 3,000 currently in that group.

8           Our contention is that whoever they put in that group

9    when they counted it -- and presumably it's the same group of

10   people they were complaining about having to include in their

11   response to the motion for notice -- those are folks that we've

12   all been operating on as the functional definition of this class,

13   so those are the folks that need to be included.  Now, I'm

14   assuming that they've included people that they now want to

15   exclude from the class.  I don't know.  I'm waiting to hear his

16   argument on that.

17          We honestly thought that the class -- the scope of the

18   class issues had already been litigated because the scope sort of

19   determines whether someone similarly situated -- if you're

20   looking at the outside bounds of all these groups, you have to

21   know what the outside bounds are to make that determination.  The

22   thing that binds all these folks together is not the -- that

23   they're taking inbound calls.  They could never take an inbound

24   call, and they could never work a single minute off the clock.

25   But if they were paid on the fluctuating work-week plan, then

1   they are in this class.  So anybody sold products or services to

2   businesses who were paid on the fluctuating work week, we claim

3   that plan is invalid, the way that they've structured it, and it

4   binds them all together.  They don't have to work a single hour

5   of off-the-clock time.  They don't have to ever get taken for a

6   ride on how their lunches are done in order to meet the first

7   part of this court's certification order.

8         Second part of the certification order gets into the

9   counting of time, and they argue that it's more likely that it's

10  the inbound callers and the transactional people and not the

11  relationship people.  The testimony that was adduced from Amy

12  Atsumi says that even the folks who are relationship

13  representatives who have assigned groups of people that they call

14  get calls from the outside.  You know, they just have a

15  designated list of people.  They're not waiting on somebody, some

16  individual -- business to call in.  So we think that this has

17  already been determined and litigated, and now, they're coming in

18  and they want to take that 7,800 or 10,000, however many it adds

19  up to, that they already know how to count, and they want to

20  narrow it down into some job categories, and the two that they

21  picked are 1 and 1B -- ISR 1 and ISR 1B, when I don't think that

22  that's who they were complaining about and who they thought was

23  included before.

24        This was the exact, same argument they made in their

25  objections to the report and recommendation.  They asked the

1 Judge to narrow this down, and he overruled them.  So I think it

2 previously has been determined that whoever those folks are that

3 they have already counted and know how to count, those are the

4 folks we want in this class.  So I suppose it's up to them to

5 tell us who those folks are.

6          I will say that the -- that the ISRs and the TCR -- or

7 TSRs, all sales representatives, are all paid, as far as I could

8 tell, on a fluctuating work-week basis.  The declaration of Amy

9 Atsumi indicates that all non-consumer sales representatives, all

10 the business sales reps, are paid on a fluctuating work-week

11 basis.  That was the testimony that we had the first time

12 through.  That's where we said bound all those job titles and

13 things together.  And I don't think anything's changed.  I think

14 they just want to focus on the inbound call and the off-the-clock

15 portion of this to say you should limit it.  But they're missing

16 sort of the whole other argument in this case that cuts across

17 all of that.

18          THE COURT:  So, a moment ago, you said that the people

19 that fit in this category, as far as the plaintiffs are

20 concerned, are people who sold the business' --

21          MR. BRAZIEL:  Yes.

22          THE COURT:  -- goods or services.

23          MR. BRAZIEL:  Yes.

24          THE COURT:  And who were paid on a fluctuating

25 work-week basis.

1           MR. BRAZIEL:  Yes.  That's the telephone -- I think

2    that's -- that's in concert with what we have in the definition

3    of the business sales representatives was the telephone-dedicated

4    folks.  We didn't limit it to fluctuating work week, you know,

5    people, but I think that that's -- since this is what that case

6    is about, that's always been what's been assumed.

7           If there's an inbound call person who is working off

8    the clock, my understanding from the testimony is that -- and

9    it's paid hourly, my understanding from the testimony of Amy

10   Atsumi was that those folks are on the consumer side.  Everybody

11   on the business side, paid on a fluctuating work week.  That's

12   why we've sort of equated those two things together.

13          I would note that the lead plaintiff in this case, Mr.

14   Gandhi, actually is listed.  I've got, if you need to see those,

15   his employee reviews, he's listed as an ISR 2.  That wouldn't

16   even fit in their class definition if you were going to limit it

17   the way they're trying to limit it.  All the ISRs, whether

18   they're relational or whether they're transactional, so maybe

19   they're inbound or they're inbound and outbound, all are on the

20   fluctuating work-week plan.  They would propose basically to cut

21   him out for a large part of his time in this case, and that's

22   never been the scope that we've intended.

23          So we think that Dell has been operating under a

24   definition.  They complained about the breadth of the definition.

25   That was overruled.  Now they're back to try and, honestly, your

1    Honor, relitigate that same issue.  I think it was already well

2    briefed before.  I think the evidence is certainly in the record

3    that suggests that it should be all those folks that they

4    previously identified as being in that class.

5           With respect to the language of the notice and this

6    sort of dovetails.  And I don't know, do you have the -- their

7    proposed notice in front of you, your Honor?

8           THE COURT:  I do.

9           MR. BRAZIEL:  Okay.  To sort of join the issue with the

10   very specific language, the -- it says that they've been employed

11   by Dell in a call center as a BSR in the small and medium

12   business unit.  And we never limited it to the small and medium

13   business unit.  This court noted that Dell made that argument

14   before, and this court said, no, we're going to go -- that we say

15   that they're all similarly situated.  At this early stage, that's

16   certainly true.  They're limiting it to the small and medium

17   business unit on their own.

