# EXHIBIT 2

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION

| | |
|---|---|
| RACHEL SCHIFF and STANLEY WEBSTER, On Behalf of Themselves and All Others Similarly Situated,<br>    Plaintiffs,<br><br>v.<br><br>RACETRAC PETROLEUM, INC.,<br>    Defendant. | § § § § § § § § § § §   CIVIL ACTION NO. 2-03-CV-402 (TJW) |

## ORDER

Before the Court are the Plaintiffs' Motion and Supplement to Plaintiffs' Motion for Protective Order Limiting Discovery as to Conditionally Certified Class and for Entry of Discovery Control Plan (Doc. Nos. 76 & 104). After considering the submissions of counsel, the Court ORDERS that the plaintiffs' motions be GRANTED to the extent set forth in this order.

On March 23, 2005, the Court held a hearing on the Plaintiff's Motion for Protective Order Limiting Discovery as to Conditionally Certified Class and for Entry of Discovery Control Plan. After hearing the arguments of counsel, the Court ordered the parties to submit their discovery proposals by April 4, 2005. The Court specifically requested that the parties submit additional evidence regarding the selection of a sample of plaintiffs. The parties have submitted their respective proposals, their responses and replies to the opposing party's proposal, and supporting expert reports. The issue is now ripe for decision.

In their supplemental motion, the plaintiffs propose that the Court issue an interim order limiting discovery to a random sample of 35 class members. The plaintiffs rely on a report prepared by their expert, Dr. Lynne Stokes. The type of sampling proposed by the plaintiffs is known as "simple random sampling." According to Dr. Stokes, a "simple random sample" does not require

any information about the 1,000 employees who have opted-in this lawsuit. Based on preliminary information about unpaid overtime hours worked by the class members, Dr. Stokes predicts that a sample size of 36 will render a margin of error of 18 minutes or .3 hours per week. The plaintiffs assert that the amount of discovery needed may be revisited if the margin of error is significantly higher than the predicted margin of error.

Alternatively, Dr. Stokes suggests using "stratified random sampling." Dr. Stokes asserts that "stratified random sampling" will produce a sample that is more efficient than a simple random sample; however, this type of sampling requires additional information about each member of the population. Dr. Stokes notes that "stratified random sampling" is more efficient in the sense that a stratified random sample will be more precise with a smaller sample size than a simple random sample with a larger sample size. Dr. Stokes explains the type of information necessary to conduct a stratified random sample:

> For example, if information concerning each individual's job position(s) with Racetrac and/or the defined geographic area or region were available at relatively low cost, and if there are differences in mean unpaid overtime worked among individuals in different positions and/or different locations, we may achieve a more precise result with the same sample size.

Exhibit A at 4 attached to Plaintiffs' Motion. The plaintiffs submit that stratification based upon job title and geographic location could be accomplished at relatively low cost. The plaintiffs note, however, that the defendant has not responded to their inquiry about whether it would provide such information for purposes of stratification.

The defendant urges the Court to employ a bifurcated discovery process comparable to that used in Rule 23 class actions. The first stage of discovery would involve gathering information for the Court to consider in determining whether this case should ultimately be certified. In the event

that the Court certifies the class, a second stage of discovery would begin. As part of the first stage of discovery, the defendant requests that the Court approve a class-wide questionnaire. The defendant contends that the questionnaire is necessary in order for it to explore its defenses, to assess whether all of the claimants are similarly situated, and to obtain basic information about the plaintiffs to make decisions about possible settlement. After the questionnaires have been completed, the defendant wants to take full discovery from 100 opt-in plaintiffs (10% of the class) to assess decertification.

The defendant also submits a report from its expert, Professor Arnold Levine, in support of its discovery proposal. Professor Levine criticizes Dr. Stokes' report in two respects. First, Professor Levine contends that Dr. Stokes failed to take into account the determination of damages. Second, Professor Levine contends that Dr. Stokes did not consider the development of a "representative" subset of plaintiffs that can serve as a proxy for all plaintiffs in the presentation of damages.

With respect to the determination of damages, Professor Levine criticizes Dr. Stokes' approach, which involves estimating the number of uncompensated overtime hours per week. According to Professor Levine, Dr. Stokes does not explain how damages would be calculated using her approach. Professor Levine notes that Dr. Stokes recommends taking a sample of 35 plaintiffs and determining the average of unpaid overtime per hour claimed by the 35 sample members. Professor Levine contends that Dr. Stokes' method of calculating the plaintiffs' damages results in a biased estimate of total damages. *See* Exhibit 3 at 5-6 attached to Defendant's Discovery Proposal.

With respect to the "representativeness" of the sample, Professor Levine asserts that the formulation of a representative group requires a determination of which members are similar to each

other. Professor Levine underscores the importance of determining the "equivalence" of plaintiffs. For instance, plaintiffs are equivalent if they "claim damage amounts in the same given range, if they belong to the same managerial category (night, swing, etc.), are similarly situated, have the same opportunities for overtime, and so forth." *Id.* at 7. Professor Levine asserts that a representative sample cannot be selected without information regarding the plaintiffs' damages. Thus, Professor Levine recommends that this information be collected first so that a representative group can be selected.

After considering the submissions of counsel and the reports of both experts, the Court adopts the stratified random sampling method proposed by the plaintiffs' expert. Accordingly, it is ORDERED that discovery in this case be limited to a random sample of 35 opt-in plaintiffs.

IT IS FURTHER ORDERED that within ten days of the entry of this order, the defendant must show cause why it should not be required to furnish for the purpose of stratification information regarding the opt-in plaintiffs' job positions, geographic locations, etc., which has been requested by plaintiffs' counsel.

This is an interim order. After data from the random sample are obtained and analyzed, this order may be amended and the sample size enlarged upon a showing that the margin of error is greater than is statistically acceptable. At this stage, the Court will reserve ruling on the defendant's request for questionnaires to be mailed to all of the opt-in plaintiffs.

SIGNED this 8th day of June, 2005.

_____
T. JOHN WARD
UNITED STATES DISTRICT JUDGE