18          They have a timeframe of September 1, 2006.  Ours

19   begins April 1, 2005.  Ours goes back three years from the date

20   that the case was filed.  We typically do this because as we get

21   into merits discovery, there may be an argument that the statute

22   of limitations should be tolled back to the beginning of the

23   case, depending on what you find.  And it's easier, quite

24   frankly, to include those folks in the beginning and cut them

25   out, once you know who's actually in the case.  You can look at

1   their dates of employment.  You can adjust their damage

2   calculations if there's no equitable tolling.  But it's harder,

3   if there should be equitable tolling, to go back and re-notice

4   those folks.  So we typically do it.  It's more of a pragmatic

5   than anything else.

6          THE COURT:  So that's the difference in the dates then.

7          MR. BRAZIEL:  That's the difference in the dates, your

8   Honor.

9          The second part on the can you join this lawsuit that's

10  really problematic and that misleads whoever's reading this says,

11  you have to have worked hours that you did not report.  Well,

12  that's not necessarily true.  If you're on the fluctuating

13  work-week plan and you reported all your hours, if this court

14  finds that that plan was wrong and invalid, that would be a limit

15  on the class.  That's why I think they're focused just on one

16  side of this class certification and not on both sides.

17         They say that they want to specifically exclude people

18  outside the small and medium business unit and people who are not

19  telephone-dedicated, and this is where that issue gets

20  bootstrapped in, I think, where they're trying to argue about who

21  is telephone-dedicated.  Well, in our opinion, your Honor,

22  they've already defined it, but we believe it's the people who

23  are working in the call centers making these sales by phone.

24  They didn't have the inbound calls.  They could be inbound and

25  outbound.  They're dedicated to answering the calls from their

1  clients, or making calls to their clients, in order to sell

2  Dell's products.  That's telephone-dedicated.

3           They want to try to narrow that down to just these

4  inbound folks, and they've never tried to limit that in any way

5  before.  They didn't object to the interrogatory when they did

6  the head count.  And certainly the declaration of Ms. Powers

7  indicates that they weren't limiting folks down.  So whoever

8  they've included before is who they should include now.  We've

9  always been under the same set of assumptions on that.  And I

10 think this court's already looked at their arguments about the

11 alleged breadth of the definition and has already said, I think

12 they're all similarly situated, at least at the certification

13 stage.

14          THE COURT:  One other difference that I noted is -- and

15 this may have just been an oversight, but the list of the call

16 centers, Dell's list includes one that you all do not, which is

17 Roseburg, Oregon.  At least that's the notes I've got here.  Let

18 me --

19          MR. BRAZIEL:  Well, let's see, we have Oklahoma City,

20 they have Oklahoma City.  They put Roseburg, Oregon in theirs.

21 If there are business representatives working in -- honestly,

22 your Honor, when you look at the definition that we've been using

23 of the business sales representative, if you look on the very

24 first page of their notice -- first page, the second sentence

25 that starts with BSRs include.

```
 1              THE COURT:  Yeah.

 2              MR. BRAZIEL:  That's the definition verbatim out of our

 3    discovery response -- or our discovery request that they

 4    answered, and they've already head counted, okay?  It says

 5    including but not limited to.

 6              THE COURT:  Right.

 7              MR. BRAZIEL:  If there are other call centers where

 8    these business sales reps were employed, we're not aware of, then

 9    certainly includes those folks.  Perhaps this was an oversight.

10    I don't know what their --

11              THE COURT:  Yeah.  My guess is it's an oversight, one

12    way or the other.

13              MR. BRAZIEL:  Right.

14              THE COURT:  But we'll let Dell address that then.

15              MR. BRAZIEL:  I got you.

16              The reason that we don't go into the definition of, you

17    know, you're only -- you're excluded if you're

18    telephone-dedicated is that the definition of the BSRs sort of

19    presupposes that you're working in the call center, and you're

20    doing these sales calls by phone, and so, there's no reason to

21    restate what's already in this.  If Dell's going to give a list

22    to a third-party administrator, they will have already determined

23    who those folks are.  No reason to confuse them with more of

24    that, or for them to be trying to figure out who's in their

25    business unit or not.
```

1          We've never limited it to any particular business unit.

2    Dell would like to limit it to a particular business unit, and

3    you know, that's certainly, I think, the argument that they tried

4    to make before.  But I think this court said, no, looking at all

5    those groups, they're all bound together and, if by nothing else,

6    in the fluctuating work-week plan, and they should all be

7    included, at least for the certification purposes, under the

8    lenient standard.

9          So I think this is already -- I actually thought this

10   had already been litigated.  I was hoping we would come and just

11   talk about the language.  But from looking at Dell's proposed

12   slides, it looks like we're relitigating the scope of this class.

13   And these same objections were raised when they appealed your

14   order to magistrate -- or to the district judge, Judge Nowlin,

15   and he said no to them.  So I think it's already been decided.

16         I think functionally they've counted.  They've done a

17   head count.  They may not like the head count.  They may want to

18   run away from the head count.  They argued for, you know, breadth

19   when it was in their favor.  Now they're arguing for limits when

20   it's in their favor, and I think that's just as disingenuous.

21   They can't swear, you know, in a response to a dec --

22   interrogatory request that they don't object to the definitions

23   of what the head count is and then, come in and say, well, we

24   don't like the head count.  They did the head count, so I think

25   they should be forced to deal with what they have done.

```
 1              THE COURT:  Okay.

 2              MR. BRAZIEL:  Is there anything else about the

 3   language, your Honor?

 4              THE COURT:  The only other issue on which there's a

 5   difference, and there's not really any discussion about it, is to

 6   whom the plaintiff -- prospective plaintiff is to respond.  In

 7   y'all's proposal, it would come to your firm.

 8              MR. BRAZIEL:  That's right.

 9              THE COURT:  And in the -- in Dell's, it would go back

10   to the third-party administrator.

11              MR. BRAZIEL:  That's right.

12              THE COURT:  If you've got anything to say on that

13   point.  There's not anything in the two filings that were made

14   that where you all address --

15              MR. BRAZIEL:  We'd like them to come back to our firm

16   for a couple of reasons.  One of them -- well, George Hanson

17   likes it to come back to his firm.  He's the lead attorney.

18              THE COURT:  Yeah.

19              MR. BRAZIEL:  One is that minimizes any kinds of

20   errors.  You don't have a third-party administrator that loses

21   something.  You're more responsible and the staff there is

22   familiar with dealing with these.  Also, because as they come in,

23   they need to get filed.  Some third-party administrator has --

24   and there's significant lag time sometimes between those folks

25   getting a rush coming in, they have to process them, give them to
```

1   us, there are days that lag on that.  So we like to process them

2   just as a matter of function internally.

3          You know, there are times when my own firm has done

4   them outside, but my firm is smaller than George's.  So you

5   understand the pragmatic argument there.

6          THE COURT:  Okay.  Mr. Hahn.

7          MR. HAHN:  Your Honor.

8          As counsel mentioned, I put a little handout, if you

9   would allow me to pass this up.  The -- there are four slides

10  here.  I tried to keep them as simple as possible.  Number one is

11  who they say they are in their pleadings to us, Judge.  Number

12  two is who they are, based on who has actually opted in through

13  the ones who opted in as of yesterday.  Number three slide is

14  trying to define a class based on numbers one and two.  And then,

15  number four is who should get the notice that's going to catch

16  the right group of people.

17         As you pointed out, your Honor, if you order us to

18  provide notices or names and addresses of business sales

19  representatives, I go to my HR function, they say, what does that

20  mean?  I've got to know something more specific because Dell

21  doesn't use the term "business sales representative."  And on the

22  slide number one, you can see that from the complaint that they

23  initially decided who these folks were because they were call

24  center sales reps required to take inbound phone calls on the

25  scheduled shifts.

1        Now, I heard, for the first time today, that you can be
2   part of the class without ever having worked an off-the-clock
3   hour.  The first three pages of the Austin case are all about
4   off-the-clock, and the Oklahoma case was only about
5   off-the-clock.  And certainly the vast majority of the discussion
6   on the collective action certification issue was the fact that
7   these were folks who, accordingly, had allegedly had some policy
8   that kept them from reporting their time.

9        All of their definitions have tracked -- other than the
10   consumer or the Oklahoma case -- and I'll get to that in a second
11   -- that in their motion when they were trying to tell you that
12   they were all the same, they said they were all inside sales
13   reps.  They didn't have any of these other job titles.  They said
14   in their discovery that they were telephone-dedicated employees
15   in a call center.  And in their lawsuit, of course, they're
16   talking about call center reps taking inbound calls on a
17   scheduled shift.

18        Well, that's how they defined it when they were seeking
19   certification.  And in their pleadings, if you turn to page 2, 64
20   plaintiffs have filed consents as of yesterday.  Four of them, we
21   can't find any record of ever having any sales job at Dell.  Of
22   the 60 that were Dell employees, all of them, 100 percent, 60 out
23   of 60, were employed in Dell's small and medium business unit.
24   They weren't in the government sales or the nonprofit groups or
25   in the large enterprise.  One-hundred percent, 60 out of 60,

1    worked on an inbound telephone queue, and 100 percent worked on a

2    shift scheduled by call center operations.  The vast majority, 57

3    out of 60, were ISR 1Bs during the times that they were meeting

4    these other terms.  One of them, it turns out, never got past ISR

5    1B, which is a level that Dell doesn't even use anymore, that was

6    originally the entry level and doesn't exist anymore.  Two of

7    them started as an ISR 1, meaning that they didn't start as an

8    ISR 1B, which was at the time the entry level.  Somehow they came

9    in already paid one notch above that but still worked in a sales

10   queue in small and medium business.

11          Based on that -- what they claim they are and who they,

12   in fact are, we said, well, in trying to figure out who gets the

13   notice, it should be inside sales reps; that's the Dell job title

14   who worked on inbound telephone rounding queues on shifts

15   scheduled by call center operations in Dell's small and medium

16   business unit.  That would be the class that they're really

17   claiming and, of course, in their pleadings.  And then, the slide

18   number four is who should get the notice, it would be SMBs that

19   have an ISR 1 with a designation.  And we recognized we would

20   have to send the notice out to all ISR 1s because of those two

21   guys who started as an ISR 1.

22          And the footnote here on slide 4 says, we know that

23   that's going to catch some people who never worked on the

24   telephone queue, who never had a shift work, and so, really don't

25   belong in their defined class as they did it when they were

1    seeking class certification and when they were seeking discovery

2    as telephone-dedicated, on a sales queue, on a shift worker.

3            That would be the way to -- defining the notice this

4    way is still going to catch people who don't really meet the

5    terms of who they described themselves as and who the actual

6    plaintiffs who have opted in really are.  But, like I said, we

7    can remove them when we find out, down the road, that they're not

8    in scope.  Any other definition, including the ones that they

9    have proposed now, unlike when they were trying to seek class

10   certification, is going catch thousands of people who don't meet

11   the characteristics of what they allegedly said ties them all

12   together.

13           Now, fluctuating work week, all inside reps were paid

14   on a fluctuating work week, so that is a tie that binds.  But

15   you've got to go through four pages of one complaint and through

16   the entire complaint, you'll never find the other issue, which

17   now they're wanting to say dominates the case is this fluctuating

18   work-week thing.  I mean one is an off-the-clock case solely and

19   the other one is both.  Now, you may say, you know, they may be

20   trying to say, well, now that we've got class certification, we

21   want to get the biggest group possible in the door and we'll

22   worry about those distinctions, but you're obviously going to

23   just tee up a nasty decertification issue when you've got people

24   who have no similarities to what the central claims are in the

25   lawsuit.

1          One way or another, if the order is to provide a list

2    of addresses of business sales representatives, there's going to

3    be some guidance farther needed to figure out which ones of those

4    folks there.  You know, they're saying that it should be anybody

5    -- let me rephrase that.  In the Oklahoma case, they defined it

6    as non-consumer sales, but that inherently captures a lot of

7    non-business sales.  We have a huge public group that sells to

8    state and local governments, K-12 education things, federal

9    government, those people aren't even a business sales

10   representative in the broadest view of that.  But when they

11   defined business sales representatives in that Oklahoma case as

12   anybody non-consumer, we can count all those.  And they were

13   7,000-plus people, counting all of the government sales, et

14   cetera, because they defined it in those days as non-consumer.

15   But when they filed their motion for certification, they said,

16   no, we're only talking about the ISRs, only talking about

17   telephone-dedicated working in the call centers on these shifts,

18   and have a much more smaller but much more homogenous class.

19          Now, you know, of course, Dell's position is that even

20   -- you're not going to find two subject to the same rules about

21   timekeeping, et cetera and that, ultimately, no class is going to

22   work.  But certainly when they reach and try and say, I want to

23   get all those public sales employees and federal and state and

24   local governments that have nothing like the 60 folks who are

25   actually opted in, they're biting off way more than I think this

1  court was ever envisioning and certainly that Dell ever

2  understood.

3         THE COURT:  All right.  Let me just -- stay put, if you

4  would, for just a second.

5         MR. HAHN:  Sure.

6         THE COURT:  But let me just ask Mr. Braziel:  What is

7  the position with regard to the educational, government, federal

8  and state local government positions, people who sold in those

9  units?

10         MR. BRAZIEL:  Well, your Honor, you know, clearly we

11  define them as business sales representatives, contemplating

12  business, and we did use that word.  Amy Atsumi, in her

13  deposition, right, when she's talking about business sales

14  representatives, at page 17, says -- this is the question.

15  However, the business sales representative, by the way, what's

16  the best way to refer to business sales representatives?  Do you

17  use any acronym?  Answer, no.  You can use business sales

18  representatives if my understanding is by your use non-consumer

19  sales representatives.  She equates the two.

20         You know, strictly speaking, your Honor, it may be

21  that, you know, we chose business, and so, the government folks

22  are out.  I think that if Dell included them in their count that

23  they did in response to our interrogatory in this case, where

24  business sales representative was defined in the interrogatory, I

25  think that they have to live with that particular distinction.

```
 1  So I don't know what they included in their head count, and

 2  they've already done this kind of a head count.  But --

 3          THE COURT:  I guess what I was asking is, are the

 4  allegations of this claim that those same employees, those who

 5  were selling to state and local governments, federal government,

 6  educational, K through 12 educational buyers, also affected in

 7  the same way as the plaintiffs who have been, you know, already

 8  joining in the case?

 9          MR. BRAZIEL:  Yes.  To the extent that those folks are

10  ISRs that do sales representative work, they're operating under

11  the same pay plan.  They're operating under the same timekeeping

12  requirements, the Kronos system that automatically deducts the

13  one hour.  And they're operating under the same kinds of

14  off-the-clock-type issues with respect to those -- in that unit.

15          And, you know, the natural effect, if we're going to

16  sort of play with the line drawing, if we cut out the government,

17  you know, we've had intake from, though I don't think we've had

18  anybody file yet an opt-in who's from the public group.  That

19  just foments another case.  You know, it just -- it ends up being

20  another one.  To the extent that those folks are all doing inside

21  sales to non-consumers -- we call them business because, you

22  know, we call them business -- and they are on these fluctuating

23  work-week plans and operate under the same timekeeping systems,

24  and such, yes, they absolutely should be in this case.  And if

25  Dell counted them, they certainly should be.
```

```
 1              THE COURT:  All right.  Thank you.

 2              MR. HAHN:  Your Honor, if they define a term and say,

 3   count the people under this defined term and we count them, we

 4   objected.  There's no sense in here at any point where we said,

 5   we think that that's an appropriate class.  If they said, count

 6   the people who aren't in consumer and we did it, that doesn't

 7   mean that we were conceding that that meets any definition.

 8              The folks in our public and in our large enterprise

 9   groups have completely different pay plans.  They don't have the

10   same kind of -- they're completely different jobs.  They're

11   supporting outside sales reps.  You know, large enterprise

12   probably has 30 or 40 inside sales reps onsite at Boeing and a

13   bunch more at -- well, I guess they wouldn't count because

14   they're not in the call centers they're talking about.

15              But you see that one term is every salesperson who's

16   not in consumer.  And then, you look at their more granular

17   definitions in their interrogatories, et cetera, and we see what

18   we're really talking about is the guy's on a queue, on the same

19   pay plan, with the same off-the-clock issues, who are on a shift

20   work.  It's just apples and oranges.  And to say that, well, one

21   time, we said, tell us -- count all the fruit and we counted

22   apples and oranges doesn't mean that they're not two different

23   fruit.

24              THE COURT:  All right.

25              MR. HAHN:  Oh, your Honor, one issue on the date, real
```

1    quick --

2              THE COURT:  Yes.

3              MR. HAHN:  -- is, you know, limitations runs from the

4    time they opt in, so we tried to anticipate about when the date

5    would run.  In any event, it should be a three-year lookback from

6    the date of your order because anybody beyond that can't by

7    definition be a member.  So it's just fomenting notice and people

8    opting in who only are going to be subject to dismissal for

9    limitations grounds, anyway.

10             THE COURT:  What do you have to say, though, about the

11   equitable tolling arguments that might exist?  And is it better

12   to include and then, throw them out than to have to send out

13   another notice?

14             MR. HAHN:  I don't see what the basis could be for

15   equitable tolling.  It would seem to me that those folks could

16   have -- would have been able to come in, anyway.  It's like

17   saying, let me go back, you know, 20 years, 30 years, and see if

18   somebody can make some case for somehow they were misled by Dell

19   in a way that would rise to equitable tolling.  I haven't seen an

20   issue where anybody has ever successfully raised that in one of

21   these situations because there's nothing to prevent them.  I mean

22   64 have opted in to date.  There's nothing that anybody's doing

23   that would give rise to an equitable tolling argument that I

24   could think of.

25             THE COURT:  Okay.  Thank you.

 1          MR. HAHN:  Anything further, your Honor?

 2          THE COURT:  Not at the moment, but I'm going to reserve

 3   the right to ask you some questions before we leave here.

 4          MR. HAHN:  May I be seated?

 5          THE COURT:  Please.

 6          MR. BRAZIEL:  To pick up on the last point first, your

 7   Honor, there are cases where there's been equitable tolling.  We

 8   haven't been allowed to do any merits discovery, so we don't know

 9   yet whether there's an issue.

10          THE COURT:  Well, just give me a scenario as to what

11   might --

12          MR. BRAZIEL:  If Dell affirmatively misled everybody to

13   saying that their plan complied with the Fair Labor Standards

14   Act, then they had a memo in their file that said that there's a

15   risk that it doesn't or that it, in fact, doesn't comply with the

16   Fair Labor Standards Act, then they're giving people -- they're

17   misleading them about the compliance.  And when you mislead

18   somebody about their rights, that gives rise to equitable

19   tolling.  We haven't been allowed to do any discovery on that.

20          I'm just saying it's a lot easier to cut those folks

21   off from the date of filing than it is to try to go do a

22   re-notice if we have an issue later.  So we just don't have the

23   facts.

24          THE COURT:  Do you have any disagreement with Mr. Hahn

25   about what the statute would be but for equitable tolling?

1          MR. BRAZIEL:  Three years back from the date of your

2     order, your Honor, but for equitable tolling, no.  I think that's

3     right.

4          THE COURT:  You're all in agreement on that point.

5          SPEAKER:  Your Honor, the three years is if we do the

6     misleading and it gets willful.  That's two years, so they're

7     going to have to come up with some of this evidence that doesn't

8     exist to get the three before we even talk about tolling.

9          MR. BRAZIEL:  Sorry, your Honor.  I was -- we went to

10    maximum length of the statute, which you typically do, because

11    we've made allegation of willfulness.  So go ahead and you notify

12    those folks on willfulness or who would be covered by that third

13    year.  And if ultimately the Court says, I don't find that this

14    is willful, then those folks, if they're only in that third year,

15    they go away and they're outside the statute.  For anybody who's

16    got time in that period, their time gets cut off at the two-year

17    mark if we're not able to prove willfulness.

18         THE COURT:  So the date in Dell's notice is September

19    1st, '06?

20         MR. BRAZIEL:  Right.  That's --

21         THE COURT:  Yeah.  September 1st, 2006 --

22         MR. BRAZIEL:  Right.

23         THE COURT:  -- is a three-year period or two-year

24    period?

25         SPEAKER:  Well, your Honor, based on -- he's right

1    because they've pled willful.  We've sent the notice to three and

2    chop out the two that -- yes, your Honor.

3         THE COURT:  That's what I understood.  I just wanted to

4    make sure I wasn't making a mistake.

5         All right.  And what you want to add in is an

6    additional time period that would go back to the date of filing.

7         MR. BRAZIEL:  That's right.

8         THE COURT:  Okay.

9         MR. BRAZIEL:  That's the way we've done it.

10        Let me sort of address the overall theme of what Dell

11   has said.  Dell -- I want to be very clear.  I'm not saying that

12   this -- that this case has changed in character at all.  It has

13   not.  And in fact, I don't know if your Honor has in front of him

14   the actual complaint.

15        THE COURT:  I can pull it up right here.

16        MR. BRAZIEL:  Well, I've got a copy.

17        THE COURT:  All right.

18        MR. BRAZIEL:  Because I anticipated this might be an

19   issue.

20        We described in this complaint the off-the-clock work

21   that occurs and the timekeeping system that we believe deprives

22   employers -- or employees of time.  We described that across the

23   board, all of these sales representatives are under those same

24   systems, okay?  So that is one part of what we moved for

25   certification on.  You granted that.  That was ground number two

1    in your R & R.

2             Ground number one was about the fluctuating work week,

3    if they misclassify and misapply the fluctuating work-week plan.

4    And it's not a shock to him.  I think his exact words were, it's

5    nowhere in the complaint.  It is in the complaint.  It's at

6    paragraph 18.  Dell classifies its salaried, nonexempt people and

7    purports to calculate them under the FWW.  Paragraph 19 talks

8    about it.  There are two independent grounds that we move for

9    certification on, and this court found that both of them apply.

10   This is not new to them.  They just want to ignore the one that

11   cuts across all the ISRs, and they just want to focus on only

12   these timekeeping issues and say that, well, among the

13   timekeeping issues, we believe that there would be differences

14   among those folks.

15            The evidence that we have produced already and this

16   court's initial ruling was that even on the timekeeping issues,

17   all the people who were business sales representatives, who were

18   all under the same timekeeping systems, had lunch deductions, and

19   weren't allowed to record all of their work activity, that on

20   initial certification there was enough to show that they were

21   similarly situated.

22            Now, he's right.  If the evidence ultimately turns out

23   that that's not true, which this -- the evidence thus far has not

24   shown, then they would have grounds for decertification.  I'm

25   sure they would certainly move on those grounds.  But at this

1   point, that's not been the state of the evidence, nor the state

2   of your order.  So I don't want to make you think that we are

3   changing the scope of this case.  I was trying to make it really

4   simple about the class definition and the thing that bound

5   everybody together, so I focused on that.

6          The ISR definition, I don't think that their -- that

7   they addressed the issue with Mr. Gandhi.  He's an ISR 2.  He

8   would be cut out of the definition they're proposing.  The Amy

9   Atsumi testifies that she even believes that ISRs 1 through 4 are

10  all business sales representatives, so she's testified about

11  that, even up to level 4.  But more importantly, and this is, I

12  guess, a misstatement or maybe an oversight by Dell.  They say

13  that there's no one in this class who was something other than an

14  ISR.  That's exactly the opposite of what they said in their

15  response to the motion for notice.

16         If you will allow me just a second.  At page 11, they

17  say, some plaintiffs held TSR positions during their employment

18  with Dell, including Plaintiffs Sneed, Stewart and Webb.  Yeah,

19  there are other job categories other than ISR group covered.

20  That TSR position, if you look at their chart, they're mainly all

21  TSRs and ISRs.  There are folks in there who were TSRs, and

22  they're included in the class definition.  The one thing that he

23  has not yet answered and that Dell has not yet responded to --

24  and I don't think that this is an apples and oranges kind of

25  issue.  We have always defined business sales representative.

1   They answered that definition.  Then they complained about the

2   group of people that would be included in that definition, and

3   the Court overruled their objections.

4           They've already head-counted these folks for us in this

5   case, not the Oklahoma case but in this case, in response to the

6   interrogatory.  He hasn't told you who's in that group.  If they

7   counted ISRs 1 through 4, TSRs, and folks who are relational,

8   transactional, or any other group, they have already operated

9   under our definition, and that's the class that we've always been

10  proceeding forward on.

11          So I think he needs to tell you who's in their head

12  count, and he hasn't done that, and that's a real easy way to say

13  what did Dell think this case was about.  They've already sworn

14  to what they think the case was about, so I think Court needs to

15  know that to know where the bounds of this action are.

16          THE COURT:  All right.  I do actually have some other

17  questions.  Why don't you respond to that and then --

18          MR. HAHN:  Sure.

19          THE COURT:  I wanted to ask about the call center in

20  Oregon.

21          MR. HAHN:  Okay.

22          Your Honor, real briefly, you know, the complaint I

23  said that had no mention of fluctuating work week was the

24  Oklahoma version.  It is -- after you get through the first

25  several pages of allegations, they do mention fluctuating work

1    week in the one that was filed in Austin.

2         THE COURT:  Yeah.  Looking at the actual allegation of

3    a cause of action, what they have under the heading of Count 1,

4    it does appear in paragraph 37.

5         MR. HAHN:  In the Oklahoma one, your Honor?

6         THE COURT:  I'm looking in the Austin one.

7         MR. HAHN:  Oh, okay.

8         THE COURT:  Paragraph 37, they list what they contend

9    to be violations and they do specifically talk about the

10   fluctuating work week.

11        MR. HAHN:  I didn't mean to suggest that it wasn't in

12   the Austin case.  I just said --

13        THE COURT:  But not in the Oklahoma case.

14        MR. HAHN:  But not in the Oklahoma case.  And it is one

15   of the allegations.  You know, Mr. Gandhi, they said was an ISR

16   2, but there was a time that he was an ISR 1, quote, required to

17   be taking calls at the start of his shift.  There was a time that

18   Mr. Gandhi fit within what the lawsuit's talking about, what the

19   discovery's talking about, et cetera.

20        You know, the bottom line is now that we're trying to

21   say, you know, we were talking about those guys who are like the

22   64 who have opted in, but now we should send notice out to guys

23   who are selling to, you know, large customers and different

24   locations, et cetera.  I'm just trying to envision if somehow

25   they would stand decertification, how we try this.

1          We're going to have six weeks of voir dire hearings on

2     whether I can get the guy on the side of Boeing to be a

3     representative witness, and they're going to say, no, no, no, no.

4     Because he's so completely different, Judge, he's not like any of

5     the original 64 because he didn't have a scheduled shift.  He

6     didn't even work in a system that he had access to Dell's log-in

7     stuff.  He didn't have pre-shift meetings.  And then I'll say,

8     well, how about this guy, your Honor?  And I'll just keep

9     bringing in all these different folks who have nothing like -- or

10    no resemblance of the 64.

11          I mean the starting thing should be, you know, who do

12    they think they are.  Look at what they said and who they really

13    are, and that's what the real class is, Judge.  And when we try

14    and figure out who those people are and define them, that's the

15    fourth slide in my deck.  That's the best way to get folks that

16    have some chance of surviving decertification; otherwise, it's

17    just a waste of a ton of resources to do all the discovery, all

18    the production of documents for all these people who have no

19    chance of being part of the same cohesive group.

20          THE COURT:  All right.  Thanks.  Oregon.

21          MR. HAHN:  Oregon doesn't exist anymore.  Never had

22    anything other than consumer.

23          I notice, also, your Honor, we put McGregor in there.

24    There's nobody in McGregor anymore, and it never had anything

25    other than consumer.

1           THE COURT:  Any disagreement about that?

2           MR. BRAZIEL:  Your Honor, I honestly don't know.  I

3    know McGregor's closed down.  But I don't know that there's been

4    testimony yet as to who was working at McGregor.  But you know,

5    they were all consumer at McGregor.  We certainly do not in our

6    group --

7           MR. HAHN:  And if they were business folks there, your

8    Honor, then McGregor would be appropriate.  I -- it is my

9    understanding it's all consumer --

10          THE COURT:  McGregor is in the plaintiffs' list and

11   your list, but the Roseburg one was not.

12          MR. HAHN:  Right.  Roseburg is definitely only

13   consumer.  It's my understanding that McGregor was, also, only

14   consumer, but I'd need to verify.

15          THE COURT:  Okay.  All right.  Thank you.  One other

16   question I've got ultimately to Mr. Brazil.

17          If we send out a notice with a list that you've got

18   that the identification that you fit this class if -- let me get

19   it in front of me so I say it correctly.  You've been employed as

20   a BSR any time from whatever date we pick to the present, and you

21   worked at one of these call centers.

22          MR. BRAZIEL:  Right.

23          THE COURT:  Is the employee who gets that going to know

24   whether they're a business sales representative?  If that's not a

25   phrase that Dell uses, how are they going to respond to that?

1    That's my concern here, I guess, ultimately how I -- why I asked

2    for this hearing is, you know, when the person who gets this in

3    the mail sees this, how are they, without talking to anybody

4    else, going to know whether they even might fit the class?  I

5    know the notice says they can call for questions and that kind of

6    thing.

7               MR. BRAZIEL:  I think it's sort of along these lines,

8    your Honor.  They're receiving the notice because they are a BSR.

9    They've been identified as a business sales representative as

10   someone who was as that term was defined, telephone-dedicated,

11   primary job duties of selling, and in these particular call

12   centers.  Because they're receiving that notice, they are by

13   definition BSRs.

14              Now, one thing that they did was they put that

15   definition in the very front part of their notice.  I'm fine with

16   including that definition if that's an issue.  That's right out

17   of our discovery instructions as far as what that group is.  I

18   think that because they're receiving it, you know, by and large,

19   they're BSRs.  I don't know how Dell classifies.  And he did

20   represent that there were people that may get this notice because

21   they may have been shoved into a job category and that we could

22   weed those folks out later.  That definition, that's fine to add

23   that to our notice to clarify what that is, if that's an issue

24   for the Court, as far as the BSRs go.

25              Does that answer your --

1          THE COURT:  Yes, it does.  Thank you.

2          MR. BRAZIEL:  The -- Mr. Gandhi worked -- initially he

3    was hired as a sales representative 1D, like dog, not B, like

4    boy, like they're advocating that he be included.  Maybe it got

5    converted or rolled over at some point, but, you know, he was a

6    sales rep, too.

7          You know, their whole argument is basically a rehashing

8    of the motion for notice about the folks who did or didn't have

9    pre-shift and post-shift work or who didn't have a high call

10   volume.  They're trying to draw real distinctions between inbound

11   and outbound that this court has already looked at those issues

12   and said, you're all operating under the same timekeeping

13   systems.  There's still that automatic docking of the hour for

14   lunch.  I mean they're on the same pay provisions.  And so,

15   they're trying to really whittle down the size of this class.

16   And again, this is the, I guess, the third time.  He hasn't told

17   us who he counted.  In the interrogatory responses, we defined it

18   and they responded; so there's an operational definition who this

19   group is.

20         I guess I would just want to hear him say, is it ISRs,

21   TSRs, LORs, PORs?  Is it the group that's in that chart?  Who's

22   in that group?  Because that's going to define because they've

23   already counted these folks that we've been defining all along.

24         THE COURT:  I think I understood Mr. Hahn to say, yeah,

25   we counted based upon what the parameters that we were given in

1    the question.

2                MR. BRAZIEL:  Right.

3                THE COURT:  Who was a non-consumer person who worked in

4    any of these call centers, and whether they agree or not that

5    that's an appropriate definition, that's what they used to count.

6                MR. BRAZIEL:  Well, let me --

7                THE COURT:  That's what I understood Mr. Hahn to say.

8                MR. BRAZIEL:  Let me draw one distinction.

9                We defined business sales reps in the interrogatory

10   response, not as non-consumer but as business sales reps.  But

11   yes, they counted based on what they were asked to count.

12   They've never objected.  And this is the group of people that

13   when they put it up to the Court and said, look at how many

14   people are in this group and how different they all are, this is

15   the group that they used, right?

16               So they counted and they've said, look, there's 27 jobs

17   that cuts across all these segments.  That's way too broad.  They

18   objected to that here, and they objected above to Judge Nowlin,

19   and he said no to that.  So yes, it's our definition.  We're the

20   ones seeking certification, so we've defined it.  They've

21   responded to what we've asked for.  It's self-defined at this

22   point.  And they're all bound together as inextricably as they

23   can be because they're all on the same pay plans.

24               THE COURT:  All right.  Thank you.

25               MR. BRAZIEL:  Sure.

1          THE COURT:  Mr. Hahn.

2          MR. HAHN:  Your Honor, just whatever definition we've

3  used for the notice, or whatever, if you could include that in

4  the order so I have the maximum clarity to try and figure out who

5  we're trying to identify.

6          THE COURT:  That's certainly our goal.

7          MR. HAHN:  Thank you, your Honor.

8          THE COURT:  Is to not to have any disagreement, once we

9  get finished with this, that you all know what you're supposed to

10  be doing.

11          Is there any disagreement to I think Dell -- I think

12  you all, Mr. Hahn, have said something in your filing about the

13  third-party administrator.  If we order that it be a third-party

14  administrator, any objection to the plaintiffs, just since

15  they're going to be paying them, choosing who that third-party

16  administrator should be or --

17          MR. HAHN:  I believe Mr. Londa has had some discussions

18  with Mr. Hanson.

19          MR. LONDA:  I think the agreement that we had, we would

20  agree on it.  At least we think that's -- what I would prefer is

21  the Court order that counsel try to agree on it.  And if we need

22  to come to you, we will.

23          THE COURT:  Why don't I address it this way.  I think

24  we're probably going to require a third-party administrator just

25  so -- I mean it may be obvious already from my questions about

1   this.  But that if we do so, we would instruct, then, the

2   plaintiffs' counsel to make a proposal to you all for your

3   review, and in the event that there's not an agreement, then that

4   would be submitted to the Court for review.  But if there is an

5   agreement, just --

6          MR. LONDA:  That's fine with us.

7          THE COURT:  The wheels move forward.

8          MR. LONDA:  Your Honor, to answer one other question

9   you asked about the third-party administrator.  We do not object

10  to the consents to join the case going to plaintiffs' counsel,

11  going to Mr. Hanson.

12         THE COURT:  Okay.

13         MR. LONDA:  What we do want is for the third-party

14  administrator to get the list with everybody's address and names

15  on it.  They do the mailing.  Then anybody who gets the mailing

16  that wants to opt in can send that opt-in notice to Mr. Hanson.

17  But they won't get the list, only the third-party administrator

18  will at the outset, to protect the privacy of everybody.

19         THE COURT:  Understood.  Okay.  Thank you.

20         All right.  I appreciate this has helped clarify quite

21  a bit.  I don't always -- hearings don't always have that effect,

22  but this has helped me.  So I appreciate it.  And y'all may be

23  excused.

24         MR. HAHN:  Thank you, your Honor.

25         MR. BRAZIEL:  Thank you, your Honor.

```
 1              (Proceedings conclude at 11:24 a.m.)

 2

 3

 4

 5

 6                    REPORTER'S CERTIFICATE

 7

 8     I, LILY I. REZNIK, DO HEREBY CERTIFY THAT THE FOREGOING WAS

 9  TRANSCRIBED FROM AN ELECTRONIC RECORDING MADE AT THE TIME OF THE

10  AFORESAID PROCEEDINGS AND IS A CORRECT TRANSCRIPT, TO THE BEST OF

11  MY ABILITY, MADE FROM THE PROCEEDINGS IN THE ABOVE-ENTITLED

12  MATTER, AND THAT THE TRANSCRIPT FEES AND FORMAT COMPLY WITH THOSE

13  PRESCRIBED BY THE COURT AND JUDICIAL CONFERENCE OF THE UNITED

14  STATES.

15

16  /s/Lily I. Reznik                November 9th, 2009

17  LILY I. REZNIK                   DATE

18

19

20

21

22

23

24

25
